**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ELIZABETH A. STANTON,** ) | |
| **Personal Representative of** ) | |
| **JOSEPH H. SANTARLASCI, III,** ) | |
| **Deceased, and Administrator of the** ) | |
| **Estate of JOSEPH H. SANTARLASCI, III** ) | |
| **2210 Wyoming Avenue NW** ) | |
| **Washington, DC  20008,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. _____** |
| ) | |
| **LAFAYETTE COLLEGE** ) | |
| **316 Markle Hall** ) | |
| **Easton, PA    18042** ) | |
| ) | |
| **and** ) | |
| ) | |
| **ERIN MALONE** ) | |
| **404 Enfield Road** ) | |
| **Oreland, PA  19075,** ) | |
| ) | |
| **Defendants.** ) | |

**<u>COMPLAINT</u>**

**COMES NOW** Plaintiff, **ELIZABETH A. STANTON,** in her capacity as the personal

representative of JOSEPH HOWARD SANTARLASCI, III, deceased, and the Administrator of

the ESTATE OF JOSEPH HOWARD SANTARLASCI, III, and for her **COMPLAINT** against

Defendants **LAFAYETTE COLLEGE** and **ERIN MALONE,** states as follows:

1.      The purpose of this action is to redress the December 2, 2001 drowning death of

Joseph H. Santarlasci III ("Jay") at the Allan P. Kirby Sports Center's Ruef Natatorium at

Lafayette College in Easton, Northampton County, Pennsylvania. The bases of this Complaint

are: the negligence, gross negligence, recklessness and willful and wanton conduct of Defendants Lafayette College ("Lafayette" or "College") and Erin Malone ("Ms. Malone"); Lafayette College's vicarious liability for all of the tortious acts or omissions of Defendant Erin Malone based upon principles of *respondeat superior*; Lafayette College's negligent employment and retention of, as well as its negligent entrustment of the Ruef Natatorium to, Defendant Erin Malone; Lafayette College's breach of its nondelegable duty to Jay, an invitee to the Ruef Natatorium; and Lafayette College's negligence *per se*. Plaintiff alleges that Defendants Lafayette College and Erin Malone are directly and proximately responsible for the death of Jay, a graduate of Lafayette College and former recipient of the Lafayette College Leopard Award who was, at the time of his death, training to serve his country as a Navy SEAL.  Jay is survived by his mother, father, stepmother, stepfather, and two minor half-brothers.  The wrongful death claim herein is brought for the benefit of his statutory beneficiaries.

### *Jurisdiction*

2.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1332(c)(2), in that Plaintiff's Decedent (at the time of his death), on the one hand, and Defendants, on the other hand, are of diverse citizenship, and the amount in controversy here exceeds $75,000.00, exclusive of interest and costs.  Specifically, at the time of his death, Jay was a citizen of Washington, D.C., who was temporarily residing in Easton, Pennsylvania prior to reporting for active duty at the Great Lakes Naval Training Center in Illinois, where he was due to begin his military service on March 5, 2002.  Each Defendant is a citizen of the Commonwealth of Pennsylvania.

2

3.      This Court has personal jurisdiction over Defendant Lafayette College, in that the College is an incorporated non-profit (non-stock) corporation with its principal place of business in Easton, Northampton County, Pennsylvania, within the jurisdiction of this Court.  28 U.S.C. § 118(a).   This Court also has personal jurisdiction over Defendant Erin Malone, in that she is an adult citizen of Oreland, Montgomery County, Pennsylvania, within the jurisdiction of this Court.  28 U.S.C. § 118(a).

4.      Venue is appropriate pursuant to 28 U.S.C. § 1391(a) because Lafayette College and Erin Malone reside in this judicial district and all of the events and/or omissions giving rise to the claims herein occurred in this judicial district.

### *Parties*

5.      Plaintiff, Elizabeth A. Stanton is, and at all relevant times has been, the personal representative of Joseph H. Santarlasci III, deceased, and the administrator of the Estate of Joseph H. Santarlasci, III, having been duly appointed on January 10, 2002.  At all relevant times, Decedent was a District of Columbia citizen, carrying a District of Columbia driver's license, who had no intention of remaining indefinitely in the Commonwealth of Pennsylvania.  At the time of his death in December 2001, Decedent already had enlisted in the United States Navy, and had been ordered to report to Great Lakes, Illinois for basic training in March 2002.

6.      Defendant Lafayette College is, and at all relevant times was, an incorporated non-profit, non-stock educational institution located in Easton, Pennsylvania.

7.      Defendant Erin Malone is, and at all relevant times was, an adult citizen of the Commonwealth of Pennsylvania and a full-time student at, as well as an employee of, Lafayette College.

### *Factual Background*

8.     At all relevant times, Jay was a 26-year-old Lafayette College graduate, in excellent health, who was known to Lafayette College personnel to be preparing for the notoriously grueling physical requirements of the United States Navy's elite SEALs.

9.     Jay, a scholar-athlete, already had served as a preparatory school teacher and coach in his native Washington, D.C., as well as a fully certified personal trainer and manager for an elite gym.

10.     Jay was financially responsible, of excellent character and moral values, and maintained an extremely close and loving relationship with all members of his family.  He looked forward to a productive, meaningful and economically rewarding life.

11.     While a Lafayette student, Jay had received the coveted Leopard Award from the College, honoring the student athlete who best exemplifies the values of Lafayette College.  He had been a track team captain, and had played soccer during his freshman year.

12.     On or about November 15, 2001, Jay obtained a membership card for use of the two pools (a lap pool and a diving pool) at the Ruef Natatorium (sometimes referred to herein as the "Natatorium") for a fee of $75.00.   At the time he obtained a membership card, the Natatorium had recently been re-dedicated (in June 2000), as part of the new $35 million Allan P. Kirby Sports Center.

13.     Despite the $35 million construction of the Allan P. Kirby Sports Center in 2000, the Natatorium, constructed in 1973, had not been updated.  At all relevant times, neither the Natatorium nor its pools were equipped with a raised lifeguard chair.

4

14.    Upon information and belief, the College students who were employed as lifeguards at the Ruef Natatorium were chosen for employment based upon their financial need as students rather than upon their training and/or skill and/or competence to serve as lifeguards. Upon information and belief, the College provided little or no training to its student lifeguards and exercised little or no supervision over its student lifeguards.

15.    Sometime in late November, 2001, Jay met with Jim Dailey, Lafayette's head swimming coach, Director of Aquatics, and upon information and belief, a lifeguard trainer at the College. Mr. Dailey had known Jay casually when Jay was a student at the College. In or about November, 2001, they discussed Jay's plans to enter the Navy SEALs program. When Jay requested help from Mr. Dailey with his swimming technique, Mr. Dailey encouraged Jay to join the College's Recreation Swim Program.

16.    On or about December 1, 2001, Mr. Dailey saw Jay in the lap pool at the Natatorium. At that time, he noticed that Jay was doing breath holding exercises. Although, as a swimming coach and Director of Aquatics -- and indeed, Lafayette's designated lifeguard trainer -- Mr. Dailey knew that "breath holding exercises" such as those being practiced by Jay might result in underwater blackouts, he did not warn Jay about these dangers. Upon information and belief, neither Mr. Dailey nor any other Lafayette College employee ever instructed any of the Lafayette College lifeguards about the dangers associated with "breath holding exercises," including the possibility of underwater blackouts.

17.    On or about December 2, 2001, at approximately 2:00 p.m. EST (a normal business hour for the Natatorium), Jay arrived at the Natatorium to swim laps in the lap pool. At that time, Lafayette College lifeguard Veronica Lamura was on duty.

5

18.     Upon information and belief, Jay showed Ms. Lamura his pool membership card, and said hello, but neither he nor any of the other swimmers who were present during the incident, was asked to sign in on the pool's sign-in sheet.

