## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ELIZABETH A. STANTON,**<br>**Personal Representative of**<br>**JOSEPH H. SANTARLASCI, III,**<br>**Deceased, and Administrator of the**<br>**Estate of JOSEPH H. SANTARLASCI, III,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**LAFAYETTE COLLEGE, et al.,**<br><br>    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **Civil Action No. 02 CV 4779**<br>)<br>)<br>)<br>) |

### ORDER

AND NOW this _____ day of _____, 2003,

upon consideration of the Motion of Plaintiff Elizabeth A. Stanton to Compel, for a

Determination of Waiver of Objections, and for Sanctions, it is hereby **ORDERED** and

**DECREED** that the Motion is **GRANTED** and it is further **ORDERED** and **DECREED**

that:

(1)   Defendant Lafayette College has waived any objections to Plaintiff's First Set of Interrogatories and Plaintiff's First Request for the Production of Documents;

(2)   Defendant Lafayette College shall provide full, complete and verified Answers to Plaintiff's First Set of Interrogatories and produce all documents responsive to Plaintiff's First Request for the Production of Documents within 10 (ten) days from the date of this Order;

(3)   Defendant Lafayette College shall pay to Plaintiff $_____ within 10 (ten) days from the date of this Order, representing reimbursement to Plaintiff of her costs and fees, including reasonable attorney's fees, incurred by her as a result of having to prepare, file and present a motion to compel in this case.

BY THE COURT:

_____
                                J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ELIZABETH A. STANTON, **Personal Representative of** JOSEPH H. SANTARLASCI, III, Deceased, and Administrator of the Estate of JOSEPH H. SANTARLASCI, III, | ) ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) **Civil Action No. 02 CV 4779** ) |
| LAFAYETTE COLLEGE, *et al.*, | ) ) |
| Defendants. | ) |

**MOTION OF PLAINTIFF ELIZABETH A. STANTON
(A) TO COMPEL RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR THE
PRODUCTION OF DOCUMENTS AND FIRST SET OF INTERROGATORIES
TO DEFENDANT LAFAYETTE COLLEGE,
(B) FOR A DETERMINATION THAT DEFENDANT LAFAYETTE COLLEGE
HAS WAIVED ANY OBJECTIONS TO PLAINTIFF'S FIRST REQUEST FOR
THE PRODUCTION OF DOCUMENTS AND FIRST SET OF
INTERROGATORIES; AND (C) FOR SANCTIONS**

COMES NOW PLAINTIFF, Elizabeth A. Stanton, Personal Representative of

Joseph H. Santarlasci, III, Deceased, and Administrator of the Estate of Joseph H.

Santarlasci, III ("Ms. Stanton"), by and through her undersigned counsel, and

(a) pursuant to Fed. R. Civ. P. 37(a), moves this Court for an Order compelling

adequate and appropriate responses to her First Request for Production of Documents

("First Request") and First Set of Interrogatories ("First Interrogatories") from Defendant

Lafayette College ("Lafayette") within ten days of entry of such Order;

(b) pursuant to Fed. R. Civ. P. 33(b)(4) and 34(b), moves this Court for an Order finding that Lafayette has waived any objections to either the First Request or the First Interrogatories, as no objections were timely filed; and

(c) pursuant to Fed. R. Civ. P. 37(d), moves this Court for an Order imposing sanctions on Lafayette, for its violations of Fed. R. Civ. P. 33 and 34, including an award of costs and fees, including attorney's fees, incurred by Ms. Stanton as a result of having to bring this Motion.

In support of her Motion, Plaintiff refers to the accompanying Memorandum of Law, attached hereto and made a part hereof.

