IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH A. STANTON, Personal Representative of JOSEPH H. SANTARLASCI, III, Deceased, and Administrator of the Estate of JOSEPH H. SANTARLASCI, III : : : : : : | CIVIL ACTION |
| *Plaintiff,* : | NO. 02 CV 4779 |
| : | |
| v. : | |
| : | |
| LAFAYETTE COLLEGE and ERIN MALONE : : | |
| *Defendant.* : | |

**REPLY TO PLAINTIFF'S OPPOSITION TO MOTION
OF DEFENDANT, LAFAYETTE COLLEGE FOR A
PROTECTIVE ORDER WITH RESPECT TO PLAINTIFF'S
693 REQUESTS FOR ADMISSIONS**

The issue before the Court is whether the 693 Requests for Admissions served by the Plaintiff, were proper or whether Lafayette College is entitled to a Protective Order so that it need not respond to same.

The Court is well aware of the law and it is set forth in the Memorandum of Law originally submitted by Lafayette in connection with this Motion for a Protective Order. Lafayette files this Reply to address two factual issues and one legal issue raised in Plaintiff's Opposition.

Plaintiff, in its Opposition, chooses a handful of Requests from among the 693 and holds them up as examples of reasonable requests.[1] Of course, many of these are things which by and

---

[1] According to Plaintiff's expert, Dr. Modell (See Exhibit "1" to Plaintiff's Opposition), as a result of intentionally hyperventilating, Mr. Santarlasci, who was swimming laps underwater, passed out while underwater and "breathed in" water while submerged. Thus, Mr. Santarlasci had intentionally submerged and was swimming laps underwater before he passed out, as a result of lack of oxygen due to his intentional breath holding, and went into "distress." Yet, Plaintiff asks Lafayette to admit the following:

KOP:242768v1 4554-01

large have already been admitted in the pleadings (e.g., that Erin Malone was employed by Lafayette as a lifeguard at the time that Mr. Santarlasci drowned). It is not Lafayette's position that none of the Requests for Admissions were proper. Rather, it is Lafayette's position that it should not have to weed out the proper Requests for Admissions from among the 693 served.[2] It

---

    184.    No Lafayette College lifeguard on duty at the Ruef Natatorium saw Jay Santarlasci become submerged at the time he went into distress.
    185.    The Lafayette College lifeguard on duty at the Ruef Natatorium saw Jay Santarlasci become submerged at the time he went into distress.
    186.    Jay Santarlasci became submerged within 60 feet of where the Lafayette College lifeguard on duty was at the lifeguard table.
    187.    Jay Santarlasci did not become submerged within 60 feet of where the Lafayette College lifeguard on duty was at the lifeguard table.
    15.    Jay Santarlasci entered and was submerged in the pool at the Ruef Natatorium.

[2]    Consider the following Requests:

    672.    Lafayette College graduates are not successful in the work place.
    673.    Lafayette College graduates are successful in graduate school.
    674.    Lafayette College graduates are not successful in graduate school.
    675.    Lafayette College graduates are successful in professional schools.
    676.    Lafayette College graduates are not successful in professional schools.
    646.    A college degree from Lafayette College is regarded by employers as a valuable asset.
    647.    A college degree from Lafayette College is not regarded by employers as a valuable asset.
    648.    A college degree from Lafayette College is regarded by employers as a valuable asset, and makes Lafayette College graduates attractive to employers.
    649.    A college degree from Lafayette College is not regarded by employers as a valuable asset, and does not make Lafayette College graduates attractive to employers.
    650.    A degree in economics from Lafayette College is a valuable asset.
    651.    A degree in economics from Lafayette College is not a valuable asset.
    652.    A degree in economics from Lafayette College is regarded by employers as a valuable asset.
    653.    A degree in economics from Lafayette College is not regarded by employers as a valuable asset.
    687.    Lafayette College did not expel Erin Malone as a result of the Incident.
    688.    Erin Malone was not removed from the Lafayette College's women's swim team as a result of the Incident.

is the Plaintiff's duty to serve only proper requests for admissions and not attempt to impose an undue burden on Lafayette.

