# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELIZABETH A. STANTON,                          )
Personal Representative of                     )
JOSEPH H. SANTARLASCI, III,                    )
Deceased, and Administrator of the             )
Estate of JOSEPH H. SANTARLASCI, III,          )
                                               )
      Plaintiff,                         )
                                               )
v.                                             )    **Civil Action No. 02 CV 4779**
                                               )
LAFAYETTE COLLEGE, *et al.*,                   )
                                               )
      Defendants.                        )

## O R D E R

AND NOW this _____ day of _____, 2003, upon consideration of the Motion of Defendants to Dismiss for Failure of Plaintiff to Act in the Capacity of Personal Representative, or in the Alternative, to Compel Plaintiff to Confirm that the Wrongful Death Claims are Brought on Behalf of Both Statutory Beneficiaries, and upon consideration of Plaintiff Elizabeth A. Stanton's Opposition thereto, it is hereby **ORDERED** and **DECREED** that the Motion shall be, and hereby is, **DENIED.**

                    BY THE COURT:

                    _____
                                          J.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH A. STANTON,<br>Personal Representative of<br>JOSEPH H. SANTARLASCI, III,<br>Deceased, and Administrator of the<br>Estate of JOSEPH H. SANTARLASCI, III, | )<br>)<br>)<br>)<br>) |
|     Plaintiff, | )<br>) |
| v. | )<br>) Civil Action No. 02 CV 4779 |
| LAFAYETTE COLLEGE, *et al.*, | )<br>) |
|     Defendants. | )<br>) |

FILED    MAR 1 3 2003

## OPPOSITION OF PLAINTIFF ELIZABETH A. STANTON TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE OF PLAINTIFF TO ACT IN THE CAPACITY OF PERSONAL REPRESENTATIVE, OR IN THE ALTERNATIVE, TO COMPEL PLAINTIFF TO CONFIRM THAT THE WRONGFUL DEATH CLAIMS ARE BROUGHT ON BEHALF OF BOTH STATUTORY BENEFICIARIES

**COMES NOW PLAINTIFF** Elizabeth A. Stanton, by and through her undersigned counsel, and respectfully opposes Defendants' Motion to Dismiss, and as grounds therefor, refers to the Memorandum of Points and Authorities attached hereto and made a part hereof.

Respectfully submitted,

*Peter C Grenier*

Peter C. Grenier (admitted *pro hac vice*)
Anne R. Noble (admitted *pro hac vice*)
BODE & GRENIER. LLP
1150 Connecticut Avenue NW
9th Floor
Washington, DC 20036
Telephone: (202) 828-4100
Fax: (202) 828-4130

*-and-*

Jonathan S. Ziss, Esquire
Jonathan A. Cass, Esquire
~~SILVERMAN BERNHEIM & VOGEL, P.C.~~
Two Penn Center Plaza
Philadelphia PA  19102
Telephone: (215) 636-3962
Fax:  (215) 636-3999

*Counsel for Plaintiff*

Dated:  March 13, 2003

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELIZABETH A. STANTON,                          )
Personal Representative of                     )
JOSEPH H. SANTARLASCI, III,                    )
Deceased, and Administrator of the             )
Estate of JOSEPH H. SANTARLASCI, III,          )
                                               )
     Plaintiff,                               )
                                               )
v.                                             )   Civil Action No. 02 CV 4779
                                               )
LAFAYETTE COLLEGE, *et al.*,                   )
                                               )
     Defendants.                              )

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE OF PLAINTIFF TO ACT IN THE CAPACITY OF PERSONAL REPRESENTATIVE, OR IN THE ALTERNATIVE, TO COMPEL PLAINTIFF TO CONFIRM THAT THE WRONGFUL DEATH CLAIMS ARE BROUGHT <u>ON BEHALF OF BOTH STATUTORY BENEFICIARIES</u>

In yet another meretricious attempt to distract both Plaintiff's counsel's – and this Court's – attention away from the <u>real</u> issues in this case (namely, Defendants' clear joint responsibility for the drowning death of 26-year-old Joseph Howard Santarlasci, III in December 2001), Defendants Lafayette College and Erin Malone ("Ms. Malone") (collectively, "Defendants"), actually ask this Court to <u>dismiss</u> this case on the basis that Plaintiff Elizabeth A. Stanton ("Ms. Stanton") allegedly is not acting "in the capacity of personal representative." *See* Brief in Support of Motion to Dismiss ("Brief"), filed herein, at 1. This frivolous motion should be denied because (1) Defendants lack standing to bring it;  (2) undersigned counsel's fiduciary and ethical duties run to the personal representative (Plaintiff), who acts as a trustee *ad*

## COUNTERSTATEMENT OF FACTS

On December 2, 2001, Joseph Howard Santarlasci, III ("Jay") drowned in the lap pool of the Ruef Natatorium at Lafayette College's Allan P. Kirby Sports Complex. Prior to his death, Jay had been unconscious at the bottom of the pool for a period of more than five minutes, while Ms. Malone (the Lafayette College lifeguard on duty at the time), sat passively behind a lifeguard table, wearing street clothes, chatting with her boyfriend and (by her own admission) doing her homework.

On January 10, 2002, while physically in the presence of both statutory beneficiary Patricia Sanders (decedent's mother) and Plaintiff, the Register of Wills in and for the County of Northampton, Commonwealth of Pennsylvania, granted Letters of Administration on the Estate of Joseph Howard Santarlasci III, deceased, to Elizabeth A. Stanton, who had been "qualified well and truly to administer the same." A true and correct copy of the Letters of Administration is attached hereto as Exhibit 1. Ms. Sanders even executed a renunciation of any priority right to be so appointed. It appears that, in complete derogation of their Rule 11 obligations, neither Defendants nor their counsel made so much as a telephone call or a visit to the Office of the Register of Wills to determine the circumstances of the appointment of Plaintiff -- such a minute task would have likely avoided literally thousands of dollars in legal time and resources dealing with the nonsense of the motion.

The Letters were granted, and Ms. Stanton's appointment as personal representative was approved, with the knowledge and consent of both statutory beneficiaries in this case: Joseph H. Santarlasci, Jr. (decedent's father) and Ms. Sanders. *See* Declaration of Patricia Sanders, a true and correct copy of which is

3

attached hereto as Exhibit 2. The decedent's parents are divorced; Ms. Stanton has been married to the decedent's father for more than thirteen years. Defendants have had a copy of the Letters for months.

