## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH A. STANTON,<br>**Personal Representative of**<br>**JOSEPH H. SANTARLASCI, III,**<br>**Deceased, and Administrator of the**<br>**Estate of JOSEPH H. SANTARLASCI, III,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**LAFAYETTE COLLEGE,** *et al.,*<br><br>     **Defendants.** | ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>**Civil Action No. 02 CV 4779** |

### ORDER

AND NOW this _____ day of _____, 2003, upon consideration of the Motion of Defendants for Partial Summary Judgment Regarding Plaintiff's Claims for Solatium and Loss of Filial Consortium, and upon consideration of Plaintiff Elizabeth A. Stanton's Opposition thereto, it is hereby **ORDERED** and **DECREED** that the Motion shall be, and hereby is, **DENIED**.

**BY THE COURT:**

_____

                                                  **J.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELIZABETH A. STANTON,                      )
Personal Representative of                 )
JOSEPH H. SANTARLASCI, III,                )
Deceased, and Administrator of the         )
Estate of JOSEPH H. SANTARLASCI, III,      )
                                           )
        Plaintiff,                         )
                                           )
v.                                         )   Civil Action No. 02 CV 4779
                                           )
LAFAYETTE COLLEGE, *et al.*,               )
                                           )
        Defendants.                        )

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT REGARDING PLAINTIFF'S CLAIMS FOR
SOLATIUM
AND LOSS OF FILIAL CONSORTIUM**

**COMES NOW** Plaintiff Elizabeth A. Stanton, by and through her undersigned

counsel, and Opposes the Motion of Defendants Lafayette College and Erin Malone for

Partial Summary Judgment Regarding Plaintiff's Claims for Solatium and Loss of Filial

Consortium on grounds that (1) Plaintiff's Complaint does not include a prayer for

solatium damages, rendering Defendants' motion as to these damages *per se* frivolous;

(2) the "evidence" submitted by Defendants in support of their motion for partial

summary judgment on what they characterize as "loss of filial consortium" damages is

subject on its face to supplementation, as discovery in this case continues, rendering

summary judgment on these damages premature; and (3) although the law is unsettled,

Pennsylvania courts (including this Court) have allowed the parents of adult children to

recover what Defendants characterize as "loss of filial consortium" damages in certain

circumstances, such as those that exist here, rendering summary judgment entirely

inappropriate; and in support thereof, Plaintiff refers to the Memorandum of Points and

Authorities attached hereto and made a part hereof.

Respectfully submitted,

Peter C. Grenier

Peter C. Grenier (admitted *pro hac vice*)
Anne R. Noble (admitted *pro hac vice*)
BODE & GRENIER. LLP
1150 Connecticut Avenue NW
9th Floor
Washington, DC 20036
Telephone: (202) 828-4100
Fax: (202) 828-4130

*-and-*

Jonathan S. Ziss, Esquire
Jonathan A. Cass, Esquire
SILVERMAN BERNHEIM & VOGEL, P.C.
Two Penn Center Plaza
Philadelphia PA 19102
Telephone: (215) 636-3962
Fax: (215) 636-3999

***Counsel for Plaintiff***

March 18, 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELIZABETH A. STANTON,                          )
Personal Representative of                     )
JOSEPH H. SANTARLASCI, III,                    )
Deceased, and Administrator of the             )
Estate of JOSEPH H. SANTARLASCI, III,          )
                                               )
        Plaintiff,                             )
                                               )
v.                                             )   Civil Action No. 02 CV 4779
                                               )
LAFAYETTE COLLEGE, et al.,                     )
                                               )
        Defendants.                            )

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
### IN OPPOSITION
### TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
### REGARDING PLAINTIFF'S CLAIMS FOR SOLATIUM
### AND LOSS OF FILIAL CONSORTIUM

Once again, Defendants Lafayette College and Erin Malone ("Ms. Malone") (collectively, "Defendants") come before this Court seeking relief to which they are not entitled. Here, they move this Court (a) for summary judgment on a claim for damages based on a motion which is both premature (because discovery in this case is not yet complete) and grounded on an unsettled question of law, rendering summary judgment fundamentally inappropriate; and (b) for summary judgment on a "claim" for a type of damages that Plaintiff did not request in her Complaint. Indeed, two days after serving the Motion for Partial Summary Judgment ("Motion") now before this Court, Defendants served on Plaintiff a pleading styled "Motion to Overrule Objections and Compel Full and Complete Answers to Interrogatories" ("Motion to Overrule"), fully half of which is devoted to the alleged deficiencies in the Interrogatory Answer Defendants nevertheless

herein rely upon as a <u>basis</u> for their Motion for Partial Summary Judgment. *See* Motion at Exhibit A; *compare* Motion to Overrule. In other words, the same Interrogatory Answer is so woefully deficient that Defendants have asked the Court for assistance in forcing Plaintiff to supplement it, but, at the same time, contains sufficient information so as to render summary judgment in this case appropriate.   These diversionary, paper-intensive tactics, unfortunately, have become commonplace in this litigation.

Indeed, Defendants' attritional strategy appears to be to throw as many red herrings into the barrel as possible – hoping that one might stink.  While Plaintiff certainly does not begrudge good faith efforts by defense counsel to litigate their case, she objects, <u>strenuously,</u> to the barrage of meretricious motions filed herein, the sole purpose of which, apparently, is to create unnecessary work for Plaintiff's counsel and to distract said counsel (as well as, regrettably, the Court) away from the real issues in this case, namely the joint and several liability of Defendants for the drowning death of Joseph Howard Santarlasci, III ("Jay") in December 2001.

