IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIZABETH A. STANTON, Personal Representative of JOSEPH H. SANTARLASCI, III, Deceased, and Administrator of the Estate of JOSEPH H. SANTARLASCI, III | : : : : : : | CIVIL ACTION |
| *Plaintiff,* | : : | NO. 02 CV 4779 |
| v. | : : | |
| LAFAYETTE COLLEGE and ERIN MALONE | : : : | |
| *Defendant.* | : | |

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT LAFAYETTE COLLEGE'S MOTION TO
OVERRULE OBJECTIONS AND COMPEL FULL AND COMPLETE
ANSWERS TO INTERROGATORIES DIRECTED TO PLAINTIFF (SECOND SET)**

**I.   INTRODUCTION**

Currently before this Court is Defendant Lafayette College's Motion to overrule objections and compel full and complaint answers to Interrogatories directed to Plaintiff, which was filed on March 7, 2003. Lafayette College is seeking answers to two Interrogatories. Interrogatory No. 1 asked Plaintiff to set forth the amount of damages she was claiming under the Wrongful Death Statute, 42 Pa.C.S. §8301. Interrogatory No. 2 asked Plaintiff to set forth the basis for the opinions asserted by her expert Jerome H. Modell, M.D. ("Modell"), a doctor from Florida, who has opined, without disclosed basis, that the Decedent was submerged for at least five and more likely ten minutes before rescue.

Plaintiff objected to Interrogatory No. 1 and then responded that the "general damages

available under the statute are not subject to quantification at this stage of the litigation. **Plaintiff will supplement this Answer regarding special damages upon receipt of the necessary data**." (Emphasis added). The discovery deadline is March 31, 2003 and all necessary information to answer the interrogatory is already within the Plaintiff's control.

Plaintiff also objected to Interrogatory No. 2 contending that it sought information "best provided by an expert such as Jerome Modell, M.D." Plaintiff then added that she, as a layman has no knowledge about such matters.

Lafayette College hereby responds to the misstatements and arguments set forth by Plaintiff in response to its motion to compel.

II.   ARGUMENT

<u>Interrogatory No. 1 - Wrongful Death Damages</u>

Plaintiff contends in her wrongful death counts that she is seeking damages for the beneficiaries' deprivation of the "solace, society, companionship, comfort, guidance, kindly office and advise of the decedent." Lafayette College's Interrogatory No. 1 asked Plaintiff to set forth the amount of wrongful death "damages claimed and the basis therefore." Pursuant to Fed.R.Civ.P. 26(a)(1)(C) Plaintiff must provide "computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered." Plaintiff failed to provide this information in her Initial Disclosures as required by Fed.R.Civ.P. 26(a)(1)(C) and objected to providing it in response to Lafayette College's Interrogatory No. 1.

In response to Lafayette College's motion Plaintiff states that she is seeking the loss of the Decedent's "services" to the statutory beneficiaries. (Plaintiff's Response pg. 5). Aware that the loss of filial consortium damages which include such things as the loss of society and comfort, are *not* recoverable damages in a wrongful death action under Pennsylvania law, Plaintiff now has attempts to characterize her damages as "loss of services."[1] If indeed what Plaintiff is seeking is the pecuniary value of the loss of the services of the Decedent to the beneficiaries then those

---

[1] Filial consortium damages are not recoverable in Pennsylvania. Lafayette College has filed a Motion for Partial Summary Judgment on this issue wherein it cites numerous Pennsylvania cases, both state and federal, holding that such damages are not recoverable. That Motion is currently pending. A copy of the Memorandum and Reply Memorandum in support of said Motion are attached hereto as Exhibits "A" and "B." For examples of the cases cited by Lafayette College see, Jackson v. Tastykake, Inc., 437 Pa.Super. 34, 648 A.2d 1214 (1994); Quinn v. City of Pittsburgh, 243 Pa. 521, 90 A. 353 (1914) (holding that loss of consortium is limited to the spousal relationship only); McCaskill v. Philadelphia Housing Authority, 419 Pa.Super. 313, 615 A.2d 382 (1992) (Demurrer sustained to loss of filial consortium claim brought by parents arising from death of fetus in utero); Schroeder v. Ear, Nose and Throat Associates of Lehigh Valley, Inc., 383 Pa.Super. 440, 557 A.2d 21 (1989) (Court struck parents' loss of filial consortium claim arising from death of fetus in utero); Brower by Brower v. City of Philadelphia, 124 Pa.Commw. 586; 557 A.2d 48 (1989) (Summary Judgment granted in favor of defendant as to parents' claim for loss of filial consortium of their adult son injured by a gun shot); Estate of Mathews v. Township of Millcreek, 45 Pa. D.&C.4th 376 (Erie Co. 2000) (Demurrer sustained to loss of filial consortium claim brought by mother arising from death of her son in a motorcycle accident); Pawlack v. Wharton Township, 44 Pa. D.&C.4th 189 (Fayette Co. 1999) (Court struck parents' claim for comfort, aid and society of child killed in car crash); Balest v. Krafick, 42 Pa. D.&C.4th 366 (Westmoreland County 1999) (Demurrer sustained to loss of consortium claim brought by parents arising from death of their daughter in an automobile collision); Imblum v. Banzhoff, 13 Pa. D.&C.4th 631 (Dauphin County 1992) (Court struck parents' claim for loss of filial consortium of stillborn child); Brill v. Benfield, 1995 U.S. Dist. LEXIS 8851 (E.D.Pa. 1995) (loss of filial consortium claim dismissed in wrongful death action as unrecognized by Pennsylvania law); Kriscuinas v. Union Underwear Co., 1994 U.S. Dist. LEXIS 13465, *10 (E.D. Pa. 1994) (parents' loss of filial consortium claim arising out of the injury to minor child dismissed as unrecognized by Pennsylvania law); Birchett v. City of Philadelphia, 1994 U.S. Dist. LEXIS 14776 (E.D.Pa. 1994) (loss of filial consortium claim dismissed in wrongful death action as unrecognized by Pennsylvania law); Van Steenburgh v. Sclar, 676 F.Supp. 579 (M.D.Pa. 1987) (parents' loss of filial consortium claim arising from injuries to daughter dismissed as unrecognized by Pennsylvania law).