19.     Because the sign-in sheet was inaccurately maintained, there was no way for anyone to know from this official record who was in the Natatorium (or its pools) – or even to discern *how many* persons were present at the Natatorium or swimming in the pools.

20.     At the time Jay entered the pool area, another patron of the Natatorium, Jayme MacKinnon, was in the well section of the diving pool with one of Mr. Dailey's children, for whom she was baby-sitting. Upon information and belief, Ms. MacKinnon had arrived at the Natatorium at approximately 1:30 p.m. EST. She had observed that Jay had begun swimming laps in the lap pool shortly after his arrival.

21.     At about 2:25 p.m. EST on December 2, 2001, Defendant Erin Malone arrived at the Natatorium for her 2:30 p.m. lifeguard shift.  At all relevant times, Defendant Erin Malone was an employee of Lafayette College and was acting within the scope of that employment.

22.     Ms. Malone, a 19-year-old full-time student at Lafayette College, was at the time accompanied by Daniel Finnegan.

23.     Ms. Malone was not in a swimsuit, but instead began her lifeguard shift in street clothes (blue jeans and a white tee-shirt).

24.     Ms. Malone's attire was not in conformance with Lafayette College rules and/or practices, pursuant to which lifeguards were required to wear a swimsuit, and were permitted to wear shorts or sweatpants over the swimsuit, while working.

25.    Upon information and belief, lifeguards were not permitted to wear blue jeans while working because this attire is constrictive and makes movement both on land and in the water difficult, thus significantly lengthening response times to emergencies.

26.    Upon information and belief, Ms. Malone knew and/or should have known both the rules and practices for Lafayette College (including, but not limited to, its rules and practices regarding lifeguard attire), as well as the basis for those rules and regulations.

27.    Upon information and belief, Ms. Malone's refusal to follow these rules and practices on December 2, 2001, was knowing and deliberate.

28.    At approximately 2:30 p.m. EST, Ms. Lamura left the Natatorium, and Ms. Malone, still in her street clothes, took over as the lifeguard.

29.    As she was leaving, Ms. Lamura noticed that Jay was the only swimmer in the lap pool.

30.    Sometime between 2:30 and 2:40 p.m. EST, Mr. Finnegan walked across the Natatorium's bulkhead, and noticed that Jay was doing laps underwater.

31.    Rather than guarding the pools from a raised lifeguard's chair – because no such chair existed at the Natatorium -- Ms. Malone seated herself at the lifeguard's "table," and immediately busied herself with homework assignments.

32.    Upon information and belief, Ms. Malone took no steps to monitor or scan the pools during her lifeguard shift.

33.    Upon information and belief, at the same time that Ms. Malone began her shift as the lifeguard on duty at the Natatorium, she was also responsible for checking in and registering members and guests.

34.     Upon information and belief, rather than monitoring and scanning the pools, Ms. Malone spent her lifeguard shift doing her homework and chatting with Mr. Finnegan.

35.     After initially noticing, at the beginning of her shift, that Jay was swimming laps, Ms. Malone did not see him again for a period of approximately 20 minutes.

36.     Upon information and belief, at no time between 2:30 p.m. EST and 2:50 p.m. EST did Ms. Malone monitor or scan the pools in the Natatorium.

37.     Upon information and belief, nationally recognized standards for lifeguarding dictate that a lifeguard must be able to scan, and must scan, his or her assigned area every ten seconds, and must be able to initiate, and must initiate, any necessary rescue and/or response within twenty seconds.  This is known as the 10/20 Rule.

38.     Upon information and belief, sometime after Ms. Malone began her shift, Lauren McHale arrived at the Natatorium to swim laps in the lap pool.

39.     Upon her arrival, Ms. McHale noticed that Ms. Malone was wearing street clothes.

40.     Ms. McHale began swimming laps and thought, at the time, that she was the only person in the lap pool because there was no other visible swimmer.

41.     After swimming approximately 500 meters, Ms. McHale saw Ms. Malone running with the rescue tube.

42.     Seconds before, Mr. Finnegan had heard Jayme MacKinnon call for a lifeguard.

43.     While playing with the children she was baby-sitting, Ms. MacKinnon had turned around and had seen Jay lying at the bottom of lane 4 of the lap pool, on his stomach.

44.    After she called for Ms. Malone, Ms. MacKinnon saw another man (Cary Lehman), who was on the pool deck, jump in and pull Jay out of the water.

45.    Upon information and belief, Mr. Lehman had entered the Natatorium sometime after 2:30 p.m. EST and had noticed only one swimmer – a woman (presumably Ms. McHale) – in the lap pool.

46.    Upon information and belief, Mr. Lehman had been present in the Natatorium for approximately five minutes before he heard Ms. MacKinnon calling for the lifeguard.

47.    Because, after she had been alerted to a swimmer in distress, Ms. Malone appeared to Mr. Lehman to be "uncertain about what to do," Mr. Lehman jumped in the pool himself to rescue Jay.

48.    At the same time, Patrice Japhet, a diving coach, saw Mr. Lehman run to the end of the lap pool, and followed him.

49.    After Jay was pulled from the lap pool, Ms. Japhet attempted to ventilate him, but there was no air movement.

50.    Ms. Japhet also attempted to check Jay's vital signs, but could not locate a pulse and noticed that he was not breathing.

51.    Upon information and belief, when Jay was pulled out of the lap pool, his face was blue and he was not moving.

52.    After Ms. Malone was notified that a swimmer was at the bottom of the lap pool, she ran over to observe Jay, and then ran back to the lifeguard area to get rescue equipment.

53.    Upon information and belief, Ms. Malone never attempted to rescue Jay, instead panicking and abandoning him in the moment she was needed most.

54.    Ms. Malone did not pull Jay from the bottom of the lap pool.

55.    Upon information and belief, as Jay was being pulled from the lap pool by Mr. Lehman, Mr. Finnegan called campus security, who in turn called 911.

56.    Upon information and belief, Ms. Japhet and Ms. Malone began administering CPR to Jay at approximately 2:50 p.m. EST.

57.    Upon information and belief, Ms. McHale and one of the campus security officers continued the CPR after campus security arrived.

58.    At or about 2:51 p.m. EST, the Lafayette College Public Safety Office ("LCPSO") received a request for medical assistance "for a swimmer who had been in the swimming pool for a long time."

59.    Upon information and belief, after being notified of the emergency at the Natatorium, LCPSO Officer R. Snyder obtained the Semi-Automatic Defibrillator ("AED") machine and went in his patrol car (lights flashing, sirens on) with LCPSO Officers Cathy Snyder and Bruce Hill, to the Natatorium.

60.    Upon information and belief, they arrived a very short time later, and the entire LCPSO force eventually arrived at the Natatorium.

61.    Upon information and belief, when LCPSO Officers R. Snyder, Cathy Snyder and Bruce Hill arrived at the Natatorium, Jay was unconscious and not breathing.

62.    Upon information and belief, when the officers arrived at the Natatorium, Jay was "asystolic," meaning that he was suffering from a form of pulseless arrest associated with the absence of cardiac electrical activity.

10

63.    During their emergency efforts, officers from the LCPSO repeatedly cleared Jay's airways of vomit, the presence of which indicated that Jay was alive and had been alive for some time once he became anoxic or hypoxic while under water.

64.    After their arrival, Easton EMS personnel took over the CPR, and, upon information and belief, continued CPR at the Natatorium for another 20 minutes.

65.    Jay was transported to Easton Hospital at 3:19 p.m. EST, where he was pronounced dead.

66.    Zachary R. Lysek, a Coroner for Northampton County, in Easton, examined Jay's body.  Mr. Lysek has opined that Jay was under water when his body required him to take a breath of air, but, instead of air, Jay breathed in water and became unconscious as a result of the inhalation of water into his lungs. An autopsy confirmed his findings.