Respectfully submitted,

Peter C. Grehier (admitted *pro hac vice*)
Anne R. Noble (admitted *pro hac vice*)
BODE & GRENIER. LLP
1150 Connecticut Avenue NW
9th Floor
Washington, DC 20036
Telephone: (202) 828-4100
Fax: (202) 828-4130

-and-

Jonathan S. Ziss, Esquire
Jonathan A. Cass, Esquire
SILVERMAN BERNHEIM & VOGEL, P.C.
Two Penn Center Plaza
Philadelphia PA 19102
Telephone: (215) 636-3962
Fax: (215) 636-3999

*Counsel for Plaintiff*

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **ELIZABETH A. STANTON,**<br>**Personal Representative of**<br>**JOSEPH H. SANTARLASCI, III,**<br>**Deceased, and Administrator of the**<br>**Estate of JOSEPH H. SANTARLASCI, III,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**LAFAYETTE COLLEGE,** *et al.,*<br><br>    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **Civil Action No. 02 CV 4779**<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO COMPEL, FOR A DETERMINATION OF WAIVER
OF OBJECTIONS, AND FOR SANCTIONS**

**I.    Factual Background**

This case arose from the December 2, 2001 death by drowning of 26-year-old Joseph H. Santarlasci, III ("Jay") in a pool inside Defendant Lafayette College's Ruef Natatorium. Throughout the many <u>minutes</u> that Jay lay unconscious at the bottom of lane 4 of the lap pool that afternoon, the lifeguard employed by the College to monitor the pool and guard its patrons, Defendant Erin Malone ("Ms. Malone"), sat behind a desk, in street clothes, doing her homework and socializing with her boyfriend.    By the time another pool patron noticed Jay's body, and a third patron pulled him from the water, Jay was cyanotic, and in respiratory and cardiac arrest. He was pronounced dead at 3:40 p.m.

In July 2002, Ms. Stanton brought this suit against Lafayette and Ms. Malone, alleging various causes of action under Pennsylvania's wrongful death and survival statutes.

On December 16, 2002, Ms. Stanton served, by mail, her First Request for Production of Documents ("First Request") and First Set of Interrogatories ("First Interrogatories") on Lafayette.  Courtesy copies of these documents also were sent that day by facsimile to counsel for Lafayette.  Pursuant to Fed. R. Civ. P. 5, 6, 33 and 34, Lafayette's responses to the First Request and the First Interrogatories were due on Monday, January 20, 2003.

One week later, on December 23, 2002, Ms. Stanton timely served on Lafayette her *responses* to Lafayette's First Set of Interrogatories and First Request for Production of Documents.[1]  These initial responses included both 21 pages of detailed answers to the interrogatories and 535 pages of requested documents.  Additionally, the documents were labeled and organized pursuant to the Federal Rules, so as make it readily apparent which documents were sent in response to which requests.  *See* Fed. R. Civ. P. 34(b).  In the seven weeks since then, moreover, Ms. Stanton also has served on Lafayette several supplemental responses to both the interrogatories and document requests.  To date, Ms. Stanton has provided to Lafayette College, inter alia, approximately 800 pages of documents.

On January 23, 2003 (that is, three days after his client's responses were due), counsel for Lafayette College sent correspondence to counsel for Ms. Stanton, in which Lafayette College's counsel stated that he had been "working on the responses" and hoped to "have them out to you shortly."  The delay, he suggested, was as a result of the

---

[1]    On October 18, 2002, prior to complying with the conference requirements of  Fed. R. Civ. P. 26(f), Lafayette prematurely served Interrogatories and Requests for Production on Ms. Stanton.  Despite the fact that these discovery requests were not permitted by the Federal Rules, Ms. Stanton timely served appropriate objections to these requests on

time and effort spent by him "preparing for a successful mediation."[2]  A copy of this January 23, 2003 correspondence is attached hereto as Exhibit 1.[3]  (Ironically, counsel for Lafayette College then unilaterally cancelled the mediation, which was set to take place on February 1, 2003.  It was not until yesterday, February 12, 2003, that an initial mediation was held, and it was quickly abundantly clear that the case would not settle.)

While supposedly unable to respond to Ms. Stanton's discovery requests as a result of "mediation preparations," however, counsel for Lafayette College nevertheless *was* able to find time during that same period to (a) serve subpoenas on six non-parties; (b) propound a second set of interrogatories and a second set of document requests on Plaintiff; and (c) file a substantively complex motion for a protective order in response to Ms. Stanton's First Requests for Admission, which also remain unanswered, in toto.[4]

---

November 21, 2002.  Subsequently – and one day earlier than the Scheduling Order entered in this matter required -- Ms. Stanton timely served her substantive responses.