Additionally, in an attempt to divert the Court's attention from the issue of the propriety of the Requests for Admissions, Plaintiff engages in a tactic which has unfortunately become commonplace for her in this litigation, namely slinging mud at Lafayette and its counsel. As though it could possibly have anything to do with the propriety of the Requests for Admissions, the Plaintiff states that she has been unsuccessful in obtaining answers to interrogatories and responses to document requests she served in late December 2002. This untruth rises to such a level that it needs a response.

Lafayette originally gave Plaintiff an extension of time to respond to Lafayette's Interrogatories and Document Requests. At that time, it was discussed that a similar extension would be afforded to Lafayette when the Plaintiff eventually served her discovery requests.

Given the fact that the parties had agreed to a Mediation to take place on February 1, 2003 with ADR Options and Lafayette's understanding that it had been granted an extension with respect to discovery, Lafayette did not plan on responding to the discovery until after it was seen whether the Mediation would be successful. However, approximately a week or so before the scheduled Mediation, Plaintiff's counsel began clamoring for the Answers to Interrogatories and asserted that no extension was given. In that context, Lafayette agreed to provide the Answers to Interrogatories and Responses to Document Requests by Friday, February 7, 2003 (it had already provided over 200 pages of documents prior thereto). Given the snowfall on Friday, February 7, Lafayette's counsel did not make it into the office and called Plaintiff's counsel and advised of same and promised to get the responses out on Monday, February 10, 2003. Plaintiff's counsel

stated that would be acceptable. On Monday, February 10, 2003, Lafayette's counsel served by facsimile and mail its Answers to the Interrogatories, a formal Response to the Document Request and 306 pages of additional documents. Hence, at this point in time Lafayette has responded *to all* discovery requests served upon it with the exception of the Requests for Admissions, which are the subject of the pending Motion.[3]

Plaintiff belittles Lafayette's argument that the 693 Requests are more akin to contention interrogatories and hence an end-run around F.R.C.P. 33 by asserting in footnote 3 that this Court has "opted out of Rule 33." Federal Rule of Civil Procedure 33(a) provides that, "[w]ithout leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts." There is no local Rule 33 in the Eastern District of Pennsylvania.

On December 1, 1993 the Eastern District entered a Standing Order by which it opted out of the limitations imposed by Rule 33(a). On September 22, 1997, the court amended its Standing Order of December 1, 1993, so as to rescind Section 1(c) of that Order, by which the court had opted out of the limitations of Rule 33(a). Therefore as of September 22, 1997, Fed.R.Civ.P. 33(a) applied in the Eastern District of Pennsylvania. The case cited by Plaintiff is from 1994 which would explain why it still followed the Standing Order by which the court opted

---

[3] In footnote 4 Plaintiff asserts that Lafayette served two sets of Document Requests and two sets of Interrogatories on the Plaintiff while having provided only 200 pages of documents to the Plaintiff. What the Plaintiff does not point out is that Lafayette's First set of Interrogatories contained only 9 Interrogatories and it's Second Set of Interrogatories contained 3 interrogatories. Lafayette's first Document Request contained only 16 document requests and the second Document Request contained only 28 Document Requests. By contrast, Plaintiff's Document Request included 63 requests. Plaintiff has not yet responded to either the second Document Request or the Second Set of Interrogatories.

out of Rule 33(a).

### *CONCLUSION*

It is respectfully suggested that when the Court examines the 693 Requests for Admissions, it will find them overly broad, unduly burdensome, internally contradictory and an attempt to evade the limitations imposed by Rule 33.

    Respectfully submitted,

    ***POWELL, TRACHTMAN, LOGAN, CARRLE, BOWMAN & LOMBARDO, P.C.***

*Dated: February 19, 2003*    *By:*_____
    ***Jonathan K. Hollin, Esquire***
    ***Attorney for Defendants***