On July 18, 2002, Ms. Stanton properly brought suit against Lafayette College and Ms. Malone, based on Pennsylvania's Wrongful Death and Survival Acts, 42 Pa. Cons. Stat. § 8301 (West 2002) and 42 Pa. Cons. Stat. § 8302 (West 2002), respectively. In her Complaint, Ms. Stanton clearly stated that she brings the claims therein "in her capacity as the personal representative of Joseph Howard Santarlasci, III, deceased and as the Administrator of the Estate of Joseph Howard Santarlasci, III." *See* Complaint, filed herein, at introduction. Additionally, in each of the Counts of the Complaint alleging causes of action for wrongful death, Ms. Stanton stated that she "brings this claim for wrongful death on behalf of the Decedent's statutory beneficiaries . . . . ." Id. at numbered paragraphs 82, 91, 101, 110, 134 and 146.

In their First Set of Interrogatories, Defendants asked Ms. Stanton to provide information about herself and about each statutory beneficiary. *See* Plaintiff's Answers to Defendants' Interrogatories (First Set) at 15-16, copies of the relevant pages of which are attached hereto as Exhibit 3. In each case, Ms. Stanton provided the requested information as to both herself and Jay's two statutory beneficiaries: Mr. Santarlasci and Ms. Sanders.[2]

On January 14, 2003, Plaintiff timely supplemented these responses, providing additional information (that is, the exact dates of divorces that had occurred

---

[2]    Early in the litigation, counsel for Defendants had telephoned counsel for Plaintiff and mistakenly demanded an address for Ms. Sanders, as that information had been provided to counsel for Defendants some months earlier, in Plaintiff's Initial Disclosures, as Plaintiff's counsel pointed out. Defendants apparently "shoot first," and ask questions later.

4

in the family) that had come into her possession. A true and correct copy of Plaintiff's First Supplemental Answers to Defendant Lafayette College's Interrogatories (First Set) (Jan. 14, 2003), is attached hereto as Exhibit 4.

On February 12, 2003, the parties attempted mediation, unsuccessfully. During the tail end of the mediation, and while still at the offices of ADR Options, Inc. (the mediator), Defendants' counsel asked Plaintiff's counsel whether Plaintiff's counsel would "produce" Patricia Sanders for a deposition. Plaintiff's counsel truthfully stated that he would not, <u>and that he did not represent Ms. Sanders</u>. Plaintiff's counsel additionally stated that his client is Ms. Stanton. Similarly, Plaintiff's counsel cannot be legally obligated to "produce" Mr. Santarlasci (another third party) for a deposition. However, because Mr. Santarlasci is married to Plaintiff, Plaintiff's counsel agreed to assist in making Mr. Santarlasci available for a deposition, in an attempt to be cooperative and knowing (as perhaps nothing so much as the motion now before this Court makes clear) that any refusal to do so would likely result in reams of correspondence and/or yet another ridiculous motion necessitating response.

Plaintiff's counsel also observed that he did not represent Ms. Sanders individually, as a result of potential conflict of interest issues (which <u>could</u> arise in the context of the ultimate distribution of damages in this case – an issue that <u>has no impact on Defendants</u> -- depending on the applicable state law[3]). From this entirely

---

[3] *See, e.g., Shenandoah v. City of Philadelphia*, 438 F. Supp. 981, 989 n.9 (E.D. Pa. 1976) (law of beneficiaries' domicile governs distribution of proceeds). Again, once the <u>amount</u> of these proceeds is determined, Defendants' interest in this matter will be concluded. <u>How</u> (and to whom) the proceeds are distributed neither affects nor concerns the Defendants. Indeed, in an action for wrongful death, damages should not be apportioned by the jury among the beneficiaries, but should be awarded in one lump sum to be distributed pursuant to the intestacy statute. *Machado v. Kunkel*, 804 A.2d

innocuous and truthful set of statements – none of which has any bearing on the real issues of this litigation -- this patently frivolous Motion arose.    Apparently, Defendants' counsel does not grasp the technical difference between the identity of undersigned counsel's client, the personal representative, and the ultimate potential beneficiaries of the lawsuit – whether through the intestacy laws or the Survival Act claims, or through the statutory auspices of the Wrongful Death Act claims.

Suffice it to say that 100% of the statutory beneficiaries are pleased as punch with Plaintiff's efforts herein, *see, e.g.,* Exhibit 2, as well as with the work to date of undersigned counsel.  In truth, it appears that Defendants are trying any underhanded tactic they can to disrupt the vigorous prosecution of what can fairly be described as a *res ipsa loquitur* case.

As discussed herein, it appears that in addition to their utter failure to engage in **any** prefiling inquiry, Defendants and their counsel also failed to conduct any legal research on the nature of legal counsel's attorney-client relationship with a personal representative in a wrongful death action.

## I.    Defendants Do Not Have Standing to Bring the Motion Now Before this Court.

Without even considering the "merits" of Defendants' arguments here, this Court should deny the motion outright, because Defendants do not have standing to request dismissal – or, indeed, any other relief – based on Ms. Stanton's status as the personal representative. *See* Pa. R. Civ. P. 2203 (West 2003).[4]

---

1238 (Pa. Super. 2002).

[4] "The Rules of Civil Procedure, while not substantive, do have the force of a statute." *Lumb v. Cooper*, 266 A.2d 196, 198 (Del. 1970) (construing Pennsylvania law) (*citing Dombrowski v. City of Philadelphia*, 245 A.2d 238 (Pa. 1968)).

Indeed, under Pennsylvania law, only those persons "entitled by law to recover damages in an action for wrongful may petition the court in which an action for such wrongful death is pending to remove the plaintiff and to substitute as a new plaintiff any person entitled by law to recover damages in the action or a personal representative of the decedent."  Pa. R. Civ. P. 2203(a) (West 2003).  As the Note to this Rule makes clear, among its purposes is to permit "the parties beneficially interested in the damages recovered in the action to exercise some supervisory control over the conduct of the action by enabling them to obtain the assistance of the court if the action is not properly conducted on their behalf."  *Id.* at Note (emphasis added). Importantly, nowhere in the cited provisions of this Rule (which, curiously, are nowhere mentioned in Defendants' Brief) – nor, in fact, anywhere in this Rule (titled: "Procedure to Remove Plaintiff" in the subsection on "Actions for Wrongful Death") -- does the Rule provide for actions by a Defendant in a wrongful death suit to "remove" the personal representative, much less to dismiss a wrongful death suit on this basis (relief which is, notably, not even available to the statutory beneficiaries). Nor have the Defendants here cited any case in which a defendant has been granted the relief Defendants seek here. This is because there are no such cases. The reason for this dearth is obvious: Defendants neither have shown – nor could show – any prejudice resulting to Defendants from decisions made by the Plaintiff in this case (and the statutory beneficiaries she represents) with regard to her duties as the designated personal representative.  Such decisions do not concern them.