The Court should not countenance this behavior; and the motion for partial summary judgment now before this Court should be denied.

**COUNTERSTATEMENT OF FACTS**

On December 2, 2001, Joseph Howard Santarlasci, III ("Jay") drowned in the lap pool of the Ruef Natatorium at Lafayette College's Allan P. Kirby Sports Complex.  Prior to his death, Jay had been in distress at the bottom of the pool for a period of more than <u>five minutes</u>, while Ms. Malone (the Lafayette College <u>lifeguard</u> on duty at the time), sat passively behind a lifeguard table, wearing street clothes (in violation of Lafayette's own published rules), chatting with her boyfriend (in violation of Lafayette's rules), and

2

(according to admissions she made to Lafayette College Public Safety officers within days of the drowning incident) doing her homework (also in violation of the rules). Plaintiff recently learned that at that time, it was the regular practice for on-duty lifeguards to do homework while tasked with the responsibility of monitoring the Lafayette pools.

On July 18, 2002, Plaintiff Elizabeth Stanton ("Ms. Stanton") brought suit against Lafayette College and Ms. Malone, based on Pennsylvania's Wrongful Death and Survival Acts, 42 Pa. Cons. Stat. § 8301 (West 2002) and 42 Pa. Cons. Stat. § 8302 (West 2002), respectively.   In the wrongful death counts of her Complaint, Ms. Stanton requested damages for, *inter alia*, the deprivation to Jay Santarlasci's statutory beneficiaries of his "solace, society and companionship, as well as [his] comfort, guidance, kindly offices and advice." *See* Complaint at ¶¶ 87, 106, 130, 142 and 154. Defendants now ask this Court to find (as a matter of law) that "solace, society and companionship, comfort, guidance, kindly offices and advice" constitute both "filial consortium" and "solatium," and, further, have moved for partial summary judgment under both theories.  Because the law on "filial consortium" damages is, in the context of wrongful death actions, profoundly unsettled, and because Plaintiff's Complaint does not include a prayer for "solatium" damages, this Court must deny Defendants' motion.

## ARGUMENT

### I.    Standard for Summary Judgment

Summary judgment is a drastic measure and, as this Court has recognized, should be granted only "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

3

material facts and that the moving party is entitled to a judgment as a <u>matter of law</u>.'"
*Weisner v. Sears, Roebuck & Co.*, 1987 WL 18587, *1 (E.D. Pa.) (*quoting* Fed. R. Civ. P.
56) (emphasis added). (Copies of all unpublished opinions are attached hereto as Exhibit
"A" for the Court's ease of reference). Where, as here, the "answer to interrogatories" on
which Defendants rely is, <u>on its face</u>, subject to supplementation <u>and</u> discovery has not
yet closed, summary judgment is, at best, premature, and therefore should not be granted.
*See Weisner*, 1987 WL 18587,*1 (emphasis added) ("<u>All doubts must be resolved and all
inferences must be drawn in favor of the non-moving party</u>").  Defendants' Motion
should be denied on this basis alone.  Additionally, summary judgment is entirely
inappropriate where, as here, the "law" itself is unsettled. Indeed, although the curtain is
raised and the orchestra primed, we are, at this stage, only at the overture of this litigation
– and still lack the entire score.  Absent overwhelmingly persuasive reasons for silence
(which Defendants nowhere present here), this Court should allow the litigation (in its
entirety) to play out in front of a jury.

4

II.    **Summary Judgment on What Defendants Characterize as Plaintiff's Claim for "Filial Consortium" Damages Should Not Be Granted Because, Under Pennsylvania's Wrongful Death Act, the Statutory Beneficiaries Here are Entitled to Damages for the Pecuniary Value of the Services the Decedent Would Have Provided Them Over the Course of His Lifetime, Regardless of How Those Services Are Characterized in the Complaint.**

In Pennsylvania, "[a]n action for wrongful death may be brought only by specified relatives of the decedent to recover damages in their own behalf, and not as beneficiaries of the estate." *Frey v. Pennsylvania Electric Co.*, 607 A.2d 796, 798 (Pa. Super. 1992) (*citing Mecca v. Lukasik*, 530 A.2d 1334 (Pa. Super. 1987)). "Wrongful death damages are implemented to <u>compensate</u> the spouse, children, or <u>parents</u> of the deceased for the <u>pecuniary loss</u> they have sustained by the denial of <u>future contributions decedent would have made in his or her lifetime</u>." *Frey*, 607 A.2d at 798 (emphasis added). Wrongful death actions are "designed only to deal with the economic effect of the decedents' death upon these specified family members." *Id. See Sunderland v. R.A. Barlow Homebuilders*, 791 A.2d 384, 390 (Pa. Super. 2002) (cause of action brought pursuant to Wrongful Death Act is "not for damages sustained by the decedent, but for damages to his or her family caused by the death").