services are describable and the associated damages are subject to valuation and Plaintiff must respond to Interrogatory No. 1.   If on the other hand what Plaintiff is seeking is loss of filial consortium damages, same are not recoverable or subject to exact calculation.  However, Plaintiff should make it clear one way or the other what type of damages she is seeking.  This should have been done in response to Interrogatory No. 1.

As stated by her in Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment Regarding Plaintiff's Claims for Solatium and Loss of Filial Consortium (hereinafter Plaintiff's Memorandum), "'[w]rongful death damages are implemented to compensate the spouse, children, or parents of the deceased for the pecuniary loss they have sustained by the denial of future contributions decedent would have made in his or her lifetime.'" Plaintiff's Memorandum, p. 5, *citing* Frey v. Pennsylvania Electric Co., 607 A.2d 796, 798 (Pa. Super. 1992) (Emphasis in original).  Plaintiff acknowledges authority in her Memorandum which states that wrongful death actions are "designed only to deal with the *economic effect* of the decedent's death upon these specified family members." (Plaintiff's Memorandum, pg.5 *citing* Frey v. Pennsylvania Electric Co., 607 An2d 796, 798 (Pa.Super. 1987)((Emphasis added); ).  Plaintiff then states that she will "demonstrate at trial the **pecuniary value** of the loss of to Jay Santarlasci's parents of the 'solace, society and companionship, as well as the comfort, guidance, kindly offices and advice' he would have provided to them." (Plaintiff's Memorandum, pg. 5-6) (Emphasis added).

The Merriam-Webster Dictionary defines "pecuniary" as (1) consisting of or measured in money; and (2) of or relating to money.  Since Plaintiff has acknowledged that she is only seeking damages relating to the loss of services the Decedent was to provide to the beneficiaries **and** she

intends to demonstrate at trial the <u>pecuniary value</u> of those losses, Plaintiff should respond to Interrogatory No. 1 without objection. There is no legitimate reason for Plaintiff to refuse to provide this information in discovery.[2] This is not supposed to be a guessing game for Lafayette College. Plaintiff **must** be required to specifically set forth all of the damages she seeks and the pecuniary value that she is placing on them as requested by Interrogatory No. 1.[3]

**<u>Interrogatory No. 2 - Basis for Expert Opinion</u>**

Interrogatory No. 2 asked Plaintiff to set forth the basis for her expert's opinion since it was not set forth in his report. Instead in his report Modell states:

*The basis for all opinions expressed in this report can be found in the various manuscripts listed in the author's bibliography which is attached.*

---

[2] Indeed in response to previous Interrogatories in this case Plaintiff stated that the Decedent (who was 26 years old) had <u>not</u> contributed economically to his parents in the last five (5) years. Indeed, at least one of those parents was in fact, financially supporting him.

[3] In her Memorandum of Law in Opposition to Lafayette College's Motion to Compel, Plaintiff cites to the case of <u>Sea-Land Service, Inc. v. Gaudet</u>, 414 U.S. 573 (1974) for the proposition that the Pennsylvania wrongful death statute which limits recovery to pecuniary losses permits recovery for the pecuniary value of the decedent's society. (See Plaintiff's Memorandum of Law in Opposition, pg. 6). Plaintiffs' reliance on this case is misplaced. <u>Sea-Land</u> did not hold that Pennsylvania's wrongful death statute permits the recovery of filial consortium which is what is being sought by Plaintiff. <u>Sea-Land</u> did not even involve Pennsylvania's Wrongful Death Statute. <u>Sea-Land</u> involved a maritime wrongful death action brought by the widow of a longshoreman who died as a result of injuries sustained aboard the defendant's vessel. Further, <u>Sea-Land</u> did not involve the interpretation of any wrongful death statute. Instead <u>Sea Land</u> was based upon a judicially created wrongful death remedy. Sea-Land, 414 U.S. 573, 573. Moreover, the Supreme Court of the United States has more recently pointed out that the determination by the <u>Sea-Land</u> Court to permit the widow to recover for loss of society under the non-statutory maritime wrongful death remedy was specifically limited to situations involving territorial waters and longshoreman. <u>Miles v. Apex</u>, 498 U.S. 19, 19, 111 S.Ct. 317 (1990). The <u>Schofield v. Piper Aircraft Corp.</u>, 1988 W.L. 62191 case also relied upon by Plaintiff likewise provides no support for Plaintiff's position as was set forth in Defendants' Memorandum in Response to Plaintiff's Opposition to the Motion for Partial Summary Judgment at pgs. 5-6 (Exhibit "B" hereto).