67.    The autopsy showed that Jay died from diffuse pulmonary and cerebral edema and fluid within the sphenoid sinuses – in other words, from drowning.

68.    Upon information and belief, Jay was underwater and unconscious at the bottom of the pool for as long as ten minutes before he was spotted by Ms. MacKinnon.

69.    Upon information and belief, Ms. Malone ignored Jay both before and after he became helpless.

70.    Upon information and belief, Lafayette College, neither before nor after spending $35 million to build and/or modernize the Allan P. Kirby Sports Center, bothered to purchase or install a raised lifeguard chair at any time prior to December 2, 2001.

71.    Upon information and belief, Lafayette College hired students as lifeguards, rather than hiring more expensive professional lifeguards, for the Ruef Natatorium.

72.     Upon information and belief, these decisions, as aforesaid, were in direct violation of the College's own mission statement, which provides: "We comply with applicable Federal, State, and Local regulations and make decisions on safety-related issues according to the following criteria:

1.      Imminent danger to life and property

2.      Compliance with legal standards

3.      Where the benefits exceed the costs

4.      Compliance with voluntary or recommended standards."

73.     In further direct violation of its own mission statement, as well as "recommended standards" for Natatorium safety, Lafayette College failed to require its lifeguards to use a raised lifeguard chair.

74.     In further direct violation of its mission statement, Lafayette College failed to require that its lifeguards followed recommended national standards for lifeguarding, including the 10/20 Rule.

75.     Upon information and belief, Lafayette College tacitly – if not expressly -- approved of lifeguards dressing in street clothes and performing their duties from behind a desk, while doing homework assignments or tending to other tasks, in absolute violation of nationally recognized standards and practices for lifeguards and/or for those supervising lifeguards, as well as applicable Pennsylvania law.

76.     Upon information and belief, Lafayette College tacitly approved of behavior by College-employed lifeguards, including, but not limited to, Ms. Malone, which behavior was in violation of the College's own mission statement.

12

77.    Upon information and belief, the negligent conditions at the Natatorium (including the absence of a raised lifeguard chair and the presence of untrained and/or unqualified rescue personnel) had been known to the College, and unremedied by the College, for more than a quarter century prior to Jay's drowning death.

78.    The College's deliberate failure to correct these negligent conditions constituted reckless and willful and wanton conduct.

79.    Lafayette College has an endowment with a current market value of approximately $537 million, and total assets of more than $780 million.

80.    At all relevant times herein, Ms. Malone was acting within the scope of her employment and/or agency with Defendant Lafayette College.

<u>**COUNT I**</u>
**Wrongful Death**
***Negligence, Gross Negligence, Recklessness, Willful and Wanton Conduct***
***(Erin Malone)***

81.    Numbered paragraphs 1-80 are hereby incorporated as if fully set forth herein.

82.    Plaintiff Elizabeth A. Stanton brings this claim for wrongful death on behalf of the Decedent's statutory beneficiaries and in her capacity as personal legal representative of Decedent Joseph H. Santarlasci III pursuant to 42 Pa. Cons. Stat. Ann. § 8301 (West 2002).  This claim is brought against Defendant Erin Malone.

83.    At all relevant times, Defendant Erin Malone owed Jay Santarlasci a duty to exercise reasonable care in the performance of her job as a lifeguard at the Ruef Natatorium.

84.    Defendant Erin Malone breached the duty owed to Jay Santarlasci to exercise reasonable care in the performance of her job as a lifeguard at the Ruef Natatorium by, *inter alia*, wearing street clothes while performing her lifeguard duties, by performing her lifeguard duties

while seated at a "lifeguard table" from which portions of the pools at the Ruef Natatorium are not visible, by engaging in other, distracting tasks (including, but not limited to, doing College homework assignments) while performing her lifeguard duties, and by failing and refusing to monitor the pools at the Ruef Natatorium and/or any of the swimmers in the pools therein, by failing to scan the pools every ten seconds and/or failing to initiate a rescue within twenty seconds, and by failing and refusing to rescue Jay Santarlasci from the bottom of the Ruef Natatorium lap pool.

85.    Defendant Erin Malone's breaches, as aforesaid, were negligent, grossly negligent, reckless and willful and wanton.

86.    As a direct and proximate result of Defendant Erin Malone's negligence, gross negligence, recklessness and willful and wanton conduct, as aforesaid, Jay Santarlasci suffered serious bodily injury and wrongful death.

87.    As a further direct and proximate result of Defendant Erin Malone's negligent, grossly negligent and reckless acts and omissions, and willful and wanton conduct as aforesaid, the beneficiaries of Plaintiff's Decedent were deprived of the solace, society and companionship, as well as the comfort, guidance, kindly offices, and advice of Jay Santarlasci.

88.    As a further direct and proximate result of Defendant Erin Malone's negligent, grossly negligent and reckless acts and omissions, and willful and wanton conduct, as aforesaid, the beneficiaries of Plaintiff's Decedent were denied the reasonably expected services, protection, care, financial support, and assistance of Jay Santarlasci, and incurred medical, funeral, and burial expenses, as well as the costs associated with the administration of his estate.

89.     For such injuries and wrongful death resulting from Defendant Erin Malone's conduct, as aforesaid, Defendant Erin Malone is liable to the Plaintiff for compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant Erin Malone as follows: (1) compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial; (2) all costs associated with this action; (3) pre- and post-judgment interest as permitted by law; and (4) such other and further relief as this Court deems just and proper.

### COUNT II
**Wrongful Death**
*Negligence, Gross Negligence, Recklessness, Willful and Wanton Conduct*
*(Lafayette College; Respondeat Superior)*

90.     Numbered paragraphs 1-89 are hereby incorporated as if fully set forth herein.

91.     Plaintiff Elizabeth A. Stanton brings this claim for wrongful death on behalf of the Decedent's statutory beneficiaries and in her capacity as personal legal representative of Decedent Joseph H. Santarlasci III pursuant to 42 Pa. Cons. Stat. Ann. § 8301 (West 2002). This claim is brought against Defendant Lafayette College.

92.     The above described acts of Defendant Erin Malone were committed within the scope of her employment with Lafayette College in that she committed them while engaged in the business of her employer and in furtherance of her employer's business interests.

93.     As Defendant Erin Malone's employer, Defendant Lafayette College is responsible for all damages proximately caused by the negligence, gross negligence, recklessness and willful and wanton conduct of Defendant Erin Malone while acting within the scope of her employment.

94.    Defendant Erin Malone's breaches, as aforesaid, were negligent, grossly negligent, reckless and willful and wanton.

95.    As a direct and proximate result of Defendant Erin Malone's negligence, gross negligence, recklessness and willful and wanton conduct, as aforesaid, Jay Santarlasci suffered serious bodily injury and wrongful death.

96.    Defendant Lafayette College is vicariously liable for Defendant Erin Malone's negligence, gross negligence, recklessness and willful and wanton conduct, as aforesaid, pursuant to the doctrine of *respondeat superior.*

97.    As a further direct and proximate result of Defendant Erin Malone's negligent, grossly negligent and reckless acts and omissions, and willful and wanton conduct, as aforesaid, the beneficiaries of Plaintiff's Decedent were deprived of the solace, society and companionship, as well as the comfort, guidance, kindly offices, and advice of Jay Santarlasci.  Defendant Lafayette College is vicariously liable to these beneficiaries pursuant to the doctrine of *respondeat superior.*

98.    As a further direct and proximate result of Defendant Erin Malone's negligent, grossly negligent and reckless acts and omissions, and willful and wanton conduct, as aforesaid, the beneficiaries of Plaintiff's decedent were denied the reasonably expected services, protection, care, financial support, and assistance of Jay Santarlasci, and incurred medical, funeral, and burial expenses, as well as the costs associated with the administration of his estate. Defendant Lafayette College is vicariously liable to these beneficiaries pursuant to the doctrine of *respondeat superior.*

99.    For such injuries and wrongful death resulting from Defendant Erin Malone's acts and omissions within the scope of her employment by Defendant Lafayette College, as aforesaid, Defendant Lafayette College is liable to the Plaintiff for compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant Lafayette College as follows: (1) compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial; (2) all costs associated with this action; (3) pre- and post-judgment interest as permitted by law; and (4) such other and further relief as this Court deems just and proper.