[2]  *Compare Garret v. Miller Plating Corp.*, 100 F.R.D. 418 (S.D. Mich. 1983) (granting motion to compel and entering financial sanctions against defendant who failed to answer interrogatories, after finding that defendant's excuse – that "its failure to respond to plaintiff's interrogatories [was] occasioned by the restructuring of defendant's business following a hostile take-over" – "should have been raised as a timely answer to plaintiff's interrogatories").

[3]  Lafayette College's counsel also referenced an alleged conversation wherein Ms. Stanton's counsel supposedly agreed to a request from the College for an "extension of time" to respond to Ms. Stanton's discovery requests.  No such extension was agreed to -- or even, to the best of counsel for Ms. Stanton's knowledge, even requested by the College.

[4]  Counsel for Ms. Stanton served a First Request for Admissions on counsel for Lafayette by mail on January 9, 2003.  Subsequent to receiving these Requests, counsel for Lafayette College telephoned counsel for Ms. Stanton and demanded that counsel for Ms. Stanton "pick" "which hundred" of the Requests Ms. Stanton wanted answered.  Because Ms. Stanton's counsel believes that each and every one of the Requests is justified – and because, as apparently has come to pass, Ms. Stanton was legitimately concerned about receiving any responses to any discovery she has propounded in this case – Ms. Stanton's counsel refused to eliminate any of the Requests.  *See* Plaintiff's Opposition to Motion of Defendant Lafayette College for a Protective Order, filed herein.

After another week passed with no discovery forthcoming, Plaintiff's counsel telephoned counsel for Lafayette College in an attempt to resolve the impasse. During that telephone conversation, counsel for Lafayette (Jonathan K. Hollin, Esquire) responded to counsel for Ms. Stanton's inquiries about the discovery by saying, "**fuck you**," and, upon learning that Ms. Stanton planned to file the Motion now before this Court, confidently predicted that this Court (and, specifically, Judge O'Neill) would "never" grant it.

On January 31, 2003, Lafayette College produced a small pile of unlabeled documents, totaling 203 pages.[5] Nearly one-third of these pages consisted of an internal investigation of the Incident conducted by Lafayette College -- which the College knew Plaintiff had obtained a year earlier. (Indeed, Plaintiff had produced a copy of this report to the College on December 23, 2002). The College did not provide any formal responses to Plaintiff's First Request or First Interrogatories.

On February 5, 2003, Plaintiff sent a detailed deficiency letter to counsel for the College and demanded formal responses to both the First Request and the First Interrogatories, as well as copies of the documents requested in the First Request.[6] In that letter, inter alia, Plaintiff again reminded the College that because the College had not sought the assistance of this Court with regard to either of these discovery matters (by, for example, seeking a protective order) and had served no objections, it had waived any objections it might have had. Plaintiff also questioned Lafayette's unilateral grant to itself of an extension without temporal limitation.

---

[5]   Because they are not labeled, and because they were not accompanied by any formal response, Plaintiff has no way of determining to which of Plaintiff's Requests these documents supposedly respond.

4

Near the close of business on Monday, February 10, 2003 (that is, <u>eight</u> <u>weeks</u> after being served with discovery requests), counsel for Lafayette College sent – by telecopier – additional documents totaling 102 pages, as well as the College's Answers to Plaintiff's First Set of Interrogatories ("Answers") and a formal response to Plaintiff's First Request for the Production of Documents ("Responses").   Of the 102 pages produced on February 10, 2003, <u>90</u> are copies of documents either produced by Plaintiff to the College, or otherwise known by the College already to be in Plaintiff's custody and control. (Indeed, the documents produced include the demand letter sent to Lafayette College by Plaintiff in April 2002.)   In other words, of this set of documents, <u>12</u> pages represent <u>bona</u> <u>fide</u> discovery responses.[7]

Additionally, the Answers received by Plaintiff were neither prepared by anyone at the College nor acknowledged or sworn to by anyone at the College. *See* Answers at ¶1.  Indeed, the only name appearing anywhere on the Answers is that of the College's attorney, Jonathan K. Hollin, Esquire.[8]   Moreover, on the basis of objections which it is no longer legally entitled to interpose, the College unilaterally refused to produce whole categories of documents or Answers to at least one  Interrogatory. *See, e.g.,* Responses at ¶¶ 13, 14, 36, 37, 38, 45, 61; Answers at ¶ 15. (By highlighting these Responses and Answer, Plaintiff does not concede that the other Responses and Answers are sufficient.)