Moreover, Defendants' argument that the dismissal or "confirmation" they seek here is necessary because "should this action be discontinued, Defendants are

exposed to having to potentially [sic] defend against another wrongful death action[,]" Memorandum at 9, is not only illogical, but also misplaced. *See Stafford v. Roadway Transit Co.*, 70 F. Supp. 555 (W.D. Pa. 1947), *motion refused*, 73 F. Supp. 458, *aff'd in part and rev'd in part on other grounds*, 165 F.2d 920 (3d Cir. 1948) (during first six months after death, personal representative of deceased only person entitled to sue; during next six months either personal representative of deceased or any person entitled to share in damages may sue, but action which was first brought bars institution of any other action)

On this basis alone, Defendants' Motion must be denied.

**II.    Under the Rules of Professional Conduct, Plaintiff's Counsel's Ethical and Fiduciary Duties Run *To Plaintiff, As The Personal Representative*, And Not To Any Individual (Potential) Statutory Beneficiary, The Representation Of Whom Would Likely Create an Insurmountable Conflict of Interest**

Revealing complete ignorance and a lack of diligent inquiry, Defendants appear to accuse undersigned counsel of serious ethical and fiduciary transgressions. It is quite telling that these baseless accusations make no reference to the applicable rules or tenets of legal ethics.

The Pennsylvania Rules of Professional Conduct "were derived from the Model Rules of Professional Conduct adopted by the American Bar Association ("ABA") in 1983 as amended." *Rules of Prof. Conduct, Scope, 42 Pa. C.S.A..* The ABA, in turn, publishes formal ethics opinions in the "ABA/BNA Lawyers' Manual on Professional Conduct Reference Manual." Included therein is Michigan Formal Opinion R-10 (4/19/91), entitled "Conflicts of interest; Multiple Representation;

Estates" *LMPC 1001:4701* (hereinafter the "Opinion.")   A copy of the Opinion is attached hereto as Exhibit 5.

The Opinion provides, in relevant part:

> A lawyer retained by a personal representative of a decedent's estate to pursue a wrongful death action is the lawyer for the personal representative as fiduciary....

> The lawyer for the personal representative may not represent another person who wishes to challenge the allocation of the wrongful death action[5] proceeds proposed by the personal representative, because a **disinterested lawyer could not reasonably believe that representation of the other person would not be adversely affected by representation of the personal representative as fiduciary.** ..

*Id.,* at 1 (emphases added*)*.  The Opinion then addresses two ethical questions:

1.    May the lawyer propose a distribution to the Court when the family member claimants have already failed to agree to allocation?

2.    May the lawyer represent the interest of the personal representative as an individual claimant in a hearing on allocation and distribution?

The Opinion states:

> In order to determine whether the lawyer may undertake the representation proposed, we must first determine whom the lawyer currently represents and to whom the lawyer owes duties of loyalty, confidentiality, accountability, and independent professional judgment. In short, the question is "who is the lawyer's client?"...

> **The weight of authority, although not unanimous, holds that the personal representative of the estate is the lawyer's client.**

> [citations include ABA Model Code of Professional Responsibility, EC 5-18].

---

[5]    *i.e.,* a statutory beneficiary.

> If the personal representative were not the lawyer's client, no privilege would attach to these communications and the lawyer would not be required to preserve the information as confidence and secrets....
>
> To pursue the wrongful death claim for the fiduciary personal representative, a lawyer would ordinarily contact the heirs and claimants, notify them of the action, collect evidence, and evaluate testimony appropriate to pursue the claim. **Although the heirs and claimants are interested parties and may benefit from a successful wrongful death action, <u>they are not "clients" of the lawyer in the matter</u>.**

*Id.*, at 2-3 (emphases added).

Thus, consistent with undersigned counsel's February 14, 2003, letter that was attached to Defendants' motion, undersigned counsel chooses to abide by the ethics rules and not be strong-armed into conceding some non-existent "representation" of a potential statutory beneficiary. Plaintiff assumes that Defendants and their counsel are not intentionally misrepresenting the ethics rules to this Court, but rather have simply failed to conduct any reasonable legal inquiry.

Similarly, in the ABA's above-cited ethics manual, at LMPC 301-1001 ("Avoiding Malpractice"), the authors offer a strict warning in connection with avoiding malpractice:

> Lawyers should also try to weed out representations that may be technically proper **<u>*but pose a high potential for conflicting interests*</u>**. Many of these problem areas involve multiple representation. Some of the **<u>*riskiest*</u>** are:
>
> ...**<u>*representing both the personal representative and heirs of an estate*</u>**.

*LMPC 301:1001 ("Screening Conflicts")*(emphases added).

As the above-cited opinions amply demonstrate, undersigned counsel appropriately responded to defense counsel's inquiries regarding Ms. Sanders' status

vis-a-vis Plaintiff's counsel. Anything different would create a very real risk of -- if not actual -- conflict of interest.

Defendants also do not even consider the possibility that a settlement or judgment in this case could be governed by a pattern of distribution (whether via intestacy statute for the survival claim or a separate statutory scheme of distribution under a wrongful death statute) of another state, given the decedent's citizenship of the District of Columbia. As such, the potential distribution might not be so clear-cut, in the event that the pattern of distribution comes under a jurisdiction permitting a discretionary apportionment. In such an event, the conflict of interest associated with multiple representation by undersigned counsel would be further crystallized.

**III.    There is No Reason for this Court Either to Dismiss this Case or to Compel Ms. Stanton to "Confirm" What She Already has Stated in Her Complaint, in Answers to Interrogatories and at her Deposition.**

Despite the egregiousness of Defendants' conduct herein (as alleged in the Complaint), this is, procedurally, a garden variety survival/wrongful death case, pure and simple.  There are no unique issues surrounding the garden variety appointment of Plaintiff as the personal representative – albeit with the express consent of both beneficiaries -- and Defendants' ignorance of the technical distinctions between the Plaintiff/personal representative and the statutory beneficiaries herein has only served to waste colossal amounts of time and resources – including, perhaps most regrettably, those of the Court.

Indeed, the fact that Plaintiff's counsel does not personally represent each statutory beneficiary herein does not, of course, mean that Ms. Stanton, the personal representative here, does not represent the statutory beneficiaries or act in their best

interests. Indeed, in her Complaint, Answers to Interrogatories, and at her recent deposition (conducted March 6, 2003 in Pennsylvania), Plaintiff consistently (and truthfully) has stated that the action now before this Court was brought "on behalf of the Decedent's statutory beneficiaries," who have been identified. *Cf. Borror v. Sharon Steel Co.*, 327 F.2d 165, 168 (3d Cir. 1964) (personal administrator "prosecutes the action for named beneficiaries . . .holds the proceeds of the suit in trust for them . . . is the one who under the law must mark the action discontinued in case of settlement. [Her] status is not that of a mere guardian ad litem or a next friend for [she] has many of the attributes of a true trustee, one who, while having legal title to property and choses in action, deals with them for the benefit of [her] cestuis que trustents").