Because Pennsylvania's Wrongful Death Statute, 42 Pa. Cons. Stat. Ann. § 8301 (West 2002) is "remedial" in nature, it is, according to the Pennsylvania Supreme Court, to be "liberally construed." *Wynkoop v. Luke*, 43 Pa. D & C.4th 16, 18 (1999) (*citing Hudak v. Georgy*, 634 A.2d 600, 602 (Pa. 1993)); *see Amadio v. Levin*, 501 A.2d 1085 (Pa. 1985) (justifying departure from precedent in wrongful death case on grounds, *inter alia*, that statute is remedial in nature and thus to be liberally construed).

As a result, where, as here, Plaintiff will demonstrate at trial the <u>pecuniary</u> value of the loss of to Jay Santarlasci's parents of the "solace, society and companionship, as

5

well as the comfort, guidance, kindly offices and advice" he would have provided to
them, these claims for damages should not be dismissed on a motion for partial summary
judgment.

A.    **Defendants Improperly Rely On Cases Where Plaintiffs Pled Separate
      Causes of Action for "Loss of Filial Consortium" and On Cases Based
      on Causes of Action Other Than Wrongful Death.**

Defendants cite numerous cases for the proposition that damages for what they
characterize as "loss of filial consortium" are not recoverable under Pennsylvania law.
*See, e.g.,* Memo at 6. The cases they cite, however, are not relevant here. Defendants
improperly rely on cases involving <u>causes of action</u> for "loss of filial consortium" and on
cases where the principal cause of action was something <u>other than</u> wrongful death –
instead of on wrongful death cases where "loss of filial consortium" has <u>not</u> been pled as
a separate cause of action. Yet, these are distinctions of <u>profound</u> difference, which
render the vast majority of cases cited by Defendants wholly inapposite. *See Wynkoop v.
Luke*, 43 Pa. D. & C.4th 16, 19 (1999) (emphasis added) (distinguishing between "cause
of action" for filial consortium and "measure of damages in a wrongful death action" on
grounds that "in a true loss of consortium action, the non-injured relative is entitled to
recover for the loss of society, companionship, comfort, etc. <u>whether or not it results in
pecuniary loss</u>"). *Compare* Memo at 6, *citing Jackson v. Tastykake, Inc.*, 648 A.2d 1214,
1218 (Pa. Super. 1994) (holding that Pennsylvania does not recognize a separate <u>cause of
action</u> for filial consortium); *Quinn v. City of Pittsburgh*, 90 A. 353, 354 (Pa. 1914)
(holding, in context of <u>personal injury action</u>, that "right to recover for loss of
companionship is confined to cases where a husband sues for <u>injuries</u> to his wife");
*McCaskill v. Philadelphia Housing Authority*, 615 A.2d 382, 384 (Pa. Super. 1992)

(holding that Pennsylvania does <u>not</u> recognize a statutory cause of action for wrongful death based on the death of a non-viable fetus <u>and</u>, further, that Pennsylvania does <u>not</u> recognize a separate <u>cause of action</u> for filial consortium); *Schroeder v. Ear, Nose and Throat Associates of Lehigh Valley, Inc.*, 557 A.2d 21, 23 (Pa. Super. 1989) (emphasis added) (holding, in context of a <u>medical malpractice</u> case, that "action for loss of consortium is derivative, depending for its viability upon the substantive merit of the injured party's claims" and that "[l]oss of filial consortium has never been recognized as a <u>cause of action</u>").

The Pennsylvania Supreme Court has <u>not</u> expressly decided the question of whether damages for, *inter alia*, "solace, society and companionship" are recoverable in the context of a wrongful death case. *See Brill v. Benfield*, 1995 WL 380043 (E.D. Pa.). In candor, it appears that this Court <u>has</u> previously stricken a claim for filial consortium in a wrongful death case, finding that, "[t]here is no reason to believe that the Pennsylvania Supreme Court will allow a <u>cause of action</u> for a parent's loss of a child's consortium in the foreseeable future." *Id.* at *2 (emphasis added). That ruling, however (and we believe this to be a <u>significant</u> however), was based solely on arguments made by the plaintiff in *Brill* that this Court found "unpersuasive." *Id.* These arguments were: "(1) the modern trend to allow a cause of action for the loss of filial consortium . . . (2) *Walton v. Avco Corp.*, 557 A.2d 372, 388 (Pa. Super. 1989), where the Pennsylvania Superior Court held that a 'child can recover in a wrongful death action for the loss of companionship, comfort, society and guidance of a parent' and (3) *Pearsall v. Emhart Industries, Inc.*, 559 F. Supp. 207, 211 (E.D. Pa. 1984), where the trial court upheld a jury [*sic*] that a parent was entitled to compensation for the loss of services and emotional

7

support of her decedent children." *Id.*   Notably, the plaintiff in *Brill* did <u>not</u> argue, as Plaintiff herein does, that the Wrongful Death statute <u>itself</u> appears to authorize the damages Plaintiff claims here, where, as here, those damages are pecuniary -- and <u>not</u> merely "affectional."