Modell then attaches a 46 page Bibliography listing over 450 "manuscripts."

Plaintiff produced an expert report that does not comply with the Federal Rules. Lafayette College served an Interrogatory seeking the information it is entitled to under the Rules and which Plaintiff was obligated to provide[4], and Plaintiff says she cannot answer because she is just a layperson. Modell's opinions are critical to Plaintiff's case and are the *only* basis for the allegation that the Decedent was unconscious underwater for 5-10 minutes before rescue efforts began. Plaintiff should not be permitted to play games and leave Lafayette College in the dark regarding the support for Plaintiff's expert opinion.

Plaintiff next criticizes Lafayette College for not deposing Modell if it wants this information. Lafayette College should not have to depose Modell to get information he was required to disclose in the first instance. Moreover, without knowing the purported basis for Modell's opinions, which is required by Fed.R.Civ.P. 26(a)(2)(B), Lafayette College could not adequately prepare for such a deposition. The result would be a deposition of Modell, who resides in Florida, to ask him the basis for his opinion and what data he relied on to formulate or support his opinion (e.g., the medical literature which Modell contends supports his opinions), an adjournment of the deposition to allow defense counsel to review the relied upon medical authorities so as to perform the necessary research to prepare for his deposition and then another Florida/Pennsylvania trip to complete the deposition. Lafayette College should not have to go to

---

[4]The Interrogatory asks for the "basis for the following statements contained in (Modell's Report), being sure to include in your answer the identity, as defined above, of any literature and/or medical treatises, if any, on which the statements are based or which you or Dr. Modell contend supports said statement." The Interrogatory then listed three discreet statements/conclusions set forth in the Modell Report for which the above information was sought.

such lengths and expense to obtain information it was entitled to in the first place. The bottom line is either Plaintiffs' expert has a basis for his opinions or he does not. If he does it should be a simple task for him to state the basis and identify, among the 450 manuscripts identified in his report, those upon which he relied in forming those opinions or which he contends supports same.[5]

### III. CONCLUSION

For the foregoing reasons and those set forth in Lafayette College's Motion and Memorandum of Law in support thereof, the Court should grant its Motion and direct Plaintiff to provide full and complete answers, without objection, to Defendants' Interrogatories Directed to Plaintiff (Second Set) Nos. 1 and 2.

                                                  **POWELL, TRACHTMAN, LOGAN, CARRLE,**
                                                      **BOWMAN & LOMBARDO, P.C.**

Dated: March 28, 2003                  By:_____
                                                        Jonathan K. Hollin
                                                        Attorney I.D. No. 36660
                                                        Mary J. Pedersen
                                                        Attorney I.D. No. 80552
                                                        Attorney for Defendants

---

[5] During a telephone conference with Judge Wells on March 21, 2003, Plaintiff implied that a singe article produced in discovery, which Plaintiff attached to her Memorandum of Law in Opposition to Lafayette College's Motion, is the article relied upon by Modell and which forms the basis for his opinions. If this is indeed the case, all Plaintiff has to do is state as much in response to Interrogatory No. 2 and the entire issue could be resolved.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIZABETH A. STANTON, Personal Representative of JOSEPH H. SANTARLASCI, III, Deceased, and Administrator of the Estate of JOSEPH H. SANTARLASCI, III | : : : : : : | CIVIL ACTION |
| *Plaintiff,* | : : | NO. 02 CV 4779 |
| v. | : : | |
| LAFAYETTE COLLEGE and ERIN MALONE | : : : | |
| *Defendant.* | : | |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Reply Memorandum of Law in Support of Defendant Lafayette College's Motion to Overrule Objections and Compel Full and Complete Answers to Interrogatories Directed to Plaintiff (Second Set) was served via first class mail, postage prepaid upon the following:

Peter C. Grenier, Esquire
Bode & Grenier, L.L.P.
1150 Connecticut Ave., N.W.
Ninth Floor
Washington, D.C. 20036

POWELL, TRACHTMAN, LOGAN, CARRLE, BOWMAN & LOMBARDO, P.C.

Date: March 28, 2003

Jonathan K. Hollin
Mary J. Pedersen
Attorney for Defendants

KOP:246411v3 4554-01