## COUNT III
### Wrongful Death
### *Negligence, Gross Negligence, Recklessness, Willful and Wanton Conduct*
### *(Lafayette College)*

100.    Numbered paragraphs 1-99 are hereby incorporated as if fully set forth herein.

101.    Plaintiff Elizabeth A. Stanton brings this claim for wrongful death on behalf of the Decedent's statutory beneficiaries and in her capacity as personal legal representative of Decedent Joseph H. Santarlasci III pursuant to 42 Pa. Cons. Stat. Ann. § 8301 (West 2002).  This claim is brought against Defendant Lafayette College.

102.    At all relevant times, Defendant Lafayette College owed Jay Santarlasci a duty of care not to harm him, including the duty not to place him at unreasonable risk of foreseeable harm.

103.    Defendant Lafayette College breached its duty not to harm Jay Santarlasci and its duty not to place Jay Santarlasci at unreasonable risk of foreseeable harm, by permitting its lifeguards to wear street clothes while performing lifeguard duties, permitting its lifeguards to perform lifeguard duties while seated at a "lifeguard table" from which portions of the pools at

17

the Ruef Natatorium are not visible, permitting its lifeguards to engage in other, distracting tasks (including, but not limited to, doing College homework assignments) while performing lifeguard duties, permitting its lifeguards to fail and refuse to monitor the pools in the Ruef Natatorium and/or the swimmers in that pools, for periods of twenty minutes at a time, permitting its lifeguards to ignore national standards for lifeguarding, including, but not limited to, the 10/20 Rule, and permitting its lifeguards to fail and refuse to rescue swimmers from the bottom of the lap pool at the Ruef Natatorium.

104.    Defendant Lafayette College's breach of its duty not to harm Jay Santarlasci, and not to place Jay Santarlasci at unreasonable risk of foreseeable harm, as aforesaid, was negligent, grossly negligent, reckless and willful and wanton.

105.    As a direct and proximate result of Defendant Lafayette College's negligence, gross negligence, recklessness and willful and wanton conduct, as aforesaid, Jay Santarlasci suffered serious bodily injury and wrongful death.

106.    As a further direct and proximate result of Defendant Lafayette College's negligent, grossly negligent and reckless acts and omissions, and willful and wanton conduct, as aforesaid, the beneficiaries of Plaintiff's Decedent were deprived of the solace, society and companionship, as well as the comfort, guidance, kindly offices, and advice of Jay Santarlasci.

107.    As a further direct and proximate result of Defendant Lafayette College's negligent, grossly negligent and reckless acts and omissions, and willful and wanton conduct, as aforesaid, the beneficiaries of Plaintiff's Decedent were denied the reasonably expected services, protection, care, financial support, and assistance of Jay Santarlasci, and incurred medical, funeral, and burial expenses, as well as the costs associated with the administration of his estate.

108.    For such injuries and wrongful death resulting from Defendant Lafayette College's conduct, as aforesaid, Defendant Lafayette College is liable to the Plaintiff for compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant Lafayette College as follows: (1) compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial; (2) all costs associated with this action; (3) pre- and post-judgment interest as permitted by law; and (4) such other and further relief as this Court deems just and proper.

### COUNT IV
**Wrongful Death**
***Negligent Employment and Retention; Negligent Entrustment***
***(Lafayette College)***

109.    Numbered paragraphs 1-108 are realleged and incorporated as if fully set forth herein.

110.    Plaintiff Elizabeth A. Stanton brings this claim for wrongful death on behalf of the Decedent's statutory beneficiaries and in her capacity as personal legal representative of Decedent Joseph H. Santarlasci III pursuant to 42 Pa. Cons. Stat. Ann. § 8301 (West 2002).  This claim is brought against Defendant Lafayette College.

111.    At all relevant times, Defendant Lafayette College owed Jay Santarlasci a duty to exercise reasonable care in its employment and retention of persons, including, but not limited to, Erin Malone, who were hired to work as lifeguards, and Jim Dailey, who was hired as the Director of Aquatics for the College.

112.    At all relevant times, Defendant Lafayette College knew that persons it hired as lifeguards for the Ruef Natatorium, including, but not limited to, Defendant Erin Malone, were

wearing street clothes while performing lifeguard duties, were performing lifeguard duties while seated at a "lifeguard table" from which portions of the pools at the Ruef Natatorium are not visible, were engaging in other, distracting tasks (including, but not limited to, doing College homework assignments) while performing lifeguard duties, were failing and refusing to monitor the pools and/or the swimmers in the pools for periods of twenty minutes at a time, and were otherwise ignoring or flouting nationally recognized safety rules and practices for lifeguards, including, but not limited to, the 10/20 Rule.

113.    At all relevant times, Defendant Lafayette College knew and/or should have known that persons, such as Jim Dailey, who were hired to train and supervise the lifeguards, including, but not limited to Defendant Erin Malone, were not in fact adequately training and/or supervising the lifeguards, and were not in fact instructing the lifeguards about the dangers of, *inter alia*, breath-holding exercises.

114.    At all relevant times, Defendant Lafayette College knew and/or should have know that persons, such as Jim Dailey, were encouraging third parties to join the College's recreation swim program and to use the pools at the Natatorium, and while so encouraging such persons, were failing and/or refusing to warn them about known dangers, including, but not limited to, the dangers associated with breath holding exercises and/or the dangers associated with swimming in a pool being guarded by negligent lifeguards.

115.    At no time did Lafayette College take any steps to correct any of the wrongful conduct of its employees, including Jim Dailey and its lifeguards, including, but not limited to Defendant Erin Malone, and by its inaction, ratified and condoned such conduct.

20

116.    At all relevant times, Defendant Lafayette College knew that the persons it hired to perform lifeguard duties, including, but not limited to, Defendant Erin Malone, were unqualified, improperly trained and/or untrained, improperly supervised and/or unsupervised, and lacked the maturity, common sense, skill, knowledge and temperament to be lifeguards and/or to be charged, in any way, with the duty to guard and protect the health and safety of patrons of the Natatorium, including Jay Santarlasci.

117.    At no time did Lafayette College take any steps to correct any of these deficiencies, and by its inaction, ratified and condoned them.

118.    In hiring and retaining as lifeguards persons, including Erin Malone, who were unqualified, improperly trained and/or untrained, improperly supervised and/or unsupervised, and who lacked the maturity, common sense, skill, knowledge and temperament to be lifeguards and/or to be charged, in any way, with the duty to guard and protect the health and safety of patrons of the Natatorium, including Jay Santarlasci,  Defendant Lafayette College breached a duty owed to Jay Santarlasci not to hire and retain such persons as lifeguards.

119.    Defendant Lafayette College's breach of its duty to hire and retain as lifeguards persons who were sufficiently trained, supervised and mature, and who possessed the common sense, skill, knowledge and temperament to serve as lifeguards and/or to be charged with the duty to guard and protect the health and safety of patrons of the Natatorium, including Jay Santarlasci, was negligent, grossly negligent, reckless and willful and wanton.

120.    Defendant Lafayette College's breach of its duty to hire and retain as lifeguard supervisors and trainers persons who would actually supervise and train the lifeguards who were

charged with the duty to guard and protect the health and safety of patrons of the Natatorium, including Jay Santarlasci, was negligent, grossly negligent, reckless and willful and wanton.

121.    As a direct and proximate result of Defendant Lafayette College's negligence, gross negligence, reckless and willful and wanton conduct, as aforesaid, Jay Santarlasci suffered serious bodily injury and wrongful death.