---

[6]   A copy of the deficiency letter is attached hereto as Exhibit 1.

[7]   The second set of documents was neither labeled nor otherwise identified.  Once again, Plaintiff has no way of determining to which requests these documents are allegedly responsive.

[8]   Copies of the Answers and the Responses are attached hereto as Exhibits 3 and 4, respectively.  Copies of Plaintiff's First Set of Interrogatories and First Request for the Production of Documents are also appended hereto as Exhibits 5 and 6, respectively, for the Court's ease of reference.

Finally, even if, <u>arguendo,</u> the College was found not to have waived its objections, the objections themselves are, in most cases, inapposite, unspecific and/or inaccurate statements of the law. In short, they do not withstand even superficial scrutiny.

Because Lafayette College's responses are both very late and entirely deficient, and because of the apparent futility of any further discussion with the College's counsel regarding this discovery matter, Plaintiff respectfully requests that this Court enter an Order finding that Lafayette College has waived any objections it might once have had, compelling full and complete responses and answers to her requests and interrogatories by a date certain, and awarding her both her costs and attorney's fees incurred as a result of having to bring this Motion.

## II.    Argument

### A.    By Failing to Respond to Plaintiff's Discovery Requests for Eight Weeks, Defendant Lafayette College Waived Its Right to Object to the Requests.

In this Court, discovery and "discovery disputes . . . are governed by federal law, especially the Federal Rules of Civil Procedure and the Federal Rules of Evidence[.]" *Pearson v. Miller*, 211 F.3d 57, 61 (3d Cir. 2000).   Compliance with the letter of the Federal Rules of Civil Procedure – including those governing discovery -- is much more than a matter of formality.   Indeed, "[t]ime limits imposed by the rules and the court serve an important purpose for the expeditious processing of litigation." *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984); *see generally Garret v. Miller Plating Corp.*, 100 F.R.D. 418 (E.D. Mich. 1983) ("The rules of discovery are designed to impose an orderly process for the exchange of information that is compatible with the goal of the prompt and efficient resolution of cases on the Court's docket. Failure of a party to comply with the time limits disrupts the orderly and prompt

6

resolution of the lawsuit."). All parties entering the federal courts are expected to "fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial." *Matter of Sanction of Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984) (*en banc*). These duties are reciprocal: Lafayette College's responsibilities here go well beyond its service of discovery requests – the College has a duty to timely respond to requests, as well.

Here, however, the College has failed to do so. Indeed, without serving objections, without requesting an extension and without filing even a single motion, Lafayette College simply did not bother to answer any interrogatories or to provide requested documents for eight weeks after Plaintiff made her initial requests. *See Poulis*, 747 F.2d at 868 (emphasis added) ("If compliance [with the time limits imposed by the Federal Rules] is not feasible, a timely request for an extension should be made to the court"); *see, e.g., Coregis Insurance Co. v. Baratta & Fenerty, Ltd.*, 187 F.R.D. 528, 530 (E.D. Pa. 1999) (where Plaintiff "made no request" to Court for "an extension of time to respond" to discovery requests, and did not respond to the discovery requests, Plaintiff failed "to comply with the letter and spirit of the Federal Rules of Civil Procedure"). Lafayette College (an institution) should not be permitted to serve continuous discovery requests on Ms. Stanton (an individual), while concomitantly flouting its responsibility to respond to her requests.

As a result of its purposeful foot-dragging, Lafayette should be deemed to have waived any right it might ever have had to object to the First Interrogatories and First Requests. Indeed, as this Court previously has held, a defendant's "failure to make timely objections to plaintiffs' interrogatories and requests for production within the time

proscribed by the rules constitutes a waiver of any objections it might have had." *Klitsch v. General Motors Corp.*, 1990 WL 192037, \*1 (E.D. Pa.) (emphasis added). *See Antico v. Honda of Camden*, 85 F.R.D. 34, 35-36 (E.D. Pa. 1979) ("failure to object to a discovery request in a timely fashion constitutes a waiver of the objection"); *see also Coregis Insurance Co.*, 187 F.R.D. at 530 (emphasis added) (even "an agreement among the parties to wait for responses beyond the 30-day period is not considered a stay or an extension of time for filing objections").