Defendants' absurd suggestion to the contrary, there is <u>no</u> evidence anywhere in the record of this case that "contrary to the allegations of the Complaint, the suit was apparently *not* brought on behalf of *all* statutory beneficiaries of the Decedent." Brief at 4 (emphasis in the original). Moreover, there is no evidence anywhere in the record of this case that – to the extent Pennsylvania law (as opposed to, for example, the Illinois law and New Jersey law cited by Defendants) requires it -- Plaintiff's <u>counsel</u> does not recognize his "fiduciary duties to the statutory beneficiaries." *Id.* Said duties, of course, are fulfilled by appropriately skilled legal representation of the <u>Plaintiff</u> in this case, leading to an award of damages for the wrongful death and survival claims brought herein. Given the settlement offer made by the Defendants' insurer in the mediation – and apparently Defendants have chosen to waive the agreed-to confidentiality of the mediation by discussing dialogue therein -- it is clear

that Defendants are merely trying to harass Plaintiff and to cause her counsel to expend grossly unnecessary resources in responding to their nonsense.

Moreover, the simple fact that Plaintiff's counsel will not produce one of the statutory beneficiaries for a deposition does not mean, as a matter of common sense, that Plaintiff's counsel is not fulfilling his fiduciary responsibilities. Banks and brokerage houses have fiduciary duties to their customers, too; it is unlikely, however, that attorneys for either type of institution could or would "produce" customers for depositions in the course of litigation brought against a third party.

Additionally, while Plaintiff's counsel has acted with all requisite "fiduciary" duty to all statutory beneficiaries throughout the litigation of this matter, Plaintiff also notes that the "law" Defendants cite for the proposition that "Plaintiff's counsel also owes a fiduciary duty to the beneficiaries" consists of: (1) an Illinois state appellate decision (construing Illinois law) concerning the duties of the executor of an estate to foreign heirs; (2) a New Jersey federal case (construing New Jersey law) concerning a malpractice suit brought against the decedent's attorney by a beneficiary of a will; and (3) a Pennsylvania case standing for the proposition that the beneficiary of a will may bring a cause of action in assumpsit against the attorney/drafter where the attorney/drafter's actions allegedly caused the beneficiary to lose his intended legacy. None of these cases (to the extent they are relevant at all, which Plaintiff disputes) concerns litigation between the Plaintiff and Defendants in a wrongful death suit. Indeed, each is concerned with duties to heirs and beneficiaries – in other words, to persons who presumably were originally on the same side. (Of course, as Plaintiff

herein argues, where Plaintiff owes the Defendants no such duties, Defendants have no basis on which to seek dismissal, because they have no standing to do so.)

Nor does the fact that Plaintiff's counsel will not produce one of the statutory beneficiaries for a deposition mean, as Defendants wrongly claim, that Plaintiff's counsel has expressly disavowed "representation of the mother's interest." Memorandum at 8 (emphasis added). No such representation ever was made by Plaintiff's counsel, as Defendant well knows. Instead, the entire import of Plaintiff's counsel's innocuous statement was that, as Defendants' counsel knows, because Plaintiff's counsel does not represent Ms. Sanders personally in this litigation, he would not compel her attendance at a deposition. Defendants' counsel was obviously merely looking for a cheap way around doing things the right way, which would involve serving a non-party subpoena on Ms. Sanders in her home state (the Commonwealth of Virginia), paying the proper witness and mileage fees, and conducting the deposition within the 100-mile radius prescribed by Fed. R. Civ. P. 45.

Defense counsel has already started whining about the prospect of deposing the other beneficiary, the decedent's father, in the District of Columbia, where he lives, and indeed, defense counsel has repeatedly violated Fed. R. Civ. P. 45 in making out-of-state third-party subpoenas issued in, for example, the District of Columbia, returnable to his office in King of Prussia, Pennsylvania, a black letter violation of the 100-mile prescription. Defense counsel has continually, throughout this litigation, demonstrated an utter contempt for the rules of this Court, or a blind ignorance of such rules. Either way, the violations are manifest.

14

Nor does the fact that Plaintiff's counsel will not <u>produce</u> one of the statutory beneficiaries for a deposition mean, as Defendants also wrongly claim, that Ms. Stanton has averred that "she cannot represent the interests of both of the statutory beneficiaries. . . . " Brief at 9. Ms. Stanton has <u>never</u> made any such "averment" or representation; in fact, she has truthfully represented just the opposite whenever the question has arisen.

In short, Defendants' counsel has created this nonsensical and mountainous side-issue out of a non-existent molehill.

Indeed, while Defendants' counsel do not cite to it, the <u>only</u> case actually discussing Pa. R. Civ. P. 2203 is *Lumb v. Cooper*, 266 A.2d 196 (Del. 1970) (applying Pennsylvania law), wherein a conflict between the <u>mother</u> (*i.e.*, statutory beneficiary) of a decedent killed in Pennsylvania and the decedent's <u>spouse</u> (*i.e.*, statutory beneficiary) mandated a hearing to determine whether the spouse (whom the mother averred had deserted his deceased wife sometime before her death) should be substituted by the mother as personal representative under this rule. Notably, nothing in this case suggests the availability of the relief sought by Defendants here. Instead, Defendants rely on *In re Estate of Gadiparthi*, 632 A.2d 942 (Pa.Cmwlth. 1993) (which does <u>not</u> concern a personal representative, as Defendants allege, but instead concerns an action by the Pennsylvania Department of Revenue to remove the <u>administrator</u> of an estate based on a conflict of interest between him and the estate, based on his attempts to remove estate property from the estate) and *In re Estate of Lux*, 389 A.2d 1053 (Pa.Super. 1978) (which concerns the court's removal of an executrix as a result, *inter alia*, of her proprietary attitude toward the decedent's

property, to the detriment of the heirs). Neither of these cases concerns the role of a personal representative in a wrongful death case, and neither is dispositive (or even relevant) here.

## CONCLUSION

For all these reasons, Defendants' frivolous and meritless Motion to Dismiss must be denied, and this Court should also seriously consider sanctions.

Respectfully submitted,

*Peter C. Grenier*

Peter C. Grenier (admitted *pro hac vice*)
Anne R. Noble (admitted *pro hac vice*)
BODE & GRENIER. LLP
1150 Connecticut Avenue NW
9th Floor
Washington, DC 20036
Telephone: (202) 828-4100
Fax: (202) 828-4130

*-and-*

Jonathan S. Ziss, Esquire
Jonathan A. Cass, Esquire
SILVERMAN BERNHEIM & VOGEL, P.C.
Two Penn Center Plaza
Philadelphia PA 19102
Telephone: (215) 636-3962
Fax: (215) 636-3999

*Counsel for Plaintiff*

Dated: March 13, 2003

17

# EXHIBIT "1"

*COMMONWEALTH OF PENNSYLVANIA }*
*COUNTY OF NORTHAMPTON        }  SS*

FILE NO. 2002-0051

I, *DOROTHY L. COLE*, REGISTER OF WILLS IN
AND FOR THE COUNTY OF NORTHAMPTON,
IN THE COMMONWEALTH OF PENNSYLVANIA,

DO HEREBY CERTIFY,

THAT ON THE 10TH DAY OF JANUARY, 2002, LETTERS OF ADMINISTRATION
ON THE ESTATE OF

JOSEPH HOWARD SANTARLASCI III
JAY SANTARLASCI

DECEASED, WERE GRANTED TO

ELIZABETH A. STANTON

HAVING FIRST BEEN QUALIFIED WELL AND TRULY TO ADMINISTER THE SAME.  AND I FURTHER
CERTIFY THAT NO REVOCATION OF SAID LETTERS APPEARS OF RECORD IN MY OFFICE.