**B.    Pennsylvania Courts -- Including This Court -- Have Permitted Recovery for What Defendants Calls "Filial Consortium" Damages <u>Where Such Damages Are Pecuniary.</u>**

Because Pennsylvania's Wrongful Death Statute permits a plaintiff asserting a cause of action for wrongful death to recover "in addition to <u>other damages,</u> damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death," 42 Pa. Cons. Stat. Ann. § 8301(c) (West 2002) (emphasis added), the "polestar" of any analysis of recoverable damages in a wrongful death case "must necessarily be the concept of pecuniary loss." *Wynkoop v. Luke*, 43 Pa. D. & C.4th 16, 17 (1999). *See Sinn v. Burd*, 404 A.2d 672, 675 n.3 (Pa. 1979) (wrongful death action intended to "compensate the decedent's survivors" for the "pecuniary" loss suffered as a result of the decedent's death); *see generally Kiser v. Schulte*, 648 A.2d 1, 4 (Pa. 1994) (damages recoverable in wrongful death action include "present value of the services the deceased would have rendered to the family").

Thus, the plaintiff in a wrongful death action may "recover for the loss of . . . deceased son's 'comfort and society' <u>if</u> [Plaintiff] can prove that such loss resulted in the destruction of a reasonable expectation of pecuniary advantage . . . . " *Wynkoop*, 43 Pa. D &C.4[th] at 20 (emphasis added); *see, e.g., Schofield v. Piper Aircraft Corp.*, 1988 WL 62181, *1 (E.D. Pa.) (in wrongful death action brought following death of 24-year-old son, jury was properly instructed that parents were "entitled to recover the <u>pecuniary</u>

value of the services, society and comfort that decedent would have given his parents had he lived"); *Ehrman v. Mid-American Waste Systems of Pa., Inc.*, 39 Pa. D. & C.4th 235, 252 (1998) (permitting award of damages for, *inter alia*, "companionship, comfort, society, guidance, solace and protection" in wrongful death case brought by parents of deceased 19-year-old daughter); *see generally* Pa. Suggested Standard Civil Jury Instructions at chapter 6.10 (*cited in Ehrman*, 39 Pa. D. & C.4th at 251-252) (damages recoverable under the Wrongful Death Act include a sum which will fairly and adequately compensate the family of the decedent for the pecuniary value of the services, society, and comfort that the decedent would have given his or her family if he or she had lived); and at subcommittee note (emphasis added) ("Services performed for the family have pecuniary value, for which the survivors may seek recovery, regardless of the status of the deceased. . . . . The services not only include day-to-day activity, but also 'companionship, comfort, society, guidance, solace and protection'")).

Moreover, as this Court opined in *Schofield*, while "[I]ntangible damages are problematical [and] the attempt to equate money with the loss in this type of case is 'truly an impossible task,'" a verdict of "$500,000 or more" in a case involving the wrongful death of a grown son "was reasonably predictable." 1988 WL 62181, *1 (emphasis added). (The jury in *Schofield* awarded the parents of the 24-year-old decedent $503,000 on their wrongful death claim and $4 million on their survival action.)

Thus, both this Court and state courts in Pennsylvania have recognized that, where such damages are pecuniary, the parents of a deceased adult son or daughter may recover, in the context of a wrongful death action, damages for the loss of their child's

9

companionship, comfort, society, guidance, solace and protection – just as Plaintiff has requested here.

Moreover, because discovery in this case continues, Defendants' motion for summary judgment on what it calls "filial consortium" damages is wholly premature, and therefore must be denied. Alternatively, if what Defendants are in fact are seeking is dismissal of Plaintiff's claims for damages based on the loss to the statutory beneficiaries of "the solace, society and companionship, as well as the comfort, guidance, kindly offices and advice" of Jay Santarlasci as a matter of law, then their motion also must be denied because, as the discussion of the case law, *supra*, makes clear, the law on this question is not settled and is therefore not amenable to dismissal where, as here, "[a]ll doubts must be resolved and all inferences must be drawn in favor of the non-moving party." *See Weisner*, 1987 WL 18587,*1 (emphasis added). For all these reasons, summary judgment must be denied here.

III. **Nowhere in the Complaint Does Plaintiff Make a Claim for "Solatium" Damages.**

Because Defendants have raised the issue of "solatium" damages, Plaintiff will address it, briefly. However, as the Complaint in this case itself makes clear, Plaintiff has not sought "solatium" damages and therefore can only assume either that Defendants' motion for summary judgment on this non-issue was brought simply to cause more work to Plaintiff's counsel, or that Defendants did not read Plaintiff's Complaint.

Regrettably (or perhaps deliberately), Defendants have confused Plaintiff's claim for damages arising from the loss to the statutory beneficiaries of "the solace, society and companionship, as well as the comfort, guidance, kindly offices and advice" of Jay Santarlasci, with a claim for solatium damages, *see* Memo at 5 and n.4, when the two

10

are, in fact, entirely different. This "confusion" is allegedly predicated on Plaintiff's choice of the word "solace" in the damages she properly requested. *Id.* Of course, Defendants' interpretation of Plaintiff's use of the word "solace" is patently ridiculous, as perhaps nothing makes more clear than Defendants' lengthy memorandum section characterizing this same request not as a claim for "solatium," but, instead, as one for "filial consortium," and seeking to have it dismissed on that basis. *See* Memo at 6-10.