122.    At all relevant times, Defendant Lafayette College owed Jay Santarlasci a duty not to entrust the Ruef Natatorium, nor the safety of its users, to incompetent, improperly trained, irresponsible and unfit lifeguards.

123.    At all relevant times, Defendant Lafayette College knew that persons to whom it entrusted the Ruef Natatorium as lifeguards, including, but not limited to, Defendant Erin Malone, were wearing street clothes while performing lifeguard duties, were performing lifeguard duties while seated at a "lifeguard table" from which portions of the pools at the Ruef Natatorium are not visible, were engaging in other, distracting tasks (including, but not limited to, College homework assignments) while performing lifeguard duties, were failing and refusing to monitor the pools and/or the swimmers in the pools for periods of twenty minutes at a time, and were otherwise ignoring or flouting nationally recognized safety rules and practices for lifeguards, including, but not limited to, the 10/20 Rule.

124.    At no time did Lafayette College take any steps to correct any of this wrongful conduct of its lifeguards, and by its inaction, ratified and condoned the conduct.

125.    At all relevant times, Defendant Lafayette College knew that the persons to whom it entrusted the Ruef Natatorium as lifeguards, including, but not limited to Defendant Erin Malone, were unqualified, improperly trained and/or untrained, improperly supervised and/or

unsupervised, and lacked the maturity, common sense, skill, knowledge and temperament to be lifeguards and/or to be entrusted, in any way, with the supervision of the Ruef Natatorium or the swimmers therein.

126.    At no time did Lafayette College take any steps to correct any of these deficiencies, and by its inaction, ratified and condoned them.

127.    In entrusting the supervision of the Ruef Natatorium, and the safety of the swimmers therein, to persons, including Erin Malone, who were unqualified, improperly trained and/or untrained, improperly supervised and/or unsupervised, and who lacked the maturity, common sense, skill, knowledge and temperament to be entrusted, in any way, with the supervision of the Ruef Natatorium and/or the swimmers therein, including Jay Santarlasci, Defendant Lafayette College breached a duty owed to Jay Santarlasci.

128    Defendant Lafayette College's breach of its duty not to entrust the Ruef Natatorium and/or the swimmers in the pools therein to unqualified persons, as aforesaid, was negligent, grossly negligent, reckless and willful and wanton.

129.    As a direct and proximate result of Defendant Lafayette College's negligence, gross negligence, recklessness and willful and wanton conduct, as aforesaid, Jay Santarlasci suffered serious bodily injury and wrongful death.

130.    As a further direct and proximate result of Defendant Lafayette College's negligent, grossly negligent and reckless acts and omissions, and willful and wanton conduct, as aforesaid, the beneficiaries of Plaintiff's decedent were deprived of the solace, society and companionship, as well as the comfort, guidance, kindly offices, and advice of Jay Santarlasci.

131.    As a further direct and proximate result of Defendant Lafayette College's negligent, grossly negligent and reckless acts and omissions, and willful and wanton conduct, as aforesaid, the beneficiaries of Plaintiff's Decedent were denied the reasonably expected services, protection, care, financial support, and assistance of Jay Santarlasci, and incurred medical, funeral, and burial expenses, as well as the costs associated with the administration of his estate.

132.    For such injuries and wrongful death resulting from Defendant Lafayette College's conduct, as aforesaid, Defendant Lafayette College is liable to the Plaintiff for compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant Lafayette College as follows: (1) compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial; (2) all costs associated with this action; (3) pre- and post-judgment interest as permitted by law; and (4) such other and further relief as this Court deems just and proper.

**COUNT V**
**Wrongful Death**
***Breach of Nondelegable Duty to Invitee***
*(Lafayette College)*

133.    Numbered paragraphs 1-132 are realleged and incorporated as if fully set forth herein.

134.    Plaintiff Elizabeth A. Stanton brings this claim for wrongful death on behalf of the Decedent's statutory beneficiaries and in her capacity as personal legal representative of Decedent Joseph H. Santarlasci III pursuant to 42 Pa. Cons. Stat. Ann. § 8301 (West 2002).  This claim is brought against Defendant Lafayette College.

135.    At all relevant times, Defendant Lafayette College owed a non-delegable duty of care to Jay Santarlasci, an invitee to the Ruef Natatorium.

136.    At all relevant times, as a possessor of land, Defendant Lafayette College was legally responsible for any and all dangerous conditions arising on its premises.

137.    At all relevant times, Defendant Lafayette College knew and/or should have known about the dangerous conditions extant at the Ruef Natatorium, including, but not limited to, the lack of a raised lifeguard chair and the presence of untrained, insufficiently trained, unsupervised, negligent lifeguards.

138.    At all relevant times, Defendant Lafayette College had sufficient funds to cure the dangerous conditions at the Ruef Natatorium, as aforesaid, including, but not limited to, sufficient funds to purchase a raised lifeguard chair and to provide adequate supervision and training for its lifeguard staff.

139.    At all relevant times, Defendant Lafayette College chose not to expend these funds, not to cure these dangerous conditions, and failed to warn Jay of such dangerous conditions.

140.    As a result of its knowledge of dangerous conditions and its failure and refusal to cure these dangerous conditions, as aforesaid, Defendant Lafayette College breached its nondelegable duty of care owed to Jay Santarlasci, an invitee. Said breaches were negligent, grossly negligent, reckless and willful and wanton.

141.    As a direct and proximate result of Defendant Lafayette College's negligent, grossly negligent and reckless acts and omissions, and willful and wanton conduct, as aforesaid, Jay Santarlasci suffered serious bodily injury and wrongful death.

25

142.   As a further direct and proximate result of Defendant Lafayette College's negligent, grossly negligent and reckless acts and omissions, and willful and wanton conduct, as aforesaid, the beneficiaries of Plaintiff's Decedent were deprived of the solace, society and companionship, as well as the comfort, guidance, kindly offices, and advice of Jay Santarlasci.

143.   As a further direct and proximate result of Defendant Lafayette College's negligent, grossly negligent and reckless acts and omissions, and willful and wanton conduct, as aforesaid, the beneficiaries of Plaintiff's Decedent were denied the reasonably expected services, protection, care, financial support, and assistance of Jay Santarlasci, and incurred medical, funeral, and burial expenses, as well as the costs associated with the administration of his estate.

144.   For such injuries and wrongful death resulting from Defendant Lafayette College's conduct, as aforesaid, Defendant Lafayette College is liable to the Plaintiff for compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant Lafayette College as follows: (1) compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial; (2) all costs associated with this action; (3) pre- and post-judgment interest as permitted by law; and (4) such other and further relief as this Court deems just and proper.

**COUNT VI**
**Wrongful Death**
***Negligence Per Se***
*(Lafayette College)*

145.   Numbered paragraphs 1-144 are realleged and incorporated as if fully set forth herein.

146.    Plaintiff Elizabeth A. Stanton brings this claim for wrongful death on behalf of the Decedent's statutory beneficiaries and in her capacity as personal legal representative of Decedent Joseph H. Santarlasci III pursuant to 42 Pa. Cons. Stat. Ann. § 8301 (West 2002).  This claim is brought against Defendant Lafayette College.

147.    At all relevant times, Defendant Lafayette College was required to follow the laws, statutes and administrative code provisions issued by the Commonwealth of Pennsylvania.

148.    At all relevant times, Pennsylvania law required that:  "One or more *competent* lifeguards in an adequate number shall be on duty *at the waterside* at all times the public bathing place is open to use by bathers, and *may not be assigned other tasks which will divert attention from the safety of the bather*."  28 Pa. Code § 18.42 (2002) (emphases added).  Violations of this act "by omission or commission, or in any manner" constitute a "summary offense."  Pa. Stat, Ann. tit. 35, § 680d (West 2002).  Such violations also constitute negligence *per se.*

149.    The Pennsylvania Administrative Code rules and regulations concerning "public bathing places" apply to the pools at the Ruef Natatorium.  The definition of covered "public bathing places" includes all "outdoor or indoor place[s] used for amateur, professional or recreative swimming or bathing whether or not a fee is charged for admission or for the use of the place." 28 Pa. Code § 18.1 (2002).  The definition of covered "public bathing places" includes the Ruef Natatorium.