Under any formulation of the applicable Rules here, Lafayette's time to object expired on January 20, 2003 (prior to which it had had 35 days to do so pursuant to the Federal Rules) -- and any objections it may have had to the First Request or First Interrogatories therefore have been waived.[9] *See Daumer v. Allstate Insurance Co.*, 1992 WL 277650, \*2 (E.D. Pa. 1992) (where defendant failed to abide by Rule 34 by not filing timely response to plaintiff's request for production of documents, "defendant has frustrated" the purpose of the Federal Rules of Civil Procedure, "and cannot now complain that its failure results in the waiver of its objections"); *Davis v. Romney*, 53 F.R.D. 247, 248 (E.D. Pa. 1971) (by failing to file timely response – or timely objections -- to interrogatories, defendants "clearly" waived "any objections they might have had" and "[i]f they feel that the questions are unfair, they have no one to blame but themselves for being required to answer them now"); *see generally Cephus v. Busch*, 47 F.R.D. 371 (E.D. Pa. 1969).

Because Lafayette College has forfeited all objections to the First Request and First Interrogatories, this Court should order the College to provide all the requested

documents, as well as detailed and meaningful answers to <u>all</u> the interrogatories, immediately.

**B.      Even If It Had Not Waived Its Right to Object, Lafayette College Still Should Be Ordered to Produce Documents and Fully Answer Interrogatories Herein, Because the Boilerplate Objections It Raises Are Unspecific and Unavailing.**

Even if Lafayette College had not waived its objections by failing to timely raise them (as it did), the vast majority of the "objections" it lodged to Plaintiff's First Request for the Production of Documents and First Set of Interrogatories are simply not cognizable.[10]    Plaintiff suggests that, as a review of the College's Answers and Responses demonstrates, the Court's patience would truly be tried by repetition and argument regarding each and every one of the College's inapposite, inappropriate and/or insupportable objections.  For that reason, Plaintiff's argument herein only deals with the most egregious and/or repetitious objections.  Respectfully, however, Plaintiff requests that Lafayette College's objections – all of which are both ill-conceived and untimely -- be overruled and that the Court order the College to answer all interrogatories and produce all responsive documents immediately.  The discovery cut-off in the case is just

---

[9]   *See* Fed. R. Civ. P. 33(b)(3)-(4) (interrogatories); Fed. R. Civ. P. 34(b) (document requests) (each providing that any objections must be made within 30 days of service).

[10]   The objections to the First Requests and First Interrogatories are also so repetitious as to suggest formulation by a computer program, rather than by a lawyer acting with the requisite care and deliberation.  Additionally, the College strenuously objects (in both its Responses and Answers) to Plaintiff's definition of the "Incident" (*i.e.*, "'The Incident' refers to the events of December 2, 2001, when Joseph H. Santarlasci, III became submerged and drowned at the Ruef Natatorium at Lafayette College") on the patently absurd basis that the definition somehow is "neither consistent with the facts nor the Plaintiff's own expert report." *See, e.g.,* Responses at ¶¶10,12,17 and 34; Answers at ¶¶ 6, 9,10 and 12.  The College's cavalier attitude toward its discovery responsibilities is further illustrated by its inaccurate citation to the "Buckley Amendment," repetitive misspelling of its client's own <u>Ruef</u> Natatorium, and by its reference to a "police report previously produced," which was not. *See, e.g.,* Responses at ¶¶ 26, 27, 28, 30, 34, 35, 58 and 49, respectively.

six weeks away, and Plaintiff has been severely prejudiced by the College's abject and apparently deliberate refusal to comply with the explicit provisions of the Federal Rules of Civil Procedure.