DATE OF DEATH:  DECEMBER 2, 2001          GIVEN UNDER MY HAND AND
SOCIAL SECURITY NO:  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          SEAL OF OFFICE  THIS 10TH DAY OF
                                          JANUARY, 2002

                                          _____
                                          DOROTHY L. COLE, REGISTER

                                          _____
                                          SHERYL SELLERS, DEPUTY

*NOT VALID WITHOUT ORIGINAL SIGNATURE AND IMPRESSED SEAL*

# EXHIBIT "2"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELIZABETH A. STANTON,            )
Personal Representative of       )
JOSEPH H. SANTARLASCI, III,      )
Deceased, and Administrator of the )
Estate of JOSEPH H. SANTARLASCI, III, )
                                 )
        Plaintiff,               )
                                 )
    v.                           )   Civil Action No. 02 CV 4779
                                 )
LAFAYETTE COLLEGE, et al.,       )
                                 )
        Defendants.              )

## DECLARATION OF PATRICIA SANDERS

For her declaration, Patricia Ann Sanders deposes and states:

1.    My name is Patricia Ann Sanders and I currently am a resident of the Commonwealth of Virginia. I am an adult and am competent to testify to all matters contained herein.

2.    On December 2, 2001, my son, Joseph Howard Santarlasci, III (known as "Jay"), drowned in the Ruef Natatorium at Lafayette College in Easton, Pennsylvania.

3.    In January 2002, I asked Elizabeth Stanton to serve as Jay's personal representative in any and all legal proceedings arising from his death. Ms. Stanton agreed to serve as Jay's personal representative.

4.    Subsequently, Ms. Stanton brought suit against Lafayette College and the lifeguard who was on duty when Jay drowned. I understand that some of the claims in the lawsuit Ms. Stanton brought are based on Pennsylvania's wrongful death statute. I

understand that, according to that statute, I am one of two beneficiaries entitled to recover damages for my son's wrongful death. I have a received a copy of the Complaint that was filed in this case.

5.    I am entirely satisfied with the work Elizabeth Stanton is doing as the personal representative in this matter. I oppose her removal as personal representative in this matter.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  *March 11, 2003*

*Patricia A Sanders*

Patricia Ann Sanders

# EXHIBIT "3"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELIZABETH A. STANTON,                    )
Personal Representative of               )
JOSEPH H. SANTARLASCI, III,              )
Deceased, and Administrator of the       )
Estate of JOSEPH H. SANTARLASCI, III,    )
                                         )
         Plaintiff,                      )
                                         )
v.                                       )   Civil Action No. 02 CV 4779
                                         )
LAFAYETTE COLLEGE, *et al.*,             )
                                         )
         Defendants.                     )

PLAINTIFF'S ANSWERS TO DEFENDANT LAFAYETTE COLLEGE'S
INTERROGATORIES (FIRST SET)

COMES NOW PLAINTIFF, Elizabeth A. Stanton, Personal Representative of

Joseph H. Santarlasci, III, Deceased, and Administrator of the Estate of Joseph H.

Santarlasci, III, and for her Answers to Defendant Lafayette College's Interrogatories

(First Set), states as follows:

*GENERAL OBJECTIONS APPLICABLE TO ALL INTERROGATORY ANSWERS*

1.       Plaintiff    objects    to    Defendant's    Interrogatories    (including    the

accompanying definitions and instructions) to the extent that the Interrogatories seek

answers that constitute attorney work product, disclose the mental impressions,

conclusions, opinions or legal theories of any attorneys for Plaintiff, contain privileged

attorney-client communications, or are otherwise protected from disclosure under

applicable privileges, laws or rules.

2.    Plaintiff objects to Defendant's Interrogatories to the extent that they seek information prepared in anticipation of litigation.

3.    Plaintiff objects to Defendant's Interrogatories to the extent that they are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4.    Plaintiff objects to Defendant's Interrogatories to the extent that the answers call for a legal conclusion.

5.    Plaintiff objects to any inference that can be drawn from any portion of Defendant's Interrogatories or this Response to them that the documents and/or events referred to in the Interrogatories actually exist or occurred. The failure to object to each such inference in no way constitutes an admission by Plaintiff that such information exists or that such events actually occurred.

6.    Plaintiff objects to Defendant's Interrogatories to the extent they were not submitted in accordance with Rules 26(d) and/or 33, Federal Rules of Civil Procedure.

7.    Plaintiff objects to Defendant's Interrogatories to the extent that the Interrogatories are vague, ambiguous, overly broad, oppressive and/or unduly burdensome.

8.    Plaintiff objects to Defendant's Interrogatories to the extent that the Interrogatories are not related to the time period and subject matter at issue in this litigation.

9.    Plaintiff reserves the right to supplement or amend any or all parts of the answers provided herein, as further information becomes available and as discovery proceeds.

2

10.    Plaintiff reserves the right to object to the admissibility in evidence of any portion of the answers produced in response to Defendant's Interrogatories at any hearing or trial in this action.

11.    Plaintiff submits these responses without conceding the relevancy or materiality of the subject matter of any answer.

12.    Plaintiff objects to Defendant's Interrogatories to the extent that they are unauthorized by the Federal Rules of Civil Procedure or the local rules of the United States District Court for the Eastern District of Pennsylvania.

13.    Plaintiffs object to Defendant's Interrogatories to the extent that the answers call for expert testimony.

14.    Plaintiffs' general objections shall be deemed to continue throughout the responses to specific Interrogatories that follow, even where not further referred to in such responses.

**Without waiving the foregoing objections,** Plaintiff responds and specifically objects to Defendant's Interrogatories as follows:

<u>Interrogatory 6.</u>     As to the Plaintiff and each "statutory beneficiary" referenced in paragraph 1 of the Complaint, please answer the following Interrogatories:

<u>Response:</u>     As to all subparts: Objection.   These Interrogatories call for irrelevant information, probative of nothing, and are not reasonably calculated to lead to the discovery of admissible evidence. Without waiving those objections, or any of the General Objections, each of which is reasserted and incorporated as if fully stated herein, Plaintiff states as follows:

a.     <u>His/her name and date of birth.</u>

Elizabeth A. Stanton.  Her date of birth is August 22, 1961.