Solatium damages (which, again, were <u>not</u> pled here) are "a type of monetary damages awarded the decedent's survivors to recompense them from [*sic*] the feelings of anguish, bereavement, and grief caused by the fact of the decedent's death." *Yandrich v. Radic*, 433 A.2d 459, 463 n.2 (Pa. 1981) (*quoting Sinn v. Bard*, 404 A.2d 672, 675 n.3 (Pa. 1979)). Thus, while damages for the loss of the "solace" of the deceased compensate family members for the loss of his services to the family (*e.g.*, the service of comforting them), "solatium" damages are meant to compensate surviving family members for the pain and grief they experience as a result of the death itself. The two types of damages are factually and legally distinct, as this Court's decision in *Schofield* illustrates:

> As the jury was instructed, plaintiff was entitled to recover the pecuniary value of the services, society and comfort would have given to his parents had he lived . . .; *but no amount for grief or mental suffering*.

1988 WL 62181 at *1 (emphasis added; citations omitted). Thus, while Plaintiff has requested (and is entitled to) damages for the loss to Jay Santarlasci's parents of his "services, society and comfort," Plaintiff has <u>not</u> requested damages for the profound "grief and mental suffering" Jay Santarlasci's parents have endured since his drowning death. Indeed, after a careful review of the applicable law (conducted <u>before</u> filing the Complaint in this case, as required by Fed. R. Civ. P. 11), Plaintiff did not request

"solatium" damages in this case, because Pennsylvania law does not permit such damages. One would have hoped that Defendants would have engaged in a similarly detailed review of the law (as well as the Complaint in this matter) <u>before</u> filing the meretricious motion now before this Court, but, as this opposition makes only too clear, one would have hoped wrong.

Defendant's motion for partial summary judgment on Plaintiff's non-existent solatium damages claims must be denied.

**CONCLUSION**

For all these reasons, Defendants' Motion for Partial Summary Judgment should be denied.

Respectfully submitted,

Peter C. Grenier (admitted *pro hac vice*)
Anne R. Noble (admitted *pro hac vice*)
BODE & GRENIER. LLP
1150 Connecticut Avenue NW
9th Floor
Washington, DC 20036
Telephone: (202) 828-4100
Fax: (202) 828-4130
     -and-
Jonathan S. Ziss, Esquire
Jonathan A. Cass, Esquire
SILVERMAN BERNHEIM & VOGEL, P.C.
Two Penn Center Plaza
Philadelphia PA 19102
Telephone: (215) 636-3962
Fax: (215) 636-3999
*Counsel for Plaintiff*

March 18, 2003

## CERTIFICATE OF SERVICE

Jonathan S. Ziss, Esquire hereby certifies that a true and correct copy of the within

**Plaintiff's Opposition to Defendants' Motion for Partial Summary Judment Regarding**

**Plaintiff's Claim for Solatium and Loss of Filial Consortium** was served by United States

first-class mail, postage prepaid on March 18, 2003 to counsel below named:

> Jonathan K. Hollin, Esquire
> Powell, Trachtman, Logan,
> Carrle, Bowman & Lombardo, P.C.
> 475 Allendale Road, Suite 200
> King of Prussia, PA  19406

**SILVERMAN BERNHEIM & VOGEL**

BY: _____

**JONATHAN S. ZISS, ESQUIRE**
Attorney for Plaintiff,
Elizabeth A. Stanton

F:\WPCNET\DOCS\31614\001\Pleadings\certificate.service.opp.sj.031803.wpd

# EXHIBIT "A"

1987 WL 18587
(Cite as: 1987 WL 18587 (E.D.Pa.))

Ñ
Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

George and Beverly WEISNER,
v.
SEARS, ROEBUCK & CO., Murray of Ohio, and
Diacompe, Inc.
v.
YOSHIGAI KIKAI KINZOKU COMPANY, LTD.
and Chrysanthemum Nippon Wire Rope
Company, Inc.
George and Beverly WEISNER,
v.
YOSHIGAI KIKAI KINZOKU COMPANY, LTD.
and Chrysanthemum Nippon Wire Rope
Company, Inc.

Civ. A. Nos. 86-5001, 87-1910.

October 14, 1987.

R. David Bradley, Philadelphia, Pa., for plaintiffs.

Gerard J. St. John, Philadelphia, Pa., for defendants.

R. David Bradley, Philadelphia, Pa., for James Green, P.E.

Patrick J. O'Connor, Armando A. Pandola, Jr., Douglas R. Widin, Philadelphia Pa., for Chrysanthemum Nippon Wire Rope Company, Inc.

Kathy A. O'Neil, Philadelphia, Pa., for Diacompe, Inc.

Gerard St. John, Philadelphia, Pa., for Murray of Ohio.

Rochelle M. Fedullo, Wilson, Elser, Moskowitz, Edelman & Dicker, Philadelphia, Pa., for Yoshigai Kikai Kinziku Co., Ltd.

MEMORANDUM AND ORDER

BECHTLE, District Judge.

*1 Presently before the court are the motion for summary judgment of Chrysanthemum Nippon Wire Rope Company, Inc. ('Chrysanthemum'), the motion for summary judgment of Dia-Compe, Inc. ('Dia-Compe'),

the motion for summary judgment of Yoshigai Kikai Kinzoku Company, Ltd. ('Yoshigai'), and the motion for partial summary judgment of Murray Ohio Manufacturing Company ('Murray'). For the reasons stated herein, the motions will be denied.

BACKGROUND

On May 5, 1985, plaintiff George Weisner fell from a Sears Free Spirit bicycle and sustained serious injuries. Plaintiffs commenced two products liability actions as a result of these personal injuries. The first suit, Civil Action No. 86-5001, is against Sears, Roebuck & Co. ('Sears'), Murray and Dia-Compe. Yoshigai and Chrysanthemum were joined as third-party defendants by Dia-Compe. Plaintiffs have asserted no direct claim against Chrysanthemum or Yoshigai in No. 86-5001.