150.    Upon information and belief, as aforesaid, Defendant Lafayette College employed incompetent lifeguards and/or employed lifeguards in inadequate numbers and/or assigned the lifeguards it did employ to other tasks (including monitoring sign-in sheets and completing homework assignments) which diverted the attention of said lifeguards from the safety of bathers

in the Ruef Natatorium, and, specifically, diverted their attention from the safety of Jay Santarlasci.

151.    As a direct and proximate result of Defendant Lafayette College's acts and/or omissions in employing incompetent lifeguards, including, but not limited to, Erin Malone, and/or in employing lifeguards in inadequate numbers, including, but not limited to, Erin Malone, and/or in assigning the lifeguards it did employ, including, but not limited to, Erin Malone, to other tasks which diverted the attention of said lifeguards from the safety of bathers in the Ruef Natatorium, and, specifically, diverted the lifeguards' attention from the safety of Jay Santarlasci, Jay Santarlasci suffered serious bodily injury and wrongful death.

152.    The acts and omissions of Lafayette College, as aforesaid, constitute negligence *per se*.

153.    As a direct and proximate result of Lafayette College's negligence *per se*, as aforesaid, Jay Santarlasci suffered serious bodily injury and wrongful death.

154.    As a further direct and proximate result of Defendant Lafayette College's negligence *per se*, as aforesaid, the beneficiaries of Plaintiff's decedent were deprived of the solace, society and companionship, as well as the comfort, guidance, kindly offices, and advice of Jay Santarlasci.

157.    As a further direct and proximate result of Defendant Lafayette College's negligence *per se,* as aforesaid, the beneficiaries of Plaintiff's Decedent were denied the reasonably expected services, protection, care, financial support, and assistance of Jay Santarlasci, and incurred medical, funeral, and burial expenses, as well as the costs associated with the administration of his estate.

158.    For such injuries and wrongful death resulting from Defendant Lafayette College's conduct, as aforesaid, Defendant Lafayette College is liable to the Plaintiff for compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant Lafayette College as follows: (1) compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial; (2) all costs associated with this action; (3) pre- and post-judgment interest as permitted by law; and (4) such other and further relief as this Court deems just and proper.

**COUNT VII**
**Survival**
**Willful and Wanton Conduct**
**(*Lafayette College*)**

159.    Paragraphs 1-158 are realleged and incorporated as if fully set forth herein.

160.    Plaintiff Elizabeth A. Stanton brings this claim for willful and wanton conduct in her capacity as personal and legal representative of the Estate of Joseph H. Santarlasci III, pursuant to 42 Pa. Cons. Stat. Ann. § 8302 (West 2002).   This claim is brought against Defendant Lafayette College.

161.    Jay Santarlasci's drowning death was directly and proximately caused by the willful and wanton conduct of Defendant Lafayette College.

162.    Defendant Lafayette College's willful and wanton conduct, as aforsesaid, was so reckless as to evince a conscious disregard and/or indifference for the safety and/or rights of others generally, and Jay Santarlasci specifically, in that Lafayette College:

(a)    knew and/or should have known, from 1973 onward, that its lifeguards in general, and Erin Malone in particular, were

29

unqualified, improperly trained and/or untrained; improperly supervised and/or unsupervised; and/or lacked the maturity, common sense, skill, knowledge and temperament to be lifeguards and/or to be charged, in any way, with the duty to guard and protect the health and safety of patrons (paying or otherwise) of the Ruef Natatorium, yet, despite this knowledge, continued to employ these lifeguards, including Erin Malone, and to entrust the health and safety of members of the public to these lifeguards; and

(b)    knew and/or should have known, from 1973 onward, that its Ruef Natatorium had no raised lifeguard chair, rendering the Natatorium unsafe as a place for public bathing, and that, knowing that the Natatorium had no raised lifeguard chair and that it was therefore unsafe as a place for public bathing, Lafayette College did nothing to correct this situation.

163.    As a direct and proximate result of Defendant Lafayette College's willful and wanton acts and/or omissions, as aforesaid, Jay Santarlasci suffered needlessly and painfully for numerous minutes prior to his death by drowning, as he struggled to remain alive after inhaling water and sinking to the bottom of the pool.

164.    Jay Santarlasci's pain, suffering, fear and death were directly and proximately caused by the negligence, gross negligence, recklessness and willful and wanton conduct of Defendant Lafayette College.

165.    As a direct and proximate result of Defendant Lafayette College's negligent, grossly negligent, reckless and willful and wanton acts and omissions, as aforesaid, the Estate of Jay Santarlasci has been deprived of a lifetime of his earnings.

166.    For such injuries proximately resulting from Defendant Lafayette College's negligence, gross negligence, recklessness and willful and wanton conduct, as aforesaid, Defendant Lafayette College is liable to Plaintiff for compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial, and for punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendant Lafayette College as follows: (1) compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial; (2) punitive damages; (3) all costs associated with this action; (4) pre- and post-judgment interest as permitted by law; and (5) such other and further relief as this Court deems just and proper.

### COUNT VIII
**Survival**
**Negligence, Gross Negligence, Recklessness and**
**Willful and Wanton Conduct**
**(*Erin Malone*)**

167.    Paragraphs 1-166 are realleged and incorporated as if fully set forth herein.

168.    Plaintiff Elizabeth A. Stanton brings this claim in her capacity as personal and legal representative of the Estate of Joseph H. Santarlasci III, pursuant to 42 Pa. Cons. Stat. Ann. § 8302 (West 2002).  This claim is brought against Defendant Erin Malone.

169.    The aforesaid drowning death was directly and proximately caused by the negligence, gross negligence, recklessness and willful and wanton conduct of Defendant Erin Malone.

170.    Defendant Erin Malone's conduct, as aforesaid, was so reckless as to evince a conscious disregard and/or indifference for the safety and/or rights of others generally, and Jay Santarlasci specifically, in that Erin Malone: knew and/or should have known that there were swimmers in the Ruef Natatorium pools, including Jay Santarlasci; knew that it was her responsibility to monitor the pools and these swimmers, including Jay Santarlasci; consciously and deliberately ignored these swimmers, including Jay Santarlasci for a period of approximately twenty minutes; knew and/or should have known that, beginning sometime around 2:40 p.m. on December 2, 2001, Jay Santarlasci was unconscious and helpless at the bottom of the lap pool at the Ruef Natatorium; consciously ignored Jay Santarlasci for a period of approximately ten minutes after he became unconscious and helpless at the bottom of the lap pool; and failed and refused to rescue Jay Santarlasci from the bottom of the lap pool.

171.    As a direct and proximate result of Defendant Erin Malone's negligence, gross negligence, recklessness, and willful and wanton acts and/or omissions, as aforesaid, Jay Santarlasci suffered needlessly and painfully for numerous minutes prior to his death by drowning, as he struggled to remain alive after inhaling water and sinking to the bottom of the pool.

172.    Jay Santarlasci's pain, suffering, fear and death were directly and proximately caused by the negligence, gross negligence, recklessness and willful and wanton conduct of Defendant Erin Malone.

173.    As a direct and proximate result of Defendant Erin Malone's negligent, grossly negligent, reckless and willful and wanton acts and omissions, as aforesaid, the Estate of Jay Santarlasci has been deprived of a lifetime of his earnings.