1.    The Law Requires Objections to Be Specific and Detailed, Which Lafayette College's Objections Are Not.

As this Court previously has held, "[t]he party opposing discovery . . . has the burden 'to clarify and explain its objections and to provide [the factual] support therefore.'" *Barnes Foundation v. Township of Lower Merion*, 1996 WL 653114, *2 (E.D. Pa.) (*quoting Roesberg v. Johns-Manville Corp.,* 85 F.R.D. 292, 297 (E.D. Pa. 1980)). Thus, for example, "'to resist answering interrogatories, [a party] cannot invoke the defense of oppressiveness or unfair burden without detailing the nature and extent thereof.'" *Barnes Foundation*, 1996 WL 653114 at *2 (*quoting Martin v. Easton Publishing Co.*, 85 F.R.D. 312, 316 (E.D. Pa. 1980)). "The mere statement by a party that a discovery request is 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection." *Barnes Foundation*, 1996 WL 653114 at *2 (*quoting Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)).

Here, however, the College has objected to two-thirds of the Requests, as well as to more than half of the Interrogatories, on the alleged grounds that the Requests and Interrogatories are "overly broad and unduly burdensome" -- although the College, in not one instance, explains how or why they are "overly broad and unduly burdensome." Indeed, it would be difficult for the College to do so, given the fact that the "overly broad and unduly burdensome" Requests include, inter alia, such patently not "overly broad and unduly burdensome" requests as Requests at ¶ 29 ("All W-2 and 1099 statements issued to Erin Malone by or on behalf of Lafayette College") and ¶ 34 ("All documents which

10

relate to, reflect or refer to Erin Malone's tasks and responsibilities as a lifeguard <u>on the</u> <u>day of the Incident</u>"). *Cf. Alexander v. Rizzo*, 50 F.R.D. 374, 375 (E.D. Pa. 1970) (fact that responding to discovery requests allegedly would require "'hundreds of employees of the Police Department many years of man hours'" to complete did <u>not</u> render discovery requests sufficiently "burdensome and oppressive" so as to warrant a protective order given the "obvious necessity of the information sought to be discovered").    *See* *generally* Fed. R. Civ. P. 36 advisory committee notes ("The rule as revised adopts the majority view, as in keeping with a basic principle of the discovery rules that a reasonable burden may be imposed on the parties when its discharge will facilitate preparation for trial and ease the trial process").

In objecting to Plaintiff's discovery requests, Lafayette College has submitted no affidavit, no proof, no argument, in fact <u>nothing,</u> to show that any of the Requests or Interrogatories are "overly broad" or "unduly burdensome." Indeed, none of them are, and, as a result, the College should be ordered to produce all responsive documents and answer all interrogatories immediately.

> 2.    Lafayette College Has Failed to Demonstrate – or Even Attempt to Demonstrate -- How the Information and Documents Sought by Plaintiff <u>Are Not Relevant.</u>

As this Court has recognized, "Relevancy is to be broadly construed for discovery purposes and is not limited to the precise issues set out in the pleadings or to the merits of the case." *Barnes Foundation*, 1996 WL 653114 at *1 (*citing Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Indeed, "discovery requests may be deemed relevant if there is any possibility that the information to the general subject matter of the action." *Ibid. See Oppenheimer*, 437 U.S. at 351 (*citing* Fed. R. Civ. P. 26(b)(1);

*Hickman v. Taylor*, 329 U.S. 495, 501 (1947)) ("The key phrase in this definition – 'relevant to the subject matter involved in the pending action' – has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case").

In its Responses and Answers, Lafayette College objects to several of Plaintiff's Requests and Interrogatories on grounds that they seek documents or information, <u>inter alia</u>, regarding post-Incident "remedial" efforts and consultations, which, the College contends, are "not relevant and hence not discoverable." Answers at ¶ 3; *see also* Responses at ¶¶ 58-59. The College is wrong. Certainly, given the breadth with which "relevancy" is interpreted, information and documents concerning post-Incident remedial measures are relevant in this case, because they might lead to admissible evidence on, for example, "the feasibility of precautionary measures" – such as the installation of a raised lifeguard chair. *See, e.g., Wainwright v. Washington Metropolitan Area Transit Authority*, 163 F.R.D. 391, 395 (D.D.C. 1995) (ordering defendant elevator manufacturer to produce "[i]nformation on post-injury remedial acts" in case in which Plaintiff was injured in escalator accident; court found such information discoverable on grounds that it "might lead to admissible evidence on the feasibility of precautionary measures"); *see generally* Fed. R. Evid. 407.