Joseph H. Santarlasci, Jr. His date of birth is June 23, 1945.

Patricia Ann Sanders.  Her date of birth is March 30, 1945.

b.     <u>List and identify each spouse had by him/her and state when and where any and all marriages occurred and ended.  Also include a list of the names and birth dates of each child born during any of said marriages.</u>

Elizabeth A. Stanton married Joseph H. Santarlasci, Jr. on December 3, 1988. They are parents to Nicolas Donovan Santarlasci (born August 28, 1989) and Marco Foster Santarlasci (born January 14, 1993).

Joseph H. Santarlasci, Jr. married Patricia Ann Sanders on June 10, 1967.  A son, Joseph H. Santarlasci, III (the decedent herein) was born on December 14, 1974.  There were no other children.  The couple subsequently divorced.

Joseph H. Santarlasci, Jr. married Priscilla Goodwin Schaefer on September 25, 1982.  No children were born.  The couple subsequently divorced.

    c.    <u>His/her educational background, including all levels of public education</u> <u>achieved, the certificates and/or diplomas obtained, the subject or degree in which said</u> <u>certificate or diploma was obtained, and the year so obtained.</u>

Elizabeth A. Stanton received a B.A. from Williams College in 1983 in French literature, and a Master of Arts in Law and Diplomacy from the Fletcher School of Law and Diplomacy at Tufts University in 1986.

Joseph H. Santarlasci, Jr. received a B.A. from Brown University in English in 1967 and an M.B.A. from the Darden School of Business at the University of Virginia in 1971.

Patricia Ann Sanders received a B.A. from Brown University in math in 1967.

    d.    <u>Detail the work history of this plaintiff/beneficiary [*sic*] during the past ten</u> <u>years and include for each employment, if any, the period of time covered, a description</u> <u>of the work performed, and the amount of compensation paid on a per unit basis, i.e., per</u> <u>month or per hour, etc.</u>

Objection.    At this time, this Interrogatory calls for irrelevant information, probative of nothing, and is not reasonably calculated to lead to the discovery of admissible evidence.    Additionally, this interrogatory is vague, ambiguous, absurdly overbroad and confusing.

# EXHIBIT "4"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ELIZABETH A. STANTON,<br>Personal Representative of<br>JOSEPH H. SANTARLASCI, III,<br>Deceased, and Administrator of the<br>Estate of JOSEPH H. SANTARLASCI, III,<br><br>　　　Plaintiff,<br><br>v.<br><br>LAFAYETTE COLLEGE, *et al.*,<br><br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 02 CV 4779<br>)<br>)<br>)<br>) |

**PLAINTIFF'S FIRST SUPPLEMENTAL ANSWERS TO DEFENDANT
LAFAYETTE COLLEGE'S
INTERROGATORIES (FIRST SET)**

**COMES NOW PLAINTIFF,** Elizabeth A. Stanton, Personal Representative of

Joseph H. Santarlasci, III, Deceased, and Administrator of the Estate of Joseph H.

Santarlasci, III, and for her FIRST SUPPLEMENTAL ANSWERS TO DEFENDANT

LAFAYETTE COLLEGE'S INTERROGATORIES (FIRST SET), states as follows:

*GENERAL OBJECTIONS APPLICABLE TO ALL INTERROGATORY ANSWERS*

Plaintiff hereby incorporates by reference, as if fully set forth herein, all of her

General Objections Applicable to All Interrogatories.

Without waiving the foregoing objections, Plaintiff hereby supplements her

original responses and objections to Defendant's Interrogatories as follows:

**Interrogatory 6.**     As to the Plaintiff and each "statutory beneficiary" referenced in paragraph 1 of the Complaint, please answer the following Interrogatories:

**Response:**     As to all subparts: Objection.   These Interrogatories call for irrelevant information, probative of nothing, and are not reasonably calculated to lead to the discovery of admissible evidence. Without waiving those objections, or any of the General Objections, each of which is reasserted and incorporated as if fully stated herein, Plaintiff states as follows:

＊          ＊          ＊

b.     <u>List and identify each spouse had by him/her and state when and where any and all marriages occurred and ended.  Also include a list of the names and birth dates of each child born during any of said marriages.</u>

Elizabeth A. Stanton married Joseph H. Santarlasci, Jr. on December 3, 1988. They are parents to Nicolas Donovan Santarlasci (born August 28, 1989) and Marco Foster Santarlasci (born January 14, 1993).

Joseph H. Santarlasci, Jr. married Patricia Ann Sanders on June 10, 1967.  A son, Joseph H. Santarlasci, III (the decedent herein) was born on December 14, 1974.  There were no other children. **They were divorced on June 5, 1980.**

Joseph H. Santarlasci, Jr. married Priscilla Goodwin Schaefer on September 25, 1982. No children were born. **They were divorced on November 7, 1988.**

I, ELIZABETH A. STANTON, hereby solemnly declare and affirm, this _____ day of _____, 2003, under penalty of perjury under the laws of the United States of America, that I have read the foregoing Answers To Defendant's Interrogatories (First Set) and know the contents thereof; that the Answers set forth therein, subject to inadvertent or undisclosed errors, are based on and therefore necessarily limited by the records and information still in existence, presently recollected and thus far discovered in the course of the preparation of these Answers; consequently, that I reserve the right to make changes in the Answers if it appears at any time that omissions or errors have been made therein or that more accurate information is available; that I have not completed my preparation for trial; that the foregoing Answers are given without prejudice to my right to amend my Answers or produce evidence of any subsequently discovered facts; and that, subject to the limitations set forth herein, the said answers are true to the best of my knowledge, information and belief.

_____
ELIZABETH A. STANTON

As to Objections:



_____
Peter C. Grenier (admitted *pro hac vice*)
Anne R. Noble (admitted *pro hac vice*)
BODE & GRENIER. LLP
1150 Connecticut Avenue NW
9th Floor
Washington, DC  20036
(202) 828-4100

Jonathan S. Ziss, Esquire
Jonathan A. Cass, Esquire
SILVERMAN BERNHEIM & VOGEL, P.C.
Two Penn Center Plaza
Philadelphia PA  19102
(215) 636-3962

*Counsel for Plaintiff*

Dated: January _____, 2003

# EXHIBIT "5"

Citation                    Search Result              Rank 5 of 5        Databas
MI Eth. Op. R-10                                                          METH-EO
(Cite as: 1991 WL 519849 (Mich.Prof.Jud.Eth.))

State Bar of Michigan
Standing Committee On Professional and Judicial Ethics

*1 Opinion Number R-10
April 19, 1991

SYLLABUS

A lawyer retained by a personal representative of a decedent's estate to pursue
a wrongful death action is the lawyer for the personal representative as
fiduciary.