Plaintiffs' second action, Civil Action No. 87-1910, is directed against Yoshigai and Chrysanthemum. On June 15, 1987, both cases were consolidated for all purposes.

Chrysanthemum furnished the cable used in the brakes of the bicycle. Dia- Compe supplied the brake systems to the manufacturer, Murray, who in turn sold the bicycle to Sears. The other components were supplied by Yoshigai.

DISCUSSION

Summary judgment may be entered 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed.R.Civ.P. 56(c). The parties seeking summary judgment have the burden of identifying the portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2553 (1986). Once this showing is made, the burden shifts to the non-moving party to present affirmative evidence from which a jury might reasonably return a verdict in its favor. Id. at 2553-54; Fed.R.Civ. P. 56(e). All doubts must be resolved and inferences must be drawn in favor of the non-moving party. Gans v. Mundy, 762 F.2d 338, 341 (3d Cir.), cert. denied, 106 S.Ct. 537 (1985).

Chrysanthemum manufactured the brake cable incorporated into the bicycle. Chrysanthemum is a defendant in No. 87-1910 and a third-party defendant in No. 86-5001. Chrysanthemum's motion for summary

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

judgment [FN1] addresses the report and deposition
testimony of plaintiffs' expert, James Green ('Green').
Chrysanthemum argues that Green fails to identify any
aspect of Chrysanthemum's brake cable that was
defective and/or caused plaintiff George Weisner's
injuries.   Although Green's report and deposition
testimony do not make out a crystal clear case against
Chrysanthemum, his testimony could be read at this
time to embrace the notion that the cable itself was
defective at the time it left the manufacturer. Therefore,
there are genuine issues of material fact and summary
judgment is inappropriate at this stage.

*2 Dia-Compe, the supplier of the brake system, is a
named defendant in No. 86-5001. Dia-Compe argues
that there exists no evidence of a defect in the brake
system which it supplied and therefore summary
judgment is proper.  Green believes that the brake
systems materials were defective and that the braking
system was inadequate for stopping the bicycle.
Therefore, on its face there exists a genuine issue of
material fact.

Yoshigai is a named defendant in No. 87-1910 and a
third-party defendant in No. 86-5001.  Yoshigai
manufactured the component parts of the brake system,
with the exception of the brake cable. Yoshigai, in its
motion for summary judgment, argues that Green's
opinion is not based on reasonable scientific certainty
of the probable cause, but merely speculation which is
insufficient to sustain plaintiffs' burden of proof.
Green's testimony that the looseness in the secondary
levers was possibly a factor in the accident is sufficient
to preclude granting summary judgment.

Murray has filed a motion for partial summary
judgment on the issue of liability on its cross-claim
against Dia-Compe in No. 86-5001. Murray asserts that
the braking system for the bicycle was delivered by
Dia-Compe in two plastic bags, each bag containing a
complete brake kit for one wheel. Murray avers that no
warnings or instructions accompanied the braking
system.  Murray then points to the indemnity agreement
(hold harmless clause) specified in Murray's purchase
order. Dia-Compe responds by arguing that it cannot
be liable for indemnity for any verdict entered against
Murray due to defects in the owners manual since
Dia-Compe had no involvement in the preparation of
the manual.  Resolving all doubts in favor of the
non-moving party Dia-Compe, Murray's motion for
partial summary judgment must be denied.

CONCLUSION

For the reasons stated herein, there exists a genuine
issue of material fact as to each of the defendants.

Accordingly, summary judgment is inappropriate.

An appropriate Order will be entered.

ORDER

AND NOW, TO WIT, this 14th day of October, 1987,
upon consideration of defendants' motions, IT IS
ORDERED as follows:

1. Chrysanthemum's motion for summary judgment is
denied;

2.  Dia-Compe's motion for summary judgment is
denied;

3. Yoshigai's motion for summary judgment is denied;

4. Murray's motion for partial summary judgment is
denied; and

5. Murray's motion in limine to limit the testimony of
James M. Green is denied without prejudice to renew at
the time of trial.

> FN1   Chrysanthemum filed the identical
> motion for summary judgment in each of the
> cases notwithstanding the fact that it is only a
> third-party defendant in No. 86-5001.

1987 WL 18587, 1987 WL 18587 (E.D.Pa.)

END OF DOCUMENT

1988 WL 62181
(Cite as: 1988 WL 62181 (E.D.Pa.))

⧈
Only the Westlaw citation is currently available.


United States District Court, E.D. Pennsylvania.

Kenneth SCHOFIELD, Administrator of the Estate of
Richard L. Schofield, Dec'd.
v.
PIPER AIRCRAFT CORPORATION.

CIV. A. No. 87-4581.

June 14, 1988.

Arthur Alan Wolk, Esq. Catherine B. Slavin,
Philadelphia, Pa., for plaintiff.

George J. Miller, Anita M. Schmidt, Philadelphia, Pa.,
for Piper Aircraft Corporation.


### MEMORANDUM

LUDWIG, District Judge.