32

174.    For such injuries proximately resulting from Defendant Erin Malone's negligence, gross negligence, recklessness and willful and wanton conduct, as aforesaid, Defendant Erin Malone is liable to Plaintiff for compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial, and for punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendant Erin Malone as follows: (1) compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial; (2) punitive damages; (3) all costs associated with this action; (4) pre- and post-judgment interest as permitted by law; and (5) such other and further relief as this Court deems just and proper.

**COUNT IX**
**Survival**
**Negligence, Gross Negligence, Recklessness and**
**Willful and Wanton Conduct**
(***Lafayette College; Respondeat Superior***)

175.    Paragraphs 1-174 are realleged and incorporated as if fully set forth herein.

176.    Plaintiff Elizabeth A. Stanton brings this claim in her capacity as personal and legal representative of the Estate of Joseph H. Santarlasci III, pursuant to 42 Pa. Cons. Stat. Ann. § 8302 (West 2002). This survival claim is brought against Defendant Lafayette College in its capacity as the employer of Defendant Erin Malone.

177.    The aforesaid drowning death was directly and proximately caused by the negligence, gross negligence, recklessness and willful and wanton conduct of Defendant Erin Malone.

178.    Defendant Erin Malone's conduct, as aforsesaid, was so reckless as to evince a conscious disregard and/or indifference for the safety and/or rights of others generally, and Jay

33

Santarlasci specifically, in that Erin Malone: knew and/or should have known that there were swimmers in the Ruef Natatorium pools, including Jay Santarlasci; knew that it was her responsibility to monitor the pools and these swimmers, including Jay Santarlasci; consciously and deliberately ignored these swimmers, including Jay Santarlasci for a period of approximately twenty minutes; knew and/or should have known that, beginning sometime around 2:40 p.m. on December 2, 2001, Jay Santarlasci was unconscious and helpless at the bottom of the lap pool at the Ruef Natatorium; consciously ignored Jay Santarlasci for a period of approximately ten minutes after he became unconscious and helpless at the bottom of the lap pool; failed and refused to rescue Jay Santarlasci from the bottom of the lap pool.

179.    The above described acts of Defendant Erin Malone, and each of them, were committed within the scope of her employment with Defendant Lafayette College in that she committed them while engaged in the business of her employer.

180.    As Defendant Erin Malone's employer, Defendant Lafayette College is responsible for all of the damages proximately caused by the negligence, gross negligence, recklessness and willful and wanton conduct of Defendant Erin Malone while acting within the scope of her employment.

181.    As a direct and proximate result of Defendant Lafayette College's willful and wanton acts and/or omissions, as aforesaid, Jay Santarlasci suffered needlessly and painfully for numerous minutes prior to his death by drowning, as he struggled to remain alive after inhaling water and sinking to the bottom of the lap pool.

182.    Jay Santarlasci's pain, suffering, fear and death were directly and proximately caused by the negligence, gross negligence, recklessness and willful and wanton conduct of

34

Defendant Erin Malone, which negligence, gross negligence, recklessness and willful and wanton conduct was committed by her while in the scope of her employment by Defendant Lafayette College, and for which, as a result, Defendant Lafayette College is vicariously liable.

183.    As a direct and proximate result of Defendant Erin Malone's negligent, grossly negligent, reckless and willful and wanton acts and omissions, as aforesaid, the Estate of Jay Santarlasci has been deprived of a lifetime of his earnings.

184.    For such injuries proximately resulting from Defendant Erin Malone's negligence, gross negligence, recklessness and willful and wanton conduct, as aforesaid, Defendant Lafayette College  is liable to Plaintiff for compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial, and for punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants Lafayette College and Erin Malone as follows: (1) compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial; (2) punitive damages; (3) all costs associated with this action; (4) pre- and post-judgment interest as permitted by law; and (5) such other and further relief as this Court deems just and proper.

**COUNT X**
**Survival**
**Negligence *Per Se***
(***Lafayette College***)

185.    Paragraphs 1- 184 are realleged and incorporated as if fully set forth herein.

186.    Plaintiff Elizabeth A. Stanton brings this claim in her capacity as personal and legal representative of the Estate of Joseph H. Santarlasci III, pursuant to 42 Pa. Cons. Stat. Ann. § 8302 (West 2002).  This survival claim is brought against Defendant Lafayette College.

187.    Pennsylvania law requires that:  "One or more *competent* lifeguards in an adequate number shall be on duty at the waterside at all times the public bathing place is open to use by bathers, and *may not be assigned other tasks which will divert attention from the safety of the bather*."  28 Pa. Code § 18.42 (2002) (emphasis added).  Violations of this act "by omission or commission, or in any manner" constitute a "summary offense."  Pa. Stat, Ann. tit. 35, § 680d (West 2002).  Such violations also constitute negligence *per se.*

188.    The Pennsylvania Administrative Code rules and regulations concerning "public bathing places" apply to the pools at the Ruef Natatorium. The definition of covered "public bathing places" includes all "outdoor or indoor place[s] used for amateur, professional or recreative swimming or bathing whether or not a fee is charged for admission or for the use of the place." 28 Pa. Code § 18.1 (2002).   The definition of covered "public bathing places" includes the Ruef Natatorium.

189.    Upon information and belief, as aforesaid, Defendant Lafayette College employed incompetent lifeguards and/or employed lifeguards in inadequate numbers and/or assigned the lifeguards it did employ to other tasks (including homework assignments) which diverted the attention of said lifeguards from the safety of bathers in the Ruef Natatorium, and, specifically, diverted their attention from the safety of Jay Santarlasci.

190.    As a direct and proximate result of Defendant Lafayette College's acts and/or omissions in employing incompetent lifeguards, including, but not limited to, Defendant Erin Malone, and/or in employing lifeguards in inadequate numbers, including, but not limited to, Defendant Erin Malone, and/or in assigning the lifeguards it did employ, including, but not limited to, Defendant Erin Malone, to other tasks (including homework assignments) which

diverted the attention of said lifeguards from the safety of bathers in the Ruef Natatorium, and, specifically, diverted the lifeguards' attention from the safety Jay Santarlasci, Jay Santarlasci suffered serious bodily injury and death from drowning.  The acts and omissions of Lafayette College in this regard constitute negligence *per se*.

191.    As a direct and proximate result of Defendant Lafayette College's negligence *per se*, as aforesaid, Jay Santarlasci suffered needlessly and painfully for numerous minutes prior to his death by drowning, as he struggled to remain alive after inhaling water and sinking to the bottom of the pool.

192.    Jay Santarlasci's pain, suffering, fear and death were directly and proximately caused by the negligence *per se* of Defendant Lafayette College.

193.    As a direct and proximate result of Defendant Lafayette College's negligence *per se*, as aforesaid, the Estate of Jay Santarlasci has been deprived of a lifetime of his earnings.

194.    For such injuries and death proximately resulting from Defendant Lafayette College's foregoing negligence *per se*, Defendant Lafayette College is liable to Plaintiff for compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant Lafayette College, as follows: (1) compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial; (2) all costs associated with this action; (3) pre- and post-judgment interest as permitted by law; and (4) such other and further relief as this Court deems proper.

## COUNT XI
### Survival
### Negligent Employment, Retention and Entrustment
### (*Lafayette College*)

195.    Paragraphs 1 – 194 are realleged and incorporated as if fully set forth herein.

196.    Plaintiff Elizabeth A. Stanton brings this claim in her capacity as personal and legal representative of the Estate of Joseph H. Santarlasci III, pursuant to 42 Pa. Cons. Stat. Ann. § 8302 (West 2002).  This survival claim is brought against Defendant Lafayette College.

197.    Defendant Lafayette College employed Defendant Erin Malone as a lifeguard at the Ruef Natatorium at the Allan P. Kirby Sports Center.  Upon information and belief, Defendant Lafayette College hired Defendant Erin Malone as a lifeguard on the basis of her financial need as a student and not on the basis of her fitness for lifeguard employment.  Upon information and belief, Defendant Lafayette College provided inadequate and/or no training to its student lifeguards, including, but not limited to, Defendant Erin Malone, and inadequate and/or no supervision over its student lifeguards, including, but not limited to, Defendant Erin Malone.