Moreover, the party "resisting production of discovery," like Lafayette College here, "ordinarily bears the burden of establishing lack of relevancy." *Barnes Foundation*, 1996 WL 653114 at *1. Lafayette College not only has not met this burden – it has not even tried. Its unilateral assertions of lack of relevancy are insufficient, and the College should be ordered to produce all documents and answer all interrogatories immediately.

3.   The 'Buckley Amendment' Does Not Prohibit the Production of
Documents Sought by the Plaintiff Here.

The College also resists discovery here on grounds that the "Buckley

Amendment" allegedly "protects" (and therefore allegedly prohibits it from disclosing) a

variety of documents requested concerning its student, employee and co-Defendant, Erin

Malone. *See* Responses at ¶¶ 26, 27, 28, 30. (Curiously, the College apparently believes

that its interpretation of the "Amendment" only applies to documents concerning or

referring to its <u>current</u> student, Ms. Malone; the College made no such objections with

regard to documents concerning or referring to its <u>former</u> student, Jay Santarlasci.)  The

College is wrong.

The "Buckley Amendment" on which the College relies does <u>not</u> prohibit the

release of the information sought here. *See* Family Educational Rights and Privacy Act,

codified at 20 U.S.C.S. § 1232g (Lexis 1998 & Supp. 2002). Instead, as the language of

the statute makes clear, the Amendment provides only that "no funds shall be made

available under any applicable program to any educational agency or institution which

has a <u>policy</u> or a <u>practice</u> of permitting the release of educational records (or personally

identifiable information contained therein other than directory information as defined in

another section) of students without the written consent of their parents to any individual,

agency, or organization other than the ones specifically designated therein." *Arizona v.

Birdsall*, 568 P.2d 1094, 1096 (Ariz. Ct. App. 1977) (emphasis added) (*citing* 20 U.S.C. §

1232g(b)(1)).[11]  *See generally Gundlach v. Reinstein*, 924 F. Supp. 684, 690 (E.D. Pa.

1996) (emphasis added) ("FERPA's purpose is to ensure access to records relating to

education for students and parents while protecting the privacy of such records from general disclosure").[12] Importantly, moreover, the statute makes explicit provision for discovery requests such as that made by Plaintiff here, and does not prohibit the release of records where such release is made "pursuant to a lawfully issued subpoena," provided that the parent (or, as here, student) is notified in "advance of compliance." *Id.* (*citing* 20 U.S.C.A. 1232g(b)(2)).[13] Given the fact that all that the "Buckley Amendment" requires is "notification" of Ms. Malone, and given the further fact that Ms. Malone is a co-Defendant in this case, and, in fact, is jointly represented with the College by Lafayette College's counsel, the College's reliance on the "Buckley Amendment" here is not only unavailing but entirely – and, we suggest, knowingly -- disingenuous.    Lafayette College's objections to these requests should be overruled and the College should be ordered to produce the requested documents immediately.

4.    The College Should Not Be Permitted to Hide Behind a Wall of Privilege.

In its Answer to Plaintiff's Complaint, the College asserted nine affirmative defenses, including, for example, "assumption of the risk," "waiver," and "failure of consideration."    *See* Answer and Affirmative Defenses at Third, Fifth and Eighth Affirmative Defenses, filed herein.    In her First Requests, Plaintiff requested documents

---

[11] The permission of Ms. Malone's parents is not required here, because Ms. Malone is an adult and the statute requires her to make these decisions for herself. 20 U.S.C.S. § 1232g(d).

[12] The Court should be aware that Plaintiff previously tendered to counsel for Defendant a proposed "Agreed Protective Order," which would severely limit the disclosure of documents and information either party believed, in good faith, to require confidentiality. *See* Letter to Jonathan K. Hollin, Esquire (February 7, 2003) and attached draft Protective Order, attached hereto as Exhibit 7. Mr. Hollin never responded.