A lawyer shall clarify for all interested persons that the lawyer's role is
representing the personal representative as fiduciary, and when the lawyer knows
that another person misunderstands the lawyer's role, the lawyer shall make
reasonable efforts to correct the misunderstanding, including advising the person
to seek independent counsel.

A lawyer who has undertaken representation of multiple clients in a wrongful
death action, which clients are later unable to agree on the proposed
distribution under the wrongful death judgment, must withdraw from the
representation of all clients.

The lawyer for the personal representative may not represent another person who
wishes to challenge the allocation of the wrongful death action proceeds proposed
by the personal representative, because a disinterested lawyer could not
reasonably believe that representation of the other person would not be adversely
affected by representation of the personal representative as fiduciary.

The lawyer must advocate the distribution proposed by the fiduciary personal
representative unless it is illegal or fraudulent. The lawyer may not allow the
lawyer's services to be used to assist a fraudulent or illegal act.

References:   MRPC 1.2, 1.3, 1.4, 1.6, 1.7, 1.15, 1.16, 3.3, 4.3, 5.4(c) ; C- 75;
MCR 8.303; MCL 600.2922, MSA 27A.2922; MCL 700.543 et seq, MSA 27.5543 et seq;
Becht v Miller, 279 Mich 629 (1937); Crystal v Hubbard, 414 Mich 297 (1982) ;
Steinway v Bolden, 185 Mich App 234 (1990); Stover v Wayne County Probate Judge,
219 Mich 566 (1922); Wright v Estate of Treichel, 36 Mich App 33 (1971); ABA
Model Code of Professional Responsibility, EC 5-18; ABA i1017.

TEXT

A lawyer is retained by the personal representative of an estate to pursue a
wrongful death claim.  After settlement of the wrongful death case there develops
extensive controversy concerning allocation and distribution of proceeds among
family members, one of whom is the personal representative of the decedent's
estate.

. May the lawyer propose a distribution to the Court when the family member
claimants have already failed to agree to allocation?

. May the lawyer represent the interest of the personal representative as an

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

individual claimant in a hearing on allocation and distribution?

I.    WHO IS THE CLIENT?

"In order to determine whether the lawyer may undertake the representation proposed, we must first determine whom the lawyer currently represents and to whom the lawyer owes duties of loyalty, confidentiality, accountability, and independent professional judgment.  In short, the question is "who is the lawyer's client?"

"A personal representative has broad statutory authority to hire professional assistance as needed to enable the personal representative to fulfill duties regarding administration, settlement of claims, accounting and distribution of estate assets, MCL 700.543.  Funds of the estate, which are the fiduciary responsibility of the personal representative, may be used to hire suc h professionals, MCL 700.543, MCR 8.303.

*2 The weight of authority, although not unanimous, holds that the personal representative of the estate is the lawyer's client.  See C-75; Wright v Estate of Treichel, 36 Mich App 33 (1971); Stover v Wayne County Probate Judge, 219 Mich 566 (1922); Becht v Miller, 279 Mich 629 (1937); ABA i1017; ABA Model Code of Professional Responsibility, EC 5-18.

We note that Steinway v Bolden, 185 Mich App 234 (1990) holds that a lawyer is "attorney for the estate" for purposes of the lawyer's liability when the personal representative misappropriates estate funds.  In that case the court noted that pleadings filed in the matter refer to the lawyer as "attorney for the estate".  The court noted that the lawyer's fees (1) must be approved by the court, not just by the personal representative, (2) are paid from the estate, not by the personal representative, and (3) were in fact approved, paid, and accepted by the lawyer in this manner.  These facts led the court to conclude that the lawyer was estopped from denying that no duty was owed to the estate.

When considering "who is the client" for purposes of ethics duties of loyalty, confidentiality and conflicts, however, a different result must be reached. The existence of a lawyer-client relationship is not determined merely by who pays the bill; parents frequently pay for legal representation for children, insurers pay for insured, employers pay for employees, yet the lawyer owes no duties to the payor.  MRPC 5.4(c) specifically protects a lawyer's independent professional judgment from being affected by one who pays for the representation of another. Further, Steinway, which was not a wrongful death case, is distinguishable from the present inquiry since a wrongful death action must be brought by and in the name of the personal representative of the estate of the deceased person, MCL 600.2922. Thus, the pleadings filed in the instant matter would show the lawyer appearing on behalf of the personal representative.

We further note that the personal representative may hire a lawyer without court approval and without notice to interested parties. The personal representative may limit the scope or objectives of the representation pursuant to MRPC 1.2(b), and hire the same lawyer or a different lawyer to pursue or defend a particular legal claim.  The lawyer is provided information by and obtains instructions from the personal representative, and provides advice, counsel and suggestions to the personal representative in the fulfillment of the personal representative's fiduciary duties. If the personal representative were not the lawyer's client, no privilege would attach to these communications and the lawyer would not be

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

required to preserve the information as confidences and secrets, MRPC 1.6.  The
lawyer's compliance with duties of diligence, MRPC 1.3, communication, MRPC 1.4,
and accounting, MRPC 1.15, similarly can only be weighed as to the lawyer's
communications with the personal representative.
 *3 A conclusion that a lawyer retained by a fiduciary represents the fiduciary,
and not the beneficiaries or heirs, is supported by the entire scheme of the
Michigan Probate Code, which makes clear that a fiduciary has obligations to the
beneficiaries who, in turn, have rights against the fiduciary.  See, MCL 700.544,
liability of fiduciary for wrongdoing; 700.563, duty of fiduciary to file
accountings and close estate; 700.552, beneficiary may object to a fiduciary
continuing a business held by the estate; 700.572, beneficiary may file petition
requiring fiduciary to settle estate.
 A careful analysis of the entire Wrongful Death Act, MCL 600.2922, demonstrates
that the Wrongful Death Act imposes upon a fiduciary certain obligations to the
heirs, and that the lawyer for the personal representative is not the lawyer for
the heirs. However, MRPC 1.2(a) and MRPC 1.4(b) require the lawyer for the
personal representative to counsel the personal representative regarding specific
fiduciary obligations owed to the beneficiaries of the estate .
II.   MULTIPLE REPRESENTATION: WRONGFUL DEATH ACTION.
 Having concluded that the personal representative is the lawyer's "client," we
then apply the general conflict rule, MPRC 1.7.  The lawyer may not pursue any
action or proposal which conflicts with the duties the lawyer has undertaken on
behalf of the personal representative acting as fiduciary.
 To pursue the wrongful death claim for the fiduciary personal representative, a
lawyer would ordinarily contact the heirs and claimants, notify them of the
action, collect evidence, and evaluate testimony appropriate to pursue the claim.
Although the heirs and claimants are interested parties and may benefit from a
successful wrongful death action, they are not "clients" of the lawyer in the
matter.   The lawyer should therefore approach such persons pursuant to MRPC 4.1
and 4.3, which state:
 "4.1.   Truthfulness in Statements to Others.  In the course of representing a
client, a lawyer shall not knowingly make a false statement of material fact or
law to a third person."
 "4.3   Dealing With an Unrepresented Person.  In dealing on behalf of a client
with a person who is not represented by counsel, a lawyer shall not state or
imply that the lawyer is disinterested.  When the lawyer knows or reasonably
should know that the unrepresented person misunderstands the lawyer's role in the
matter, the lawyer shall make reasonable efforts to correct the
misunderstanding."  Emphasis added.
The lawyer for the fiduciary personal representative must clarify for all
interested persons that the lawyer's client is the personal representative as
fiduciary.  When the lawyer knows that an heir or claimant misunderstands the
lawyer's role, the lawyer must make reasonable efforts to correct the
misunderstanding, making it clear that if the person desires to be represented,
independent counsel should be contacted.
Although potential heirs may benefit from the wrongful death action if it is
successful, the lawyer owes no lawyer-client duties to the heirs, unless the
lawyer has undertaken multiple representation of the heirs along with the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