*1 Defendant Piper Aircraft Corporation moves for a
new trial and to amend the judgment. Fed.R.Civ.P.
59(a), (e).    Plaintiff Kenneth Schofield moves for
assessment of delay damages. Fed.R.Civ.P. 60(a).

On November 11, 1985 plaintiff's decedent, age 24,
while working as a commercial pilot, was killed in a
crash of a light plane, approaching Chester County
Airport.  A jury, on March 24, 1988, returned a death
benefits award of $4 million in the survival action and
$503,000 in the wrongful death action.

Plaintiff's causal explanation of the accident was that
the airplane went out of control when its wing flap
assembly broke, shortly before landing.  In the first
phase of the bifurcated trial, the jury found, upon
special interrogatory, that defendant, the manufacturer
of the airplane, was responsible for the accident on two
bases:  First, strict liability;  and second, comparative
negligence, with an allocation of 85 percent.  It also
found "breach of warranty as to fitness for use" but, as
to this theory, a lack of legal causation. [FN1]

Defendant's motion for new trial, asserts that:  1) the
jury's verdict was excessive;  and 2) the jury's findings
on causation were inconsistent.    In the alternative

motion to amend, defendant requests a reduction of the
total award by 15 percent to reflect the finding as to
plaintiff's    decedent's    comparative    negligence.
Plaintiff's motion, under Pa.R.Civ.P. 238, seeks
assessment of delay damages of $303,490.20.

To obtain a new trial because of excessiveness, a
verdict must be so grossly excessive as to shock the
court's conscience. Weaver v. Ford Motor Co., 382
F.Supp. 1068, 1076 (E.D.Pa.1974), aff'd w/o opinion,
515 F.2d 506 (3d Cir.1975);  Kravinsky v. Glover, 263
Pa.Super. 8, 25, 396 A.2d 1349, 1358 (1979).  Here,
expert and lay witnesses testified in depth to decedent's
qualifications to become a pilot with a major airline
including his past efforts and future intention to obtain
such a position.  A reasonable evidentiary basis existed
for concluding that he would have obtained such a
position. See Kaczkowski v. Bolubasz, 491 Pa. 561,
567, 421 A.2d 1027, 1030 (1980) (reasonable basis for
damage calculation sufficient to sustain award); Mecca
v. Lukasik, --- Pa.Super. ----, ----, 530 A.2d 1334, 1340
(1987) (testimony of parents as to decedents' future
plans, their own stations in life and that of siblings are
sufficient foundation for expert's projections of
decedents' potential earning capacities). [FN2] The
estimated range of future wage loss presented by
plaintiff was logically related to the evidence of
decedent's predictable career.    The survival action
award was well within those economic calculations.
Under the evidence, it cannot be said to have been
excessive. Mecca, — Pa.Super. at —, 530 A.2d at
1340-41.

Knowledgeable    witnesses    graphically    portrayed
decedent, plaintiff's oldest child, as an unusually fine
young man.  They described his relationship with his
parents and the filial services and comfort that he
provided them.    The large wrongful death award is
proportionate to the evidence. Buchecker v. Reading
Co., 271 Pa.Super. 35, 57, 412 A.2d 147, 158 (1979).
See Rodriquez v. United States, 823 F.2d 735, 751 (3d
Cir.1987) (New Jersey law); Poyser v. United States,
602 F.Supp. 436, 440 (D.Mass.1984) (Massachusetts
law).  As the jury was instructed, plaintiff was entitled
to recover the pecuniary value of the services, society
and comfort that decedent would have given to his
parents had he lived, Slaseman v. Myers, 309
Pa.Super. 537, 549, 455 A.2d 1213, 1220 (1983);  but
no amount for grief or mental suffering. Haddigan v.
Harkins, 441 F.2d 844, 852 (3d Cir.1970). Intangible
damages are problematical, but the attempt to equate
money with the loss in this type of case is "truly an

impossible task." *Rodriquez, 823 F.2d at 749.* Under the evidence, a verdict of $500,000, or more, was reasonably predictable.

When a claim of inconsistency is made, answers to special interrogatories should be reconciled wherever possible. *Andrasko v. Chamberlain Mfg. Corp., 608 F.2d 944, 947 (3d Cir.1979).* "Where there is a view of the case that makes the jury's answers ... consistent [the Seventh Amendment requires that] they be resolved that way." *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962).* Plaintiff's three theories of liability were predicated as follows: 1) when built in 1974, as shown by a long history of problems, the plane's wing flap bell crank assembly contained a latent defect--the inherent corrosiveness of its metal parts; 2) Piper Service Bulletin 671, issued in 1981, failed to rectify this design defect--which caused the eventual breakage; and 3) apart from the service bulletin, Piper took no steps to warn consumers and other potential users. In addition, it was alleged that the load-bearing capacity of the wing flap system was underdesigned and inadequately tested. Plaintiff produced evidence to support each of these claims. The jury instructions, together with the form of the liability questions, permitted the jury to decide each cause of action as though it was the sole theory of plaintiff's case.

*2 Moreover, the instructions on breach of warranty were focused on the time of sale. In contrast, as plaintiff argued and the jury was instructed, failure-to-warn as a defect and as negligence extended to the time of the accident. The jury could have considered a design flaw existing at the time of sale to be a breach of warranty as well as a tort violation. Then, it could have found the subsequent failure to mandate replacement in Service Bulletin 671 or to warn of the dangerousness of the original design to be a continuing strict liability defect and a repetition of negligent conduct-- although not a breach of warranty. So viewed, the jury's findings as to legal causation are consistent and sensible. *See Wagner v. International Harvester Co., 611 F.2d 224, 228-29 (8th Cir.1979); E.J. Stewart, Inc. v. Aitken Prods., Inc., 607 F.Supp. 883, 889-92 & nn. 6-7 (E.D.Pa.), aff'd w/o opinion, 779 F.2d 42 (3d Cir.1985).* [FN3]

The legal theory of strict liability does not include comparable fault or diminution by reason of the injured party's conduct. Plaintiff is entitled to his strict liability recovery without regard to the findings as to comparative negligence. *Staymates v. ITT Holub Indus., 364 Pa.Super. 37, ----, 527 A.2d 140, 145-46 (1987).* "The Pennsylvania Supreme Court, perhaps more than any other state appellate court in the nation

has been emphatic in divorcing negligence concepts from product-liability doctrine." *Conti v. Ford Motor Co., 578 F.Supp. 1429, 1434 (E.D.Pa.1983), rev'd on other grounds, 743 F.2d 195 (3d Cir.1984), cert. denied, 470 U.S. 1028, 105 S.Ct. 1396, 84 L.Ed.2d 784 (1985).* There is no reason to consider the liability findings as interrelated or the final result to be different from a verdict on strict liability alone. Defendant's motion to reduce the judgment to incorporate the finding of comparative negligence must be denied.

Plaintiff's motion for assessment of delay damages is predicated on *Pa.R.Civ.P. 238,* which used to be applied by federal courts in diversity cases. *Jarvis v. Johnson, 668 F.2d 740 (3d Cir.1982).* However, in *Craig v. Magee Memorial Rehabilitation Center, 512 Pa. 60, 515 A.2d 1350 (1986),* the Pennsylvania Supreme Court suspended the Rule and directed state trial courts to assess fault for trial delays on a case-by-case basis until promulgation of a substitute rule. This interim supervisory directive has been held to have no direct application to federal courts and not to be a matter of substantive law for *Erie* purposes. *E.g., Salvatico v. Supermarkets General Corp.,* No. 86-4072, slip op. at 2-3 (E.D.Pa. Apr. 29, 1988); *Locke v. Frank,* No. 86-2087, slip op. at 4-5 (E.D.Pa. Jan. 16, 1987). *Fed.R.Civ.P. 11* is available to sanction litigants responsible for unreasonable delays. Here, however, plaintiff admits "there is no fault to be assessed." Plaintiff's "Memorandum in Support of Motion to Correct Clerical Mistake in Judgment" at 3. The complaint was filed on June 23, 1987. At a Rule 16 conference held on October 26, 1987, trial was scheduled for March 7, 1988. The trial was commenced without delay on the scheduled date. [FN4]

*3 An order follows.

### ORDER

AND NOW, this 10th day of June, 1988 defendant's motions for a new trial and to amend the judgment are denied. Plaintiff's motion for assessment of delay damages is denied.

> FN1. The jury also decided that defendant was not liable for punitive damages.

> FN2. Plaintiff, decedent's father, is a corporate commercial pilot. He and others who knew decedent well were excellent witnesses.

> FN3. There is conflicting authority on the

issue whether defendant waived its inconsistency argument by failing to object before the jury was discharged. *Compare McIsaac v. Didriksen Fishing Corp.,* 809 F.2d 129, 134 (1st Cir.1987) (waiver) *with Alverez v. J. Ray McDermott & Co.,* 674 F.2d 1037, 1040-41 (5th Cir.1982) (no waiver). The Third Circuit has not ruled definitively on the issue. *See Halprin v. Mora,* 231 F.2d 197, 200 (3d Cir.1956). If defendant had raised its objection immediately, the jury could have been instructed to reconsider the answers or supplemental clarifying interrogatories could have been submitted. These expedient alternatives were lost. However, because a trial judge may lack authority to enter judgment upon irreconcilable answers, a waiver rule would seem inappropriate. *Brunner v. Maritime Overseas Corp.,* 779 F.2d 296, 297 (5th Cir.), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1971, 90 L.Ed.2d 655 (1986). Inasmuch as the answers are not irreconcilable, it is unnecessary to decide this issue.

Contrary to plaintiff's assertion, defendant did not insist that the jury be presented with all three liability theories. Rather, counsel for defendant suggested that plaintiff withdraw the breach of warranty claim. Tr. 10.127. Plaintiff ran the risk of verdict inconsistency by having this claim submitted to the jury. *See E.J. Stewart, Inc.,* 607 F.Supp. at 891 n. 5.

FN4. The absence of culpable behavior on defendant's part would probably preclude an award of delay damages under the substitute procedure outlined in *Craig.* *See, e.g., Schmehl v. Sheraton Corp.,* No. 85- 3242, slip op. at 4 (E.D.Pa.), *aff'd,* 833 F.2d 307 (3d Cir.1987). Moreover, under that procedure a plaintiff must file a petition for delay damages within five days after a verdict. *Craig,* 512 Pa. at 65. 515 A.2d at 1353. Plaintiff filed its motion 15 days--excluding weekends--from the date of the verdict.

1988 WL 62181, 1988 WL 62181 (E.D.Pa.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works