198.    Defendant Erin Malone's actions as aforesaid demonstrated that she was incompetent, improperly trained, irresponsible, and unfit for the position for which she was employed.

199.    Defendant Lafayette College knew and/or should have known that Defendant Erin Malone was incompetent, improperly trained, irresponsible, and unfit for the position for which she was employed.

200.    Despite its knowledge, Defendant Lafayette College employed and retained Defendant Erin Malone in the position of lifeguard at the Ruef Natatorium, which employment and retention were negligent and/or grossly negligent and/or reckless.

201.    Despite its knowledge, as aforesaid, Defendant Lafayette College entrusted the Ruef Natatorium, and the health, safety and welfare of bathers using its pools there, to the care of Defendant Erin Malone, which entrustment was negligent and/or grossly negligent and/or reckless.

202.    Defendant Erin Malone's conduct, as aforesaid, was negligent and/or grossly negligent and/or reckless and/or willful and wanton, and this conduct demonstrated her unfitness to serve as a lifeguard at the Ruef Natatorium.

203.    As a direct and proximate result of Defendant Erin Malone's conduct, as aforesaid, Jay Santarlasci suffered needlessly and painfully for numerous minutes prior to his death by drowning, as he struggled to remain alive after inhaling water and sinking to the bottom of the lap pool at the Ruef Natatorium.

204.    Jay Santarlasci's pain, suffering, fear and death were directly and proximately caused by the negligence and/or recklessness and/or willful and wanton conduct of Erin Malone, which conduct demonstrated her unfitness for employment as a lifeguard at the Ruef Natatorium.

205.    Defendant Erin Malone's negligence and/or gross negligence and/or recklessness and/or willful and wanton conduct was a direct and proximate cause of the serious bodily injury, pain, suffering and death of Jay Santarlasci, which conduct demonstrated her unfitness for employment as a lifeguard at the Ruef Natatorium.

206.   As aforesaid, Defendant Lafayette College's negligent entrustment was a direct and proximate cause of the serious bodily injury, pain and suffering and death of Jay Santarlasci.

207.   For such injuries proximately resulting from Defendant Lafayette College's aforementioned negligent employment, retention and entrustment, Defendant Lafayette College is liable to the Plaintiff for compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant Lafayette College, as follows: (1) compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial;  (2) all costs associated with this action; (3) pre- and post-judgment interest as permitted by law; and (4) such other and further relief as this Court deems proper.

### COUNT XII
### Survival: Breach of Nondelegable Duty to Invitee
### (*Lafayette College*)

208.   Paragraphs 1 – 207 are hereby realleged and incorporated as if fully set forth herein.

209.   Plaintiff Elizabeth A. Stanton brings this claim in her capacity as personal and legal representative of the Estate of Joseph H. Santarlasci III, pursuant to 42 Pa. Cons. Stat. Ann. § 8302 (West 2002).  This survival claim is brought against Defendant Lafayette College.

210.   Defendant Lafayette College owed a nondelegable duty of care to Jay Santarlasci, who was an invitee to the Ruef Natatorium.

211.   As a possessor of land, Defendant Lafayette College was responsible for any and all dangerous conditions arising on its premises. Such dangerous conditions at the Ruef

40

Natatorium included, but were not limited to, the lack of a raised lifeguard chair and the presence of an unfit, improperly trained and unqualified lifeguard, who, at the time of Jay Santarlasci's greatest need, acted with negligence, gross negligence, recklessness and willful and wanton disregard.

212.    As a direct and proximate result of Defendant Lafayette College's acts and/or omissions, as aforesaid, Jay Santarlasci suffered needlessly and painfully for numerous minutes prior to his death by drowning, as he struggled to remain alive after inhaling water and sinking to the bottom of the pool.

213.    Through its conduct as aforesaid, Defendant Lafayette College breached its non-delegable responsibility for dangerous conditions on its premises, including, but not limited to, the conditions at the Ruef Natatorium, and Jay Santarlasci died from drowning as a result.

WHEREFORE, Plaintiff demands judgment against Defendant Lafayette College, as follows: (1) compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial; (2) all costs associated with this action; (3) pre- and post-judgment interest as permitted by law; and (4) such other and further relief as this Court deems proper.

### COUNT XIII
### Survival – Negligence
### (*Lafayette College*)

214.    Paragraphs 1 – 213 are hereby realleged and incorporated as if fully set forth herein.

215.    Plaintiff Elizabeth A. Stanton brings this claim in her capacity as personal and legal representative of the Estate of Joseph H. Santarlasci III, pursuant to 42 Pa. Cons. Stat. Ann. § 8302 (West 2002).  This survival claim is brought against Defendant Lafayette College.

216.    At all relevant times herein, Defendant Erin Malone was employed by Defendant Lafayette College as a lifeguard at the Ruef Natatorium.

217.    At all relevant times herein, Defendant Erin Malone obtained and maintained her employment as a lifeguard at the Ruef Natatorium not on the basis of her skill or fitness for her position, but, rather, on the basis of her financial need as a student at Lafayette College. Upon information and belief, Defendant Lafayette College employed students as lifeguards instead of employing professional lifeguards because, pursuant to the its own mission statement, Defendant Lafayette College concluded that the benefits of properly trained and supervised lifeguards did not exceed the "costs" involved.

218.    At all relevant times herein, Defendant Lafayette College was aware that its employee lifeguards, including, but not limited to, Defendant Erin Malone were, while acting within the scope of their employment as lifeguards at the Ruef Natatorium, ignoring or flouting nationally recognized safety rules and practices for lifeguards.

219.    Defendant Lafayette College knew, or reasonably should have known, about the substantially increased risk of serious bodily injury and/or death by drowning resulting from its student lifeguards ignoring or flouting nationally recognized safety rules and practices for lifeguards.  Indeed, its own mission statement recognizes the importance of "voluntary or recognized [safety] standards" and states, falsely, that the College complies with such standards.

220.    Defendant Lafayette College owed a duty of care not to harm others, including the duty not to place others at unreasonable risk of foreseeable harm.

221.    Defendant Lafayette College breached its duty of care owed to Jay Santarlasci by hiring college students as lifeguards based on those students' financial need rather than their

fitness for lifeguard duties, and by permitting its student lifeguards to ignore or flout nationally recognized safety rules and practices for lifeguards. Said breach was also the direct and proximate result of the failure of Defendant Lafayette College either to train or supervise its college student lifeguards.

222.    The aforesaid incident was directly and proximately caused by the aforesaid negligent acts and omissions of Defendant Lafayette College, resulting in Jay Santarlasci's death by drowning.

WHEREFORE, Plaintiff demands judgment against Defendant Lafayette College, as follows: (1) compensatory damages in an amount in excess of $75,000.00, which amount shall be proven at trial; (2) all costs associated with this action; (3) pre- and post-judgment interest as permitted by law; and (4) such other and further relief as this Court deems proper.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury.

SILVERMAN BERNHEIM & VOGEL

By:_____
        Jonathan S. Ziss
        No. 42437
        Daniel S. Bernheim, 3d
        No. 32736
        **Attorneys for ELIZABETH A. STANTON,**
        **Personal Representative of**
        **JOSEPH H. SANTARLASCI, III**
        **and Administrator of the Estate of**
        **JOSEPH H. SANTARLASCI, III**

*Of Counsel:*

Peter C. Grenier, Esquire
Anne R. Noble, Esquire
BODE & GRENIER, LLP
Ninth Floor
1150 Connecticut Avenue NW
Washington DC  20036
Telephone:        202 828 4100
Facsimile:        202 828 4130