[13] The document request herein, of course, has the same force and effect as a "lawfully issued subpoena."

relating, reflecting or referring to Defendants' Affirmative Defenses, as well as "[a]ll documents which support, relate to, reflect or refer to any defense you assert against any one or more of Plaintiff's claims in this case." *See* Exhibit 6 at ¶¶ 13 and 14. In response, the College produced nothing, claiming that these requests seek "attorney work product and mental impressions which is [*sic*] not discoverable pursuant to the Federal Rules of Civil Procedure." The College should be ordered either to produce responsive documents or to withdraw those affirmative defenses for which, in fact, there is no evidence; alternatively, this Court should consider striking such defenses.

## C.    The College Should Be Sanctioned For Its Refusal to Comply with Proper Discovery Requests.

Finally, because Lafayette's behavior has been both inexcusable and deliberate, this Court should impose sanctions on Lafayette and on its counsel, as provided by the Federal Rules. *See* Fed. R. Civ. P. 37(d)(2) (authorizing sanctions where a party fails to serve either answers to interrogatories or objections to interrogatories); *see generally Philadelphia Nat'l Bank v. Dow Chemical Co.*, 106 F.R.D. 342, 344-45 (E.D. Pa. 1984). At a minimum, this Court should award Plaintiff her costs and expenses, including reasonable attorney's fees, incurred by her as a result of having to bring this Motion in an attempt to secure discovery responses (including documents and answers to interrogatories) that should have been provided to her more than a month ago.

Indeed, in an effort to obtain whatever discoverable information she could, Plaintiff has found it necessary to serve a subpoena upon Lafayette's liability insurer, United Educators Insurance ("United Educators"), as has been found to be permissible. *See Sham v. Hyannis Heritage House Hotel, Inc.*, 118 F.R.D. 24 (D. Mass. 1987) (in negligence suit brought against hotel by representative of drowning victim, documents

15

concerning investigation conducted by defendant's insurer held discoverable).  However,

United Educators has now retained counsel, who have refused (by letter) to comply with

the subpoena.

WHEREFORE, Plaintiff Elizabeth A. Stanton respectfully requests that this Court enter an Order granting her Motion and (a) finding that Defendant Lafayette College has waived any objections to the Interrogatories and Requests for Production; (b) ordering Defendant Lafayette College to provide to Ms. Stanton verified Answers to all of her Interrogatories, as well as all documents in its possession, custody or control which are responsive to her Requests for Production, and further ordering that said answers and documents be delivered to Ms. Stanton within ten days of the entry of said Order; (c) imposing sanctions on Defendant Lafayette College, including the costs and fees, including reasonable attorney's fees, incurred by Ms. Stanton as a result of having to bring this Motion; and (d) granting Ms. Stanton such additional and further relief as the Court deems just and proper.

Respectfully submitted,

_____

Peter C. Grenier (admitted *pro hac vice*)
Anne R. Noble (admitted *pro hac vice*)
BODE & GRENIER. LLP
1150 Connecticut Avenue NW
9th Floor
Washington, DC  20036
Telephone:  (202) 828-4100
Fax:  (202) 828-4130

-and-

Jonathan S. Ziss, Esquire
Jonathan A. Cass, Esquire
SILVERMAN BERNHEIM & VOGEL, P.C.
Two Penn Center Plaza
Philadelphia PA  19102
Telephone: (215) 636-3962
Fax: (215) 636-3999

*Counsel for Plaintiff*

## **CERTIFICATION PURSUANT TO LOCAL RULE 26.1(f)**

I, Anne R. Noble, hereby certify that I and Peter C. Grenier, Esquire, counsel for

Plaintiff in this matter, made reasonable efforts to resolve the discovery dispute which is

the subject of the within discovery motion with counsel for Defendant Lafayette College

without success.

/S//
_____
Anne R. Noble

Dated: February 13, 2003

## CERTIFICATE OF SERVICE

I hereby certify that on this __13th__ day of February, 2003, I served, via Federal

Express and U.S. Mail, first class postage prepaid, the foregoing Motion and the

accompanying Memorandum of Law on:

Jonathan K. Hollin, Esquire
Powell,Trachtman, Logan, Carrle,
  Bowman & Lombardo
475 Allendale Road
Suite 200
King of Prussia, Pennsylvania 19406


_____
Anne R. Noble