MI Eth. Op. R-10
(Cite as: 1991 WL 519849, *3 (Mich.Prof.Jud.Eth.))

fiduciary personal representative in the wrongful death case. Multiple
representation would be proper only pursuant to MRPC 1.7, which requires the
lawyer to counsel the prospective clients concerning conflicts of interest which
may arise or which already are known to exist.  The lawyer should have made an
independent judgment as to whether the representation of the heirs would be
directly adverse to or materially limited by the lawyer's duties to the personal
representative, and whether a disinterested lawyer would conclude the
representation of all prospective clients would not be adversely affected. If
not, the lawyer may not counsel the prospective clients or seek their consent to
the multiple representation.
*4 III.   MULTIPLE REPRESENTATION:  DISTRIBUTION PROCEEDING.
 Whether the lawyer may represent the interests of any of the heirs at the
allocation hearing depends upon a similar analysis.  The lawyer has not completed
duties to the personal representative as fiduciary until the order allocating the
wrongful death case proceeds has been entered.  Until that employment for the
personal representative has been fulfilled, the lawyer may not represent a new
client whose interests are directly adverse, MRPC 1.7(a), or would be materially
limited by, MRPC 1.7(b), the lawyer's duties to the fiduciary personal
representative.
 In the event of controversy over the allocation and distribution of the
proceeds, the lawyer must advise all persons who may be entitled to participate
in the recovery that the lawyer represents the personal representative in a
fiduciary role, and that they should obtain independent counsel if they wish to
challenge the personal representative's proposed allocation.  See, MRPC 4.3,
communication with unrepresented persons.  If there are heirs who agree with the
fiduciary personal representative's proposed distribution, and those heirs and
the personal representative consent to the lawyer's multiple representation of
their interests, the lawyer may proceed.  Those heirs who do not agree with the
proposed distribution may not be represented by the lawyer, MRPC 1.7(a)(1) and
MRPC 1.7(b)(1).  If the lawyer undertakes multiple representation and there later
develops a controversy over the allocation and distribution of the proceeds, the
lawyer must withdraw from the representation of all clients.
 May the lawyer represent the personal representative as claimant and as
fiduciary at the allocation proceeding?  In CI-155, citing to State Bar v Estes,
392 Mich 645 (1974), the Committee held that where a personal representative is
also a claimant against the estate it was improper for a lawyer to represent the
personal representative in both capacities.  In CI-155 and in Estes, however, the
interests of the personal representative as fiduciary and as claimant were not
the same; the personal representative as claimant was challenging laws and
determinations which the personal representative as fiduciary was required under
law to follow.
 Applying MRPC 1.7(a)(1) and 1.7(b)(1), if a disinterested lawyer could not
reasonably conclude that representation of the claimant would not adversely
affect the representation of the fiduciary, the lawyer may not undertake the dual
representation.  Client consent under MRPC 1.7(a)(2) or MPRC 1.7(b)(2) would not
suffice, since consent is only available to permit dual representation in
situations where the representation of one or the other clients will not be
adversely affected.  The requirements of MRPC 1.7(a)(1) and (b)(1) cannot be

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

MI Eth. Op. R-10
(Cite as: 1991 WL 519849, *4 (Mich.Prof.Jud.Eth.))

waived by the client.  Thus, if the interests of the personal representative as
claimant and as fiduciary are the same, the lawyer is not prohibited from
representing the personal representative in the allocation proceeding in both
capacities.
*5 IV.  LAWYER'S DISAGREEMENT WITH PROPOSED DISTRIBUTION.
 When the lawyer and the client fiduciary personal representative disagree on a
distribution of wrongful death proceeds proposed by the client, the lawyer may
counsel the client and attempt to persuade the client to the lawyer's point of
view, but ultimately the proposed distribution is the statutory responsibility of
the client.  Crystal v Hubbard, 414 Mich 297 (1982).  The lawyer must advocate
the distribution proposed by the fiduciary personal representative, MRPC 1.2(a),
unless the proposed distribution is "illegal or fraudulent" under MRPC 1.2(c),
which states:
     "A lawyer shall not counsel a client to engage, or assist a client, in conduct
that the lawyer knows is illegal or fraudulent, but a lawyer may discuss the
legal consequences of any proposed course of conduct with a client and may
counsel or assist a client to make a good-faith effort to determine the validity,
scope, meaning, or application of the law."  Emphasis added.
 ABA Model Rule of Professional Conduct 1.2(d), from which MRPC 1.2(c) is drawn,
uses the phrase "criminal or fraudulent" rather than "illegal or fraudulent."
Thus, Rule 1.2(c) as adopted in Michigan includes civil illegality as well as
criminal illegality.
 If the proposed distribution is illegal or fraudulent, the lawyer may not allow
the lawyer's services to be used to assist the illegal act or fraud, and thus may
not propose the distribution to the court.  If the client persists, the lawyer
must withdraw, MRPC 1.16(a)(1).  If the illegality or fraud is not uncovered
until the lawyer's services have been used in furtherance thereof, the lawyer has
the option to reveal the fraudulent or illegal act of the client only to the
extent reasonably necessary to achieve rectification, MRPC 1.6(c)(3).  In some
cases the lawyer may be required to make disclosures of material facts to the
tribunal when disclosure is necessary to avoid assisting the client, MRPC
3.3(a)(2).
END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of March 2003, I served, via U.S. Mail, first-class postage prepaid, and by hand-delivery, PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS on:

Jonathan K. Hollin, Esquire
Powell,Trachtman, Logan, Carrle,
Bowman & Lombardo
475 Allendale Road
Suite 200
King of Prussia, Pennsylvania 19406

Anne